1  Shawn A. McMillan, Esq. – SBN: 208529
2  attyshawn@netscape.net
   Stephen D. Daner, Esq. – SBN: 259689
3  steve.mcmillanlaw@gmail.com
   Dennis B. Atchley, Esq. – SBN: 70036
4  dennis.atchley.mcmillanlaw@gmail.com
   THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
5  4955 Via Lapiz
   San Diego, California 92122
6  Telephone:  (858) 646-0069
   Facsimile:  (206) 600-4582
7
   Attorneys for Plaintiff, Carlos McManus Sr.
8
              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA

10  CARLOS McMANUS SR., an individual,          Case No: 15-cv-00138 JM RBB

11              Plaintiff,                       *SECOND* AMENDED COMPLAINT FOR
                  vs.                            DAMAGES
12
    COUNTY OF SAN DIEGO, a public entity;       **Claim 1 - 42 U.S.C. § 1983**
13  CITY OF SAN DIEGO, a public entity;
    POLICE OFFICERS ERNESTO LUNA (ID#                • COUNT 1 – The First Unwarranted
14  3779), MARI KONG (ID# 5850), SGT.           Seizure in Violation of Plaintiff's Fourteenth
    THOMAS SULLIVAN (ID# 4676),  SGT.           Amendment Right to Familial Association
15  ANTONIO JOHNSON (ID# 3816) Detective            • COUNT 2 – The Two Unwarranted,
    DAN BUROW (ID# 5268) and Lt. A. SMITH       Non-Consensual Forensic Medical/Physical
16  (ID# 3472); SGT. WILLS (ID# 4558);          Examinations of C.M. in Violation of
    SOCIAL WORKER DEFENDANTS                     Plaintiff's Fourteenth Amendment Rights as a
17  JENNIFER MORK and WANJIRU GOLLY,            Parent
    CHARLES COX SR., an individual, CITY            • COUNT 3 – The Second
18  OF SAN DIEGO DEFENDANT DOES 1               Unwarranted Seizure of C.M. in Violation of
    through 50, COUNTY OF SAN DIEGO             Plaintiff's Fourteenth Amendment Right to
19  DEFENDANT DOES 51 through 90, and           Familial Association
    DOCTOR DEFENDANT DOES 91 through                • COUNT 4 – The Unwarranted
20  100,   inclusive,                           Interrogations of C.M. in Violation of
                                                 Plaintiff's Fourteenth Amendment Right to
21              Defendants.                       Familial Association

22                                              **Claim 2 - Monell-Related Claims**

23                                                  • Count 1 - County of San Diego
                                                    • Count 2 - City of San Diego
24
                                                **Claim 3- Child Abduction**
25
                                                **Claim 4 - Intentional Infliction of
26                                              Emotional Distress**

27                                              **Claim 5 - Negligence**

28                                              **DEMAND FOR JURY TRIAL**

1

## Jurisdiction and Venue

2       1.    Plaintiff Carlos McManus Sr. brings this action pursuant to 42 U.S.C.

3  §1983, *et. seq.*, to redress the deprivation of rights secured to him under the United

4  States Constitution, including the First, and Fourteenth Amendments,[1] and under

5  federal and state law. These deprivations were inflicted by the Defendants herein,

6  and each of them, in the manner alleged. On information and belief, each of the

7  Defendants were at all times acting in concert with the remaining defendants to

8  inflict the harms alleged.

9       2.    Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and

10  1343(a)(4), which provide for original jurisdiction in this Court of all suits brought

11  pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331

12  because the claims for relief derive from the United States Constitution and the

13  laws of the United States. Supplemental Jurisdiction over the state law claims for

14  relief is conferred by 28 U.S.C. §1367.

15       3.    Because the acts and omissions complained of occurred in the County

16  of San Diego, and it is believed that all defendants currently reside in the County

17  of San Diego, venue is proper in the Southern District of California.

18

## Parties

19       4.    At all times relevant to the events alleged in this *Second* Amended

20  Complaint, Mr. McManus resided in the County of San Diego, California, with his

21  minor son, C.M. At all relevant times, Plaintiff was a decorated City of San Diego

22  police officer.

23       5.    At all relevant times, Defendant Charles Cox Sr. was an individual

24  residing in the County of San Diego. Defendant Cox was, and is, an adult male

25  with no blood relation to C.M., at all. Moreover, Cox had, and has, no custodial or

26

27

28

---

[1]Plaintiff does not assert a violation of the Fourth Amendment.

*SECOND* AMENDED COMPLAINT FOR DAMAGES

1    other legal interest in C.M. Cox had, and has, no legal interest in the minor,

2    C.M.'s, love and companionship.

3            6.      Defendant, County of San Diego, is a public entity.

4            7.      The San Diego County Health and Human Services Agency

5    ("HHSA") is a subdivision and/or agency of the County of San Diego. The County

6    of San Diego operates, manages, governs, administers, and/or controls Polinsky

7    Children's Center.

8            8.      Social worker Jennifer Mork was an individual residing in the County

9    of San Diego, and an officer, agent, and/or employee of the County of San Diego

10   and HHSA.

11           9.      Social worker Wanjiru Golly was an individual residing in the County

12   of San Diego, and an officer, agent, and/or employee of the County of San Diego

13   and HHSA.

14           10.     When referred to collectively, the Defendants in paragraphs 8 through

15   9 inclusive, will be referred to as "SOCIAL WORKER DEFENDANTS."

16           11.     Defendant City of San Diego is a public entity.

17           12.     The San Diego Police Department is a subdivision or agency of the

18   City.

19           13.     Police officer Ernesto Luna (ID# 3779), is an individual residing in

20   the County of San Diego, and an officer, agent, and/or employee of the City of San

21   Diego and the San Diego Police Department.

22           14.     Police officer Mari Kong (ID# 5850), was an individual residing, on

23   information and belief, in the County of San Diego, and an officer, agent, and/or

24   employee of the City of San Diego and the San Diego Police Department.

25           15.     Police officer Sgt. Thomas Sullivan (ID# 4676), was an individual

26   residing in the County of San Diego, and an officer, agent, and/or employee of the

27   City of San Diego  and the San Diego Police Department.

28

*SECOND* AMENDED COMPLAINT FOR DAMAGES

16.     Police officer Sgt. Antonio Johnson (ID# 3816), was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the City of San Diego  and the San Diego Police Department.

17.     Detective Dan Burow (ID# 5268), was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the City of San Diego  and the San Diego Police Department.

18.     Lieutenant A. Smith (ID# 3472), was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the City of San Diego  and the San Diego Police Department.

19.     Sgt. Wills (ID# 4558), was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the City of San Diego and the City of San Diego Police Department.

20.     When referred to collectively, the Defendants in paragraphs 13 through 19 inclusive, will be referred to as "POLICE OFFICER DEFENDANTS."

21.     Plaintiff is ignorant of the true names and capacities of those City of San Diego affiliated Defendants sued herein as City of San Diego affiliated Defendant DOES 1 through 50, and for that reason has sued such City of San Diego affiliated Defendants under fictitious names. Plaintiff will seek leave of Court to amend this *Second* Amended Complaint to identify said City of San Diego affiliated DOE Defendants when their identities have been ascertained. Each of the fictitiously named City of San Diego affiliated Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

22.     Plaintiff is ignorant of the true names and capacities of those County of San Diego Defendants sued herein as County of San Diego Defendant DOES 51 through 90, and for that reason has sued such County of San Diego Defendants under such fictitious names. Plaintiff will seek leave of Court to amend this

*Second* Amended Complaint to identify said County of San Diego DOE Defendants when their identities have been ascertained. Each of the fictitiously named County of San Diego DOE Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

23.     Plaintiff is ignorant of the true names and capacities of those Doctor Defendants sued herein as Doctor DOES 91 through 100, and for that reason has sued such Doctor Defendants under such fictitious names. Plaintiff will seek leave of Court to amend this *Second* Amended Complaint to identify said Doctor Defendants when their identities have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Doctor Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

24.     Plaintiff is informed and believes, and thereon alleges, that the Doctor Defendants voluntarily collaborated with HHSA and willfully participated in conducting forensic medical examinations for HHSA at Polinsky Children's Center, at the specific request and behest of the County. Plaintiff is informed and believes, that the County of San Diego compensated the Doctor Does for performing forensic medical examinations on behalf of HHSA at Polinsky Children's Center. Plaintiff is informed and believes, and thereon alleges, that conducting such forensic medical examinations, at a County of San Diego operated facility, constitutes a traditional government function.

25.     Each of the above named parties was and is the agent, employee, principal, and/or employer of each of the remaining defendants and/or vice versa. The defendants named above, and each of them, are responsible in some manner for the occurrences of which Plaintiff complains, and each of them conspired with, and/or aided and/or abetted each other in committing the acts complained of.

26.     Each of the above named County, City, and Doctor defendants was acting under color of law in committing the acts herein alleged, and that in doing the things herein alleged defendants, and each of them, were acting within the course and scope of their duties as employees or agents of their respective municipal employers

27.     The individual Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants and their agents and employees.

## COMMON ALLEGATIONS & BACKGROUND

28.     C.M. is a minor. Carlos McManus, Sr., is C.M.'s father. McManus, has enjoyed full legal and physical custody of C.M. since 2005. In June 2012, Plaintiff's girlfriend, and her two children X.1 and X.2, started living together with McManus and C.M. as a family.

29.     McManus, was a decorated San Diego Police Department veteran Specifically, in 2011, he received a Lifesaving Citation and a Commanding Officer's Citation. In 2014, he received a Supervisor's Commendation.  He consistently earned favorable performance evaluations during the nine years he worked for the department.

–     ***C.M. Is Abducted By Charles Cox, an Unrelated Adult Male***

30.     On the night of January 22, 2013, Defendant Cox (an unrelated adult male) asked McManus, if C.M. could spend the night at his house for a couple of days. McManus, refused. Despite this refusal and lack of consent, Cox lured C.M. to get into his van and abducted him. Cox drove C.M. to his own home. Plaintiff called the police to report the incident. In the early morning hours on January 23, 2013, Defendants Luna, Kong, Sullivan, and City of San Diego affiliated Defendant DOES 1 through 50, responded to the incident. Through their work on

1  the force, Defendants Luna, Kong, Sullivan, and City of San Diego affiliated

2  Defendant DOES 1 through 50 knew that McManus was C.M.'s father and that

3  McManus had full legal and physical custody of C.M.

4      –   ***San Diego Police Seize C.M. Without First Obtaining a Warrant***

5          ***and In the Absence of Any Exigency, Based on Suspicion of***

6          ***Emotional Abuse***

7      31.   Instead of returning C.M. to Plaintiff's custody and care, Defendants

8  Luna, Kong, Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1

9  through 50, seized C.M. from his father's care and custody. Despite having had

10  plenty of time within which to obtain a warrant, these defendants did not do so. At

11  no point in time was C.M. in any immediate of severe bodily injury or death in the

12  time it would have taken to obtain a warrant. As stated in their police report, these

13  Defendants seized the child based on suspicions of "emotional abuse."

14      32.   Under clearly established Ninth Circuit law, emotional abuse is not a

15  basis to interfere with a parent's lawfully exercised authority over their child

16  without first obtaining a warrant. See, e.g., *Moodian v. County of Alameda Soc.*

17  *Servs. Agency*, 206 F. Supp. 2d 1030, 1035 (N.D. Cal. 2002); see also, *Rogers v.*

18  *County of San Joaquin*, 487 F.3d 1288, 1297 (9th Cir. Cal. 2007); ["The law was

19  clearly established at the time of the events in this case that a child could not be

20  removed from the home without prior judicial authorization absent evidence of

21  'imminent danger of serious bodily injury and [unless] the scope of the intrusion is

22  reasonably necessary to avert that specific injury.'"]

23      33.   Prior to C.M.'s unwarranted seizure, Defendants Luna, Kong,

24  Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1 through 50,

25  and each of them, discussed C.M.'s proposed warrantless seizure from McManus's

26  custody. Defendants Luna, Kong, Sullivan, Wills, and City of San Diego affiliated

27  Defendant DOES 1 through 50, and each of them, agreed, approved, and/or

28  concurred with the decision to seize C.M. from the Plaintiff's care and custody

without first obtaining a warrant.  Pursuant to that agreement, Defendants Luna, Kong, Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1 through 50, and each of them together, were integral participants in C.M.'s warrantless seizure from McManus's custody.

34.   Defendants Luna, Kong, Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1 through 50, seized C.M. from Plaintiff's custody without cause, parental consent, a warrant, judicial authorization, a court order, or exigent circumstances. At the time of seizure, C.M. was in good health and there was no need for any medical care to be administered to him – emergency or otherwise. Moreover, there was no reasonable or articulable evidence to suggest that C.M. was in immediate danger of suffering severe bodily injury at the hands of his father, there was no indication that the physical home environment posed any threat to C.M.'s health or safety, or that C.M. had been abandoned by his father. At the time in question, Defendants Luna, Kong, Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1 through 50, were fully aware of where, and to whom, C.M. belonged.

35.   At the time of seizure, Defendant Sullivan specifically verified that C.M. did not have any visible physical injuries. Prior to the seizure, Defendants Luna, Kong, Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1 through 50, failed to pursue reasonable avenues of investigation in that, among other things, they never interviewed, questioned, and/or spoke with Plaintiff's girlfriend or her two children X.1 and X.2 who also lived in Plaintiff's home with C.M. These Defendants violated McManus, Sr.'s Fourteenth Amendment rights when they seized C.M. because there was no recognized legal basis for the seizure. *See, supra*, ¶32.

36.   At all relevant times during Defendants Luna, Kong, Sullivan, Wills, and City of San Diego affiliated Defendant DOES 1 through 50, interactions with C.M. and/or Plaintiff on January 23, 2013, it was and would have been

immediately apparent to any reasonable police officer that Plaintiff was C.M.'s father and that he had an immediate right to custody and control of the child. There was no reasonable or articulable evidence to suggest that the child was likely to suffer sever bodily injury or death at the hands of his father; and, there was no evidence to suggest the child had been physically injured by his father or anyone else at home. There was no reasonable or articulable evidence to suggest that any crime whatsoever had been committed, or that there was any other legal justification for the seizure of Plaintiff's child from his care. Lastly, there was no evidence to suggest that any other person besides McManus was entitled to custody of C.M.

37.   Immediately after the seizure, Defendants Luna, Kong, and City of San Diego affiliated Defendant DOES 1 through 50, transported and delivered C.M. to Polinsky Children's Center. Upon delivery, Defendant Luna reported that C.M. was seized due to "emotional abuse." As noted *supra* in ¶32, suspected "emotional abuse" is not a legal basis to detain a child from the custody of his parent without first obtaining a warrant or other court order authorizing the seizure.

– ***At The Behest of San Diego County HHSA, Doctors at Polinsky Children's Center Conduct an Unwarranted Forensic Medical Examination of C.M.; They Find No Evidence of Abuse***

38.   In the absence of parental consent, forensic physical examinations of a child, like C.M., may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an examination exist and that the administration of the procedure is reasonable under all the circumstances. *See, e.g.*, *Swartwood v. County of San Diego*, 2014 U.S. Dist. LEXIS 182020, 58-59 (S.D. Cal. 2014); *see also Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. Cal. 2000); ["The right to family association

1   includes the right of parents to make important medical decisions for their

2   children, and of children to have those decisions made by their parents rather than

3   the state."]

4        39.    After C.M. was admitted to Polinsky Children's Center, Doctor

5   DOES 91-100, conducted and performed a forensic medical and physical

6   examination of C.M. This forensic physical and medical examination, evaluation,

7   and/or assessment was performed without Plaintiff's knowledge or consent,

8   without notice to the Plaintiff, without a warrant or court order authorizing the

9   examination, and in the absence of exigent circumstances. This unwarranted

10  forensic physical and medical examination, and Plaintiff's exclusion therefrom,

11  was performed pursuant to the County of San Diego's policies and long

12  established customs and practices.

13       40.    Specifically, the County's policy for conducting medical

14  examinations on children admitted to the Polinsky Children's Center precludes

15  parents from attending the medical exam; and (2) the examination is performed

16  without parental notice or consent, without a court order regarding the specific

17  child and in the absence of exigency. *See, e.g.*, *Swartwood v. County of San Diego*,

18  2014 U.S. Dist. LEXIS 182020, *56-57 (S.D. Cal. 2014). This express policy, and

19  the concomitant customs and practices designed to effectuate the policy were the

20  moving force behind this particular Fourteenth Amendment violation.

21       41.    C.M.'s forensic physical and medical examination found no visible

22  injuries or other indicia of abuse.

23       42.    On January 23, 2013, after C.M. was medically examined at the

24  Polinsky Children's Center, HHSA social workers interviewed C.M. That same

25  day the investigating social workers interviewed Plaintiff's girlfriend, and her two

26  children X.1 and X.2, all three denied any verbal or physical abuse in the home,

27  and denied observing Plaintiff inflict any form of physical abuse on C.M. After

28  investigation, these social workers found that there was no evidence of physical

abuse to C.M., found no sign of visible marks or bruises, and found no evidence that C.M. was suffering emotionally. With insufficient evidence to suggest that any abuse had occurred, HHSA declined to  prosecute a dependency case against Plaintiff; and, informed the police that C.M. should be returned to his father's care.

> – *Police Interrogate C.M. a Second Time While He's at The Polinsky Children's Center*

43.   On January 23, 2013, Defendants Burow, Johnson, and City of San Diego affiliated Defendant DOES 1 through 50, interviewed, questioned, interrogated, and/or examined C.M. for a second time at the Polinsky Children's Center. This interview and examination was also performed without Plaintiff's knowledge or consent, without notice to the Plaintiff, without a warrant or court order authorizing the examination, and in the absence of exigent circumstances.

> – *HHSA Informs Police That There is No Basis to Detain C.M. From McManus, Sr.'s, Care and Custody; HHSA Releases C.M. to Plaintiff's Control*

44.   On or about January 24, 2013, HHSA social worker Nancy Hess had a conference call with Defendants Smith and City of San Diego affiliated Defendant DOES 1 through 50.[2] During this conversation, Defendants Smith and City of San Diego affiliated Defendant DOES 1 through 50, without any legal basis to do so, requested that the HHSA continue to detain C.M. from the care, custody, and control of his father, McManus, Sr., at Polinsky Children's Center. HHSA declined the request. At this time, HHSA social worker Nancy Hess expressed concern that C.M. was lying and was not being truthful. Defendants

---

[2]Social worker Nancy Hess is not a defendant in this action. Rather, she is a third party witness who is expected to offer testimony in support of Plaintiff's claims.

1   Smith and City of San Diego affiliated Defendant DOES 1 through 50, heard and
2   understood the HHSA's concerns.

3       45.    On January 24, 2013, C.M. was released from Polinsky Children's
4   Center. Instead of coming straight home, Plaintiff consented and allowed C.M. to
5   temporarily stay at "Storefront," a shelter for teens. This allowed Plaintiff time to
6   set up joint counseling for himself and C.M., in order to help facilitate a healthy
7   reconciliation with C.M. On February 4, 2013, HHSA closed the referral, and
8   declined to prosecute a dependency case against Plaintiff.

9       –    *The Police Interrogate C.M. a Third Time – at School, Without*
10           *Parental Consent or a Warrant*

11      46.    The Ninth Circuit Court of Appeals has "adopted constitutional
12   standards to govern all in-school interviews of suspected child abuse victims. And
13   the [Ninth Circuit Court of Appeals] specifically instructed government officials
14   to follow those standards going forward – to 'cease operating on the assumption'
15   that warrantless interviews are permitted. With the law thus clearly established,
16   officials who conduct this kind of interview will not receive immunity in the Ninth
17   Circuit." *Camreta v. Greene*, 131 S. Ct. 2020, 2032 (U.S. 2011), (citations
18   removed).

19      Therefore, as of 2011, a reasonable social worker or police officer would
20   understand that judicial authorization or parental consent is required to conduct a
21   non-emergency in-school interview. *See, e.g.*, *Hope v. Pelzer*, 536 U.S.730, 739
22   (2002).

23      In 2010, legal counsel for the San Diego County Office of Education issued
24   a legal opinion stating that social workers and law enforcement cannot interview a
25   children at school without a warrant or court order. (*See* Exhibit A and Exhibit B.)

26      47.    The week prior to April 9, 2013, Defendant Johnson, and City of San
27   Diego affiliated Defendant DOES 1 through 50, went to C.M.'s school, pulled him
28   out of class, and again interviewed, questioned, interrogated, and/or examined

---

*SECOND* AMENDED COMPLAINT FOR DAMAGES

1  him. This *third* police interrogation was performed without McManus, Sr.'s
2  knowledge or consent, without notice to the Plaintiff, without a warrant or court
3  order authorizing the examination, and in the absence of exigent circumstances.

4     – ***Police and Social Workers Seize C.M. a Second Time – From***
5     ***School, Without a Warrant, and in the Absence of Any Exigency***

6     48.   About a week later, on April 9, 2013, Defendant Johnson contacted
7  Defendant Mork, and requested her assistance in seizing C.M. from Plaintiff's
8  custody. That same day, Defendants Burow, Mork, City of San Diego affiliated
9  Defendant DOES 1 through 50, and County of San Diego Defendant DOES 51
10  through 90, visited C.M.'s middle school.

11     49.   Defendants Burow, Mork, City of San Diego affiliated Defendant
12  DOES 1 through 50, and County of San Diego Defendant DOES 51 through 90,
13  together interrogated C.M., yet again. This interrogation, like all previous
14  interrogations, was performed without McManus's knowledge or consent, without
15  notice, without a warrant or court order authorizing the interrogation, and in the
16  absence of exigent circumstances.

17     50.   Once C.M.'s April 9, 2013, interrogation was concluded, Defendant
18  Burow told Defendant Mork that McManus, Sr. was going to be charged with two
19  counts of misdemeanor child abuse. McManus was never taken into custody on
20  any charges.

21     51.   Plaintiff is informed and believes, that Defendants Burow, Mork, City
22  of San Diego affiliated Defendant DOES 1 through 50, and County of San Diego
23  Defendant DOES 51 through 90, and each of them, discussed C.M.'s proposed
24  seizure and removal from Plaintiff's custody and agreed amongst themselves to go
25  ahead and seize the child without a warrant. Plaintiff is informed and believes, that
26  Defendants Burow, Mork, City of San Diego affiliated Defendant DOES 1 through
27  50, and County of San Diego Defendant DOES 51 through 90, and each of them,
28  agreed, approved, and/or decided together to seize C.M. from Plaintiff's custody

to such an extent that each of them aided and assisted the other in the unwarranted seizure, and/or were an integral participant in C.M.'s unwarranted seizure that day.

52.   Plaintiff is informed and believes, that prior to agreeing to seize C.M., Defendant Mork discussed C.M.'s proposed seizure and removal from Plaintiff's custody with her supervisor. After hearing all relevant information, including the substantial delay in taking any action as well as the lack of any evidence of physical abuse, Mork's supervisor and County of San Diego Defendant DOES 51 through 90 agreed, approved, affirmed, and ratified the decision to seize the child without first obtaining a warrant.

53.   Once the interview with C.M. was concluded Defendants Burow, Mork, City of San Diego affiliated Defendant DOES 1 through 50, and County of San Diego Defendant DOES 51 through 90, and each of them, seized C.M. from the Plaintiff's custody without a warrant, judicial authorization, a court order, exigent circumstances, and/or in the absence of any evidence to suggest that C.M. was likely to suffer immediate bodily injury at the hands of Plaintiff. Indeed, at the time of seizure, C.M. was in good health and there was no need for any medical care to be administered to him. C.M. was seized at 12:00 p.m., while he was in school – thus, there was plenty of time to seek, and obtain a warrant. Moreover, there was no reasonable or articulable evidence to suggest the child was in immediate danger of physical or sexual abuse, nor was there any indication that the physical environment posed any threat to the child's health or safety. After the seizure, Defendants Mork and County of San Diego Defendant DOES 51 through 90, provided a courtesy transport for Defendant Burow, and brought C.M. back to Polinsky Children's Center.

54.   Defendants Mork and County of San Diego Defendant DOES 51 through 90, claim to have seized C.M. because the Police told them Plaintiff was being arrested. But, Plaintiff was never arrested. Prior to the seizure, Defendants Mork and County of San Diego Defendant DOES 51 through 90, did not speak

1   with Plaintiff, or even attempt to speak with him. Prior to C.M.'s seizure

2   Defendants Mork and County of San Diego Defendant DOES 51 through 90, made

3   no effort to determine whether or not Plaintiff was in fact arrested, and made no

4   effort to determine whether or not McManus could, or did arrange for the care of

5   C.M. during any prospective term of incarceration. On April 9, 2013, Plaintiff, if

6   necessary, could and would have arranged for C.M.'s care – had he in fact been

7   arrested.

8        55.    Defendants Mork and County of San Diego Defendant DOES 51

9   through 90, seized C.M. without a warrant or court order, and/or in the absence of

10   exigent circumstances, because it was the custom, practice, and/or policy of the

11   County of San Diego to seize children without first obtaining a warrant and

12   without the social worker having performed a reasonable investigation. According

13   to County of San Diego policy, social workers believe they are entitled to hold a

14   child for up to 48 hours without a warrant for merely investigatory purposes. See,

15   e.g., *Swartwood v. County of San Diego*, 2014 U.S. Dist. LEXIS 182020, 52 (S.D.

16   Cal. Sept. 30, 2014).

17     –   ***San Diego County, HHSA, and Doctors Subject C.M. to a Second***

18          ***Unwarranted Forensic Medical Examination***

19        56.    Plaintiff is informed and believes, that on April 9, 2013, after C.M.

20   was admitted to Polinsky Children's Center, Doctor DOES 91-100, performed a

21   *second* forensic physical and medical examination of C.M. This *second*

22   unwarranted medical examination, evaluation, and/or assessment was also done at

23   the behest of San Diego County. As with the prior unwarranted medical

24   examination, this *second* one was done without McManus's knowledge or

25   consent, without notice to him, without a warrant or court order authorizing the

26   examination, and in the absence of exigent circumstances. As a result, McManus

27   was completely excluded from C.M.'s medical examination. As noted above, this

28   *second* medical examination, and Plaintiff's exclusion, was performed pursuant to

1    the County of San Diego policies and long standing practices. C.M.'s second

2    unwarranted physical medical examination was not authorized by law, and

3    violated Plaintiff's Fourteenth Amendment rights. *See, e.g.*, *Swartwood v. County*

4    *of San Diego*, 2014 U.S. Dist. LEXIS 182020, 56-81 (S.D. Cal. 2014).

5         57.    On April 9, 2013, after C.M. was admitted to Polinsky Children's

6    Center, Defendant Golly, and County of San Diego Defendant DOES 51 through

7    90, again interrogated C.M. This interrogation was performed without Plaintiff's

8    knowledge or consent, without notice to the Plaintiff, without a warrant or court

9    order authorizing the examination, and in the absence of exigent circumstances.

10        58.    On April 10, 2013, C.M. was again returned to Plaintiff's custody.

11        –    ***Wanjiru Golly Interrogates C.M., Yet Again, at School, Without a***

12             ***Warrant, and in The Absence of Exigency***

13        59.    On April 11, 2013, Defendant Golly, and County of San Diego

14    Defendant DOES 51 through 90, made another unannounced visit to C.M.'s

15    school. During this visit, Defendant Golly, and County of San Diego Defendant

16    DOES 51 through 90, interrogated C.M. yet again. This interrogation – like all

17    others, was performed without Plaintiff's knowledge or consent, without notice to

18    the Plaintiff, without a warrant or court order authorizing the examination, and in

19    the absence of exigent circumstances. Plaintiff is informed and believes, that

20    Defendant Golly conducted and performed this additional interrogation at the

21    direction of her supervisor, County of San Diego Defendant DOES 51 through 90.

22        60.    HHSA *again* declined to  prosecute a dependency case against

23    Plaintiff.

24                         **FIRST CLAIM FOR RELIEF:**

25             **VIOLATION OF CIVIL RIGHTS – U.S.C. §1983**

26                              **COUNT 1**

27    ***The First Unwarranted Seizure in Violation of Plaintiff's Fourteenth***

28             ***Amendment Right to Familial Association***

---

(By Plaintiff Against Defendants Luna, Kong, Sullivan, Smith, Wills, Johnson, Burow, and City of San Diego affiliated Defendant DOES 1 through 50, inclusive)

61.   Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 60.

62.   Plaintiff brings this action on his own behalf to recover damages arising from these Defendants' violation of his right to continued care, custody, and control of his son arising under the Fourteenth Amendment of the United States Constitution. Plaintiff does not bring this action on behalf of C.M., or to recover any damages for constitutional injuries inflicted on C.M. C.M.'s Fourth Amendment rights are *not* implicated in this action.

63.   The United States Supreme Court has frequently emphasized the importance of family. The rights to conceive and raise one's children have been deemed "essential," and "among the basic civil rights of man." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). The Fourteenth Amendment protects the fundamental right of parents, like McManus, to make decisions concerning the care, custody, upbringing, education, management, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

Equally fundamental are the closely related legitimate expectations of parents, protected by the Fourteenth Amendment, that their familial relationship will not be subjected to unwarranted state intrusion. *Santosky v. Kramer*, 455 U.S. 745, 747 (U.S. 1982). As a result, the right to familial integrity and association, is sheltered against the state's "unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 106 (1996).

Constitutional protections are not interrupted or suspended during child abuse investigations. *Calabretta v. Floyd,* 189 F.3d 808, 817 (9th Cir. 1999); *Wallis v. Spencer*, 202 F.3d 1126, 1130 (9th Cir. 2000).

64.   More specifically, parents and children have a well-elaborated constitutional right to live together without governmental interference. The

1   Fourteenth Amendment guarantees that parents will not be separated from their
2   children without due process of law except in emergencies. *Rogers v. County of*
3   *San Joaquin,* 487 F.3d 1288, 1294 (9th Cir. 2007). This right to family
4   association," requires "[g]overnment officials … to obtain prior judicial
5   authorization before intruding on a parent's custody of her child unless they
6   possess information at the time of the seizure that establishes 'reasonable cause to
7   believe that the child is in imminent danger of serious bodily injury and that the
8   scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe*
9   *v. San Bernardino County*, 237 F.3d 1101, 1106-1107 (9th Cir. Cal. 2001); see
10  also, *Rogers*, *supra*, 487 F.3d at 1294; see also, *Wallis v. Spencer,* 202 F.3d 1126,
11  1138, fn. 8, (9th Cir. 2000). Officials violate the Fourteenth Amendment if they
12  remove a child from the custody of its parent absent information at the time of the
13  seizure that establishes reasonable cause to believe that the child is in imminent
14  danger of serious bodily injury and that the scope of the intrusion is reasonably
15  necessary to avert that specific injury.

16          65.    At all relevant times, Defendants Luna, Kong, Sullivan, Smith, Wills,
17  Johnson, Burow, and City of San Diego affiliated Defendant DOES 1 through 50,
18  and each of them, were acting under color of state law when they acted and/or
19  conspired to, and did, seize C.M. from McManus's custody – in the absence of any
20  exigency, without first obtaining a warrant.

21          67.    Plaintiff is informed and believes, and on such basis alleges, that
22  Defendants Luna, Kong, Sullivan, Smith, Wills, Johnson, Burow, and City of San
23  Diego affiliated Defendant DOES 1 through 50, and each of them, acted,
24  conspired to, and/or did violate the Plaintiff's civil rights, including violation of
25  McManus's familial rights found in the First and Fourteenth Amendments to the
26  United States Constitution by, but not limited to, seizing, removing, detaining,
27  and/or then continuing to detain, C.M. from the care, custody, and control of
28

*SECOND* AMENDED COMPLAINT FOR DAMAGES

1  Plaintiff, without exigent circumstances, parental consent, court order, proper

2  reason, authority, or probable cause.

3      68.   These Defendants, and each of them, did the things herein alleged

4  with a knowing and deliberate disregard for McManus's parental rights.

5      69.   Defendants Luna, Kong, Sullivan, Smith, Wills, Johnson, Burow, and

6  City of San Diego affiliated Defendant DOES 1 through 50,  and each of them,

7  conducted themselves without proper or just cause and/or authority; without

8  proper notice in violation of and interference with, Plaintiff's constitutional right

9  to familial association under the First and Fourteenth Amendments.

10     70.   At the time of these Defendants' conduct, as alleged above,

11 McManus's rights were so clearly established that a reasonable police officer

12 faced with similar circumstances would have known that their conduct was

13 violative of those familial rights.

14     71.   As a direct and proximate result of these Defendants' conduct and

15 constitutional violations, and in accordance with 42 U.S.C. §1983, Plaintiff's civil

16 rights have been violated to such an extent that he has suffered, and will continue

17 to suffer, damages, including but not limited to, physical and/or mental anxiety

18 and anguish.

19     72.   Defendants Luna, Kong, Sullivan, Smith, Wills, Johnson, Burow, and

20 City of San Diego affiliated Defendant DOES 1 through 50, conduct as herein

21 alleged was wrongful, intentional, done with malice, and/or with a conscious

22 disregard for McManus's rights as a parent. As a result of this conduct, Plaintiff is

23 entitled to recover punitive damages from the individual Defendants Luna, Kong,

24 Sullivan, Smith, Wills, Johnson, Burow, and City of San Diego affiliated

25 Defendant DOES 1 through 50, only in an amount commensurate with the nature

26 of the Defendants' wrongful acts and the amount of the Defendants' wealth – and

27 according to proof at trial.

28 / / /

**COUNT 2**

*The Two Unwarranted, Non-Consensual Forensic Medical/Physical*

*Examinations of C.M. in Violation of Plaintiff's*

*Fourteenth Amendment Rights as a Parent*

(By Plaintiff Against Defendants Doctor DOES 91-100, inclusive.)

73.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 60.

74.     Plaintiff brings this action on his own behalf to recover damages arising from these Defendants' violation of his right to continued care, custody, and control of his son arising under the Fourteenth Amendment of the United States Constitution. Plaintiff does not bring this action on behalf of C.M., or to recover any damages for constitutional injuries inflicted on C.M. C.M.'s Fourth Amendment rights are *not* implicated in this action.

75.     At all times mentioned herein, Doctor DOES, and each of them, were acting at the specific instruction and direction of the County of San Diego, HHSA. In carrying out the County's directives, Doctor DOES were at all times acting under color of law, within the course and scope of their duties and obligations as agents of San Diego County. Plaintiff is informed and believes, that the County of San Diego compensated the Doctor Does for performing forensic medical examinations for HHSA at Polinsky Children's Center.

76.     At all relevant times, the right to not have one's child subjected to medical and physical examinations in the absence of a warrant, parental consent, or emergency was so clearly established that any reasonable government agent, including Doctor DOE defendants, would know it violated McManus, Sr.'s rights to conduct the medical examinations complained of herein.

77.     As a direct and proximate result of these Doctor DOE Defendants' conduct, Plaintiff's rights to parental custody and control arising under the Fourteenth Amendment have been violated. As a direct and proximate

consequence of said violation, Plaintiff has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish.

78.   Doctor DOE Defendants'conduct as herein alleged was wrongful, intentional, done with malice, and/or with a conscious disregard for McManus, Sr.'s rights as a parent. As a result of their conduct, Plaintiff is entitled to recover punitive damages from the Doctor DOE Defendants according to proof at trial.

### COUNT 3

*C.M.'s Second Unwarranted Seizure in Violation of Plaintiff's Fourteenth Amendment Right to Familial Association*

(By Plaintiff Against Defendants Mork, County of San Diego Does 51 Through 90, Johnson, Burow, and City of San Diego affiliated DOES 1-50, Inclusive)

81.   Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 60.

82.   Plaintiff brings this action on his own behalf to recover damages arising from these Defendants' violation of his right to continued care, custody, and control of his son arising under the Fourteenth Amendment of the United States Constitution. Plaintiff does not bring this action on behalf of C.M., or to recover any damages for constitutional injuries inflicted on C.M. C.M.'s rights arising under the Fourth Amendment to the United States Constitution are not implicated in this action.

83.   At all relevant times, Defendants Johnson, Burow, City of San Diego affiliated Defendant DOES 1 through 50, Mork, and County of San Diego DOES 51 through 90, and each of them, were acting under color of state law when they acted and/or conspired to, and did, seize C.M. from McManus, Sr.'s custody in the absence of any exigency and without first obtaining a warrant.

84.   At the time these defendants seized C.M. from McManus, Sr.'s care, custody, and control, the applicable Ninth Circuit law was so clearly established that any reasonable government agent would know that the unwarranted seizure

1   violated McManus, Sr.'s fundamental rights under the Fourteenth Amendment to
2   the United States Constitution.

3         85.    Specifically, parents and children have a well-elaborated
4   constitutional right to live together without governmental interference. The
5   Fourteenth Amendment guarantees that parents will not be separated from their
6   children without due process of law except in emergencies. *Rogers v. County of*
7   *San Joaquin,* 487 F.3d 1288, 1294 (9th Cir. 2007). This right to family
8   association," requires "[g]overnment officials … to obtain prior judicial
9   authorization before intruding on a parent's custody of her child unless they
10  possess information at the time of the seizure that establishes 'reasonable cause to
11  believe that the child is in imminent danger of serious bodily injury and that the
12  scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe*
13  *v. San Bernardino County*, 237 F.3d 1101, 1106-1107 (9th Cir. Cal. 2001); see
14  also, *Rogers*, *supra*, 487 F.3d at 1294; see also, *Wallis v. Spencer,* 202 F.3d 1126,
15  1138, fn. 8 (9th Cir. 2000). Officials violate the Fourteenth Amendment if they
16  remove a child from the custody of its parent absent information at the time of the
17  seizure that establishes reasonable cause to believe that the child is in imminent
18  danger of serious bodily injury and that the scope of the intrusion is reasonably
19  necessary to avert that specific injury.

20        86.    Plaintiff is informed and believes, and on such basis alleges, that
21  Defendants, and each of them, acted, conspired to, and/or did violate the Plaintiff's
22  civil rights, including violation of Plaintiff's rights found in the First and
23  Fourteenth Amendments to the United States Constitution by, but not limited to,
24  seizing, removing, detaining, and/or then continuing to detain, C.M. from the care,
25  custody, and control of Plaintiff without exigent circumstances, parental consent,
26  court order, proper reason, authority, or probable cause, and with a deliberate
27  indifference to the rights of Plaintiff.

28

87.     As a direct and proximate result of these Defendants' conduct, and each of them, Plaintiff's civil rights have been violated and he has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish, thereby.

88.     Defendants' wrongful conduct as herein alleged was intentional, done with malice, and/or with a conscious disregard for the rights of the Plaintiff, and as a result of this conduct, Plaintiff is entitled to recover punitive damages according to proof at trial.

## COUNT 4

### *The Unwarranted Interrogations of C.M. in Violation of Plaintiff's Fourteenth Amendment Right to Familial Association*

(By Plaintiff Against Defendants Mork, Golly, County of San Diego Does 51 Through 90, Johnson, Burow, and City of San Diego affiliated DOES 1-50, Inclusive)

89.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 60.

90.     Plaintiff brings this action on his own behalf to recover damages arising from these Defendants' violation of his right to continued care, custody, and control of his son arising under the Fourteenth Amendment of the United States Constitution. Plaintiff does not bring this action on behalf of C.M., or to recover any damages for constitutional injuries inflicted on C.M. C.M.'s rights arising under the Fourth Amendment to the United States Constitution are not implicated in this action.

91.     At all relevant times, Defendants, and each of them, were acting under color of law, and within the course and scope of their official duties.

92.     At the time these Defendants, and each of them, interrogated C.M. Ninth Circuit law applicable to these circumstances was so clearly established that any reasonable government agent would know that the unwarranted interrogations of C.M., whether conducted in school or off campus, violated McManus, Sr.'s

1  fundamental rights under the Fourteenth Amendment to the United States
2  Constitution.

3      93.    Specifically, a warrantless, non-emergency interview and examination
4  of an alleged victim of child abuse at home violates constitutional rights. *See*
5  *Calabretta v. Floyd*, 189 F.3d 808, 810-812, 817 (9th Cir. 1999). Similarly, a
6  constitutional violation has been found when a child is removed from class to be
7  questioned by a social worker regarding alleged abuse. *Doe v. Heck*, 327 F.3d 492,
8  509-510 (7th Cir. 2003).

9      In *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), the Ninth Circuit
10  adopted and expanded on these decisions, finding that a constitutional violation
11  occurs when an alleged victim of child abuse was interviewed at school without
12  judicial authorization, parental consent, or exigent circumstances. *Id*. at
13  1022-1023, and 1030.

14      94.    As a direct and proximate result of these Defendants' conduct, and
15  each of them, Plaintiff's civil rights have been violated and he has suffered, and
16  will continue to suffer, damages, including but not limited to, physical and/or
17  mental anxiety and anguish, thereby.

18      95.    Defendants' wrongful conduct as herein alleged was intentional, done
19  with malice, and/or with a conscious disregard for the rights of the Plaintiff, and as
20  a result of this conduct, Plaintiff is entitled to recover punitive damages according
21  to proof at trial.

22  **SECOND CLAIM FOR RELIEF:**
23  ***MONELL*-RELATED CLAIMS**
24  **COUNT 1**
25  (By Plaintiff Against Defendant County of San Diego)
26      96.    Plaintiff realleges, and to the extent applicable, incorporates herein as
27  if set forth in full, Paragraphs 1 through 95.

28

97.     Plaintiff brings this action on his own behalf to recover damages arising from this Defendant's violation of his right to continued care, custody, and control of his son arising under the Fourteenth Amendment to the United States Constitution. Plaintiff does not bring this action on behalf of C.M., or to recover any damages for constitutional injuries inflicted on C.M. C.M.'s rights arising under the Fourth Amendment to the United States Constitution are not implicated in this action.

98.     Defendant County of San Diego, including through its child welfare services agency, HHSA, is a "person" within the meaning of 42 U.S.C. §1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. SOCIAL WORKER DEFENDANTS, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

99.     Defendant County of San Diego, including through its entity HHSA, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; and the right to procedural due process. Defendant County of San Diego also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within HHSA, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

1     100.   Moreover, based on the duties charged to the SOCIAL WORKER

2  DEFENDANTS including the powers to seize children from their parents' care,

3  the County, and their policymaking officials, knew or should have known of the

4  need to establish customs, policies, and practices required to protect the

5  aforementioned civil rights of parents and their children with whom their agents

6  regularly came into contact – and to adequately train its employee social workers

7  on constitutionally appropriate policies and practices.

8     101.   Defendant County of San Diego established, adopted, followed,

9  and/or implemented and/or turned a blind eye to customs, and/or practices which

10  were followed, complied with, and carried out by the SOCIAL WORKER

11  DEFENDANTS when Plaintiff's constitutional rights were violated by and/or

12  through the unwarranted seizure, unwarranted medical examinations, and

13  unwarranted interrogations of C.M. At the time of the underlying events, the

14  regularly established customs and practices of the County of San Diego's HHSA

15  agency that were followed, adhered to, complied with, and carried out by SOCIAL

16  WORKER DEFENDANTS were the moving force, that is, the actual, direct, and

17  proximate cause of the violations of Plaintiff's constitutional rights include, but

18  not limited to:

19     a.   The custom and/or practice of detaining and/or removing children

20        from the custody of their parents in the absence of exigent

21        circumstances (imminent danger of serious bodily injury); and,

22        without first obtaining a court order/warrant, without first engaging in

23        a reasonable investigation, and/or first obtaining consent of the

24        child's parent;

25     b.   The policy, custom, and/or practice of removing children from their

26        family and their homes without first performing and/or pursuing any

27        and/or reasonable investigation, and then only investigating any

28        allegations of abuse, after the seizure;

c.      The policy, custom, and/or practice of removing and detaining children, and continuing to detain them for an unreasonable period long after any alleged basis for detention is negated;

d.      The policy, custom, and/or practice of interviewing, questioning, interrogating, and/or examining a child outside the presence of its parent(s) – without judicial authorization, prior court order, parental consent, and/or without specific, reasonable, and articulable evidence that the child is in immediate risk of suffering serious bodily injury;

e.      The policy, custom, and/or practice of performing a physical medical examination, assessment, and/or evaluation of a child outside the presence of its parent(s) – without judicial authorization, prior court order, parental consent, and/or without specific, reasonable, and articulable evidence that the child is in immediate risk of suffering serious bodily injury;

f.      The unwritten policy of acting with deliberate indifference to the rights of children and parents with whom HHSA agents can regularly be expected to come into contact by *failing* and/or *refusing* to implement a practice of regular and adequate training and/or supervision, and/or failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendments to the United States Constitution, when performing actions related to child abuse and dependency type investigations and court proceedings;

g.      The consistent failure by the County of San Diego to investigate violations of constitutional rights by social workers, and consistent failure to discipline social workers and their supervisors involved in

1    constitutional violations so that violations of citizen's constitutional

2    rights were not only accepted, but were customary;

3    h.    The policy, custom and/or practice of County of San Diego for its

4    social workers – without question, investigation, and/or hesitation,  to

5    aid, assist, collaborate, and/or participate in the seizure of children

6    from their parents' custody, in conjunction with City of San Diego

7    Police Department.

8    (This list is not exhaustive due to the pending nature of discovery and the

9    privileged and protected records of investigative and juvenile dependency type

10    proceedings. Plaintiff may seek leave to amend this pleading as more information

11    becomes available.)

12    102.   On information and belief, Defendant County of San Diego has

13    engaged in each of the customs and/or practices identified above on an ongoing

14    and continuous basis since at least 2004. See, e.g., *Parkes v. County of San Diego*

15    345 F. Supp. 2d 1071 (D. Ca. 2004) if not earlier, and continues to engage in these

16    practices on an ongoing and daily basis.

17    103.   The Defendant County of San Diego is aware that its social workers

18    seize children from the care of their parents without first obtaining judicial

19    authorization, parental consent, and/or pursuing reasonable avenues of

20    investigation, when there is no emergency circumstance and in contravention of

21    the rights of both parents and children. Yet, Defendant County of San Diego made

22    a knowing and conscious decision to refrain from promulgating a policy to prevent

23    such misconduct, and have consistently and knowingly failed to provide any

24    training to their social workers to inform them of the rights of parents and children

25    to remain together absent undue government interference, the obligation of the

26    officers to first obtain a warrant before seizing children from their parents when no

27    exigency exists. The Defendant County of San Diego's decision to disregard these

28    constitutional protections in the face of a known need for such policies to prevent

1  the specific misconduct alleged herein above, *i.e.* the known need for a specific

2  policy prohibiting their social workers from seizing children from their parents

3  without a warrant or emergency, is itself a "policy" decision which constitutes a

4  policy of deliberate indifference. This policy of deliberate indifference, and the

5  lack of prophylactic policies and training in the face of a known need for such

6  policies and training was a substantial factor in causing the Plaintiff harm, in that

7  the SOCIAL WORKER DEFENDANTS followed and acted pursuant to the

8  regularly established customs, practices, and well known and accepted standard

9  operating procedures when they seized C.M. from his father's custody without

10  judicial authorization, parental consent, and without specific, reasonable, and

11  articulable evidence to suggest that the child was in immediate risk of suffering

12  serious bodily injury – none of which was constitutionally permissible. All of

13  which would never happen if the Defendant County of San Diego had refrained

14  from deliberately ignoring its obligation to promulgate policies and the

15  concomitant training necessary to inform its social workers of the constitutional

16  proscriptions which govern their daily work.

17      104.  Plaintiff is informed and believes, that Defendant County of San

18  Diego failed to establish, adopt, and/or implement policies, procedures, and

19  training regarding the constitutional protections afforded to a parent and child by

20  the First and Fourteenth Amendments. Without such policies, procedures, customs

21  and/or practices in place, the County of San Diego Social Workers were allowed

22  and permitted to engage in conduct that was in violation of Plaintiff's

23  constitutional rights as more specifically set out in the General Allegations above.

24  On information and belief, the Defendant County's failure to adopt such policies

25  was the moving force behind the violations of Plaintiff's constitutional rights and

26  includes, but is not limited to:

27        a.    The County of San Diego had no written policy, procedure,

28               custom, practice and/or training regarding the circumstances

1  under which a social worker must obtain judicial authorization
2  prior to removing a child from the custody of its parent(s);

3  b.  The County of San Diego had no written policy, procedure,
4  custom, practice and/or training requiring a county social
5  worker to obtain judicial authorization prior to removing a
6  child from the custody of its parent(s), when there was no
7  evidence that the child was in immediate risk of suffering
8  serious bodily injury;

9  c.  The County of San Diego had no written policy, procedure,
10  custom, practice and/or training delineating the constitutional
11  protections afforded to a parent and child by the First and
12  Fourteenth Amendments;

13  d.  The County of San Diego had no written policy, procedure,
14  custom, practice and/or training instructing that a  social
15  worker must possess "specific, articulable evidence" that a
16  child would be placed at imminent risk of suffering serious
17  harm at the hands of the parent(s), prior to removing the child
18  from its parent's custody without judicial authorization;

19  e.  The County of San Diego had no written policy, procedure,
20  custom, practice and/or training instructing that a social worker
21  must obtain judicial authorization or parental consent prior to
22  interviewing, examining, and/or interrogating a child– outside
23  the presence of its parent(s) – when there is no specific
24  articulable evidence that the child is in immediate risk of
25  suffering serious bodily injury;

26  f.  The County of San Diego had no written policy, procedure,
27  custom, practice and/or training instructing that judicial
28  authorization or parental consent must be obtained prior to

1  performing and/or conducting a physical medical exam,
2  evaluation, and/or assessment of a child – outside the presence
3  of its parent(s) – when there is no specific articulable evidence
4  that the child is in immediate risk of suffering serious bodily
5  injury;
6  g.  The County of San Diego had no written policy, procedure,
7  custom, practice and/or training instructing that a county social
8  worker must pursue reasonable avenues of investigation before
9  removing a child from the custody of its parent(s), when there
10  was no evidence that the child was in immediate risk of
11  suffering serious bodily injury;
12  h.  The County of San Diego had no written policy, procedure,
13  custom, practice and/or training instructing that a county social
14  worker must perform an independent investigation, when
15  aiding, assisting, collaborating, and/or participating in the
16  seizure of children from their parents' custody, in conjunction
17  with San Diego Police Department.
18  By deliberately refraining from promulgating any of the aforementioned
19  policies, procedures, customs, practices and/or training, the County permitted the
20  aforementioned basic policy decisions to be made by the lower level social
21  workers, As a result, the Defendant County of San Diego's policy, custom, and/or
22  practice – as established, adopted, and implemented by the Social Worker
23  Defendants – was to detain a child from its parent(s) without judicial
24  authorization, parental consent, and without specific, articulable evidence to
25  suggest that the child is in immediate risk of suffering serious bodily injury. These
26  policies, customs, and/or practices – that disregard the Plaintiff's constitutional
27  protections – were a substantial factor in causing harm to the Plaintiff. Thus, as a
28  matter of law, because there was no formal policy preventing the aforementioned

misconduct, even though one was obviously needed, the officers on the line acted on behalf of the County in making final policy decisions – which is exactly what the did when they seized, interviewed, and/or performed a physical medical examination of C.M. without a warrant, court order, parental consent, parental notice, and in the absence of any exigency.

105.   The state of the law regarding the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments was clearly established well before 2013. As such, the Defendant County of San Diego knew before 2013 that its county social workers required training on the constitutional protections afforded to a parent and child. On information and belief, despite this knowledge, the Defendant County of San Diego deliberately failed to train its county social workers on these constitutional protections, including, but not limited to, the following:

a.   The County of San Diego did not provide training to its county social workers regarding the circumstances under which judicial authorization must be obtained prior to removing a child from the custody of its parent(s);

b.   The County of San Diego did not provide training to its county social workers regarding the fact that judicial authorization must be obtained prior to removing a child from the custody of its parent(s), when there was no evidence that the child was in immediate risk of suffering serious bodily injury;

c.   The County of San Diego did not provide training to its county social workers regarding the fact that judicial authorization or parental consent is required prior to interviewing, questioning, examining, and/or interrogating a child – outside the presence of its parent(s) – when there is no specific articulable evidence

that the child is in immediate risk of suffering serious bodily

injury;

    d.    The County of San Diego did not provide training to its county

employees and/or agents regarding the requirement that judicial

authorization or parental consent is required prior to

performing a physical medical examination, assessment, and/or

evaluation of a child outside the presence of its parent(s) –

when there is no specific, reasonable, and articulable evidence

that the child is in immediate risk of suffering serious bodily

injury;

    e.    The County of San Diego did not provide training to its county

social workers on the well established constitutional

protections afforded to a parent and child by the First and

Fourteenth Amendments;

The Defendant County of San Diego deliberate failure to train its county social workers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that HHSA agents working for the Defendant County of San Diego were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the County's social workers, and/or agents, seized, interviewed, and/or performed a physical medical examination of C.M., without judicial authorization, parental consent, and in the absence of exigent circumstances.

106.   Plaintiff is informed and believes, that Defendant Mork was acting pursuant to and in accordance with the County of San Diego's policies, customs, and/or practices, when she seized C.M. from the Plaintiff's custody without a warrant, judicial authorization, a court order, exigent circumstances, and/or in the absence of any evidence to suggest that C.M. was likely to suffer immediate physical bodily injury at the hands of Plaintiff. Plaintiff is further informed and

believes, that Defendant Mork's seizure, and/or participation in the seizure of, C.M. from Plaintiff's custody – without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child was in immediate risk of suffering serious bodily injury – was known to and approved by her supervisor prior to the seizure.

107.   Plaintiff is informed and believes, that Defendant Mork was acting pursuant to and in accordance with the County of San Diego's policies, customs, and/or practices, when she interrogated C.M. without a warrant, parental consent, judicial authorization, a court order, and/or exigent circumstances. Plaintiff is further informed and believes, that Defendant Mork's interrogation of C.M. – without a warrant, parent consent, judicial authorization, a court order, and/or exigent circumstances – was known to and approved by her supervisor prior to the interrogation.

108.   Plaintiff is informed and believes, that Defendant Golly was acting pursuant to and in accordance with the County of San Diego's policies, customs, and/or practices, when she twice interrogated C.M. without a warrant, parent consent, judicial authorization, a court order, and/or exigent circumstances. Plaintiff is informed and believes, that Defendant Golly's two interrogations of C.M. – without a warrant, parent consent, judicial authorization, a court order, and/or exigent circumstances – were known to and approved by her supervisor prior to the interrogations.

109.   Plaintiff is informed and believes, that children are subjected to a physical examination upon arrival at Polinsky without parental consent or notification. Plaintiff is further informed and believes, that these physical and medical examinations are performed pursuant to and in accordance with the County of San Diego's polices, customs, and/or practices.

110.   Plaintiff is informed and believes that, the County of San Diego failed to investigate, reprimand, discipline, and/or discharge Defendant Mork for seizing

1   and/or participating in the seizure of C.M. from Plaintiff's custody without judicial

2   authorization, parental consent, and without specific, reasonable, and articulable

3   evidence to suggest that the child was in immediate risk of suffering serious bodily

4   injury, as set forth in the general allegations. Plaintiff is informed and believes

5   that, the County of San Diego has and continues to refuse to admit that Defendant

6   Mork's warrantless seizure of C.M. was error and/or constituted a constitutional

7   violation. Plaintiff is informed and believes that, the County of San Diego ratified

8   and/or approved of Defendant Mork's warrantless seizure of C.M.

9       111.   Plaintiff is informed and believes that, the warrantless seizure of C.M.

10  by the Defendant Mork was not an isolated incident specific to his circumstances.

11  On the contrary, such warrantless and unlawful seizures are regular and recurring

12  to the extent that it is the standard operating procedure for County social workers

13  to seize and/or interview children without first obtaining a court order, warrant,

14  parental consent, and/or even where no exigency exists. Plaintiff is informed and

15  believes that, County of San Diego social workers regularly seize children from

16  their parent(s) custody – without a warrant, judicial authorization, a court order,

17  exigent circumstances, and/or in the absence of any evidence to suggest that the

18  child was likely to suffer immediate physical bodily. This unlawful conduct has

19  resulted in several lawsuits against the multiple offending social workers (for

20  violation of constitutional rights), and the County of San Diego (for its policies,

21  practices, and/or customs being the moving force behind these violations). This

22  includes, but is not limited to, the following:

23      •   *Swartwood v. County of San Diego*, 2014 U.S. Dist. LEXIS 182020

24      •   *Artea Dunn v. County of San Diego*, Case No.

25          13-CV-0209-JAH-KSC

26      •   *Donna Greenspan v. County of San Diego*, Case No. 13-CV-00210-

27          LAB-DHB

28      •   *Michael Lewis v. County of San Diego*, Case No. 13-cv-2818-L-JMA

---

*SECOND* AMENDED COMPLAINT FOR DAMAGES

112.   Plaintiff is informed and believes that, the Defendant County of San Diego never investigates, reprimands, disciplines, and/or discharges a social worker (including those named as Defendants in the above identified lawsuits) who seizes and/or participates in the seizure of a child from its parent's custody without judicial authorization, parental consent, and without specific, articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury. Plaintiff is informed and believes that, the County of San Diego has and continues to refuse to admit that its social workers commit a constitutional violation when they seize children from their parent(s) custody – without a warrant, judicial authorization, a court order, exigent circumstances, and/or in the absence of any evidence to suggest that the child was likely to suffer immediate physical bodily injury.

113.   In 2010, the County of San Diego issued a special notice titled "Abuse/Neglect Investigations – Authorization to Interview a Child(ren) at School." (*See* Exhibit B and Exhibit C.) This special notice created new policy and procedure for interviewing children at school, and instructed that parental consent or court order was required prior to interviewing a suspected victim of abuse. (*Ibid*.) The forms necessary to obtain an interview order and/or parental consent were also provided to the social workers at that time. (*See* Exhibit C.) Plaintiff is informed and believes that, at present, these policies and procedures have not been rescinded. Plaintiff is informed and believes that, County social workers routinely fail to follow these policies and procedures.

114.   Defendants Mork and Golly interrogated, interviewed, questioned, and/or examined C.M. without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child was in immediate risk of suffering serious bodily injury. Plaintiff is informed and believes that, the County of San Diego failed to investigate, reprimand, discipline, and/or discharge Defendants Mork and/or Golly for interrogating, interviewing,

and/or questioning C.M. without judicial authorization, parental consent, and

without specific, reasonable, and articulable evidence to suggest that the child was

in immediate risk of suffering serious bodily injury. Plaintiff is informed and

believes that, the County of San Diego has and continues to refuse to admit that

Defendants Mork and Golly's interrogation of C.M. was error and/or constituted a

constitutional violation. Plaintiff is informed and believes that, the County of San

Diego ratified and/or approved Defendants Mork and Golly's interrogations of

C.M.

115.   Plaintiff is informed and believes that, County of San Diego social

workers regularly interrogate children – without judicial authorization, parental

consent, and without specific, reasonable, and articulable evidence to suggest that

the child was in immediate risk of suffering serious bodily injury. Plaintiff is

further informed and believes that, the Defendant County of San Diego never

investigates, reprimands, disciplines, and/or discharges a social worker for

interrogating a child – without judicial authorization, parental consent, and

without specific, reasonable, and articulable evidence to suggest that the child was

in immediate risk of suffering serious bodily injury. Plaintiff is informed and

believes that, the County of San Diego has refused, and continues to refuse, to

admit that its social workers commit a constitutional violation when they

interrogate a child – without judicial authorization, parental consent, and without

specific, reasonable, and articulable evidence to suggest that the child was in

immediate risk of suffering serious bodily injury

116.   Plaintiff is informed and believes, that the County of San Diego took

no steps to investigate, reprimand, and/or discharge Doctor DOES 91-100 for

performing physical and medical examinations of C.M. – without parental consent,

judicial authorization, and/or exigent circumstances. Plaintiff is informed and

believes that, the County of San Diego has refused, and continues to refuse to

admit that physical and medical examinations of C.M. – without parental consent,

1   judicial authorization, and/or exigent circumstances – was unlawful and/or

2   constitutes a constitutional violation.

3        117.   Forensic physical and medical examinations are regularly performed

4   – without parental consent, judicial authorization, and/or exigent circumstances –

5   at Polinsky Children's Center at the behest of San Diego County. Plaintiff is

6   informed and believes that, it is the standard operating procedure of the Defendant

7   County of San Diego to perform physical medical examinations – without parental

8   notice, parental consent, court order, and/or without specific, reasonable, and

9   articulable evidence to suggest that the child was in immediate risk of suffering

10  serious bodily injury – on all children being admitted and/or entering Polinsky

11  Children's Center. Pursuant to County policy all parents are excluded from these

12  examinations. This unlawful conduct has resulted in several lawsuits against the

13  County of San Diego (for its policies, practices, and/or customs being the moving

14  force behind these violations). This includes, but is not limited to, the following:

15        •   *Swartwood v. County of San Diego*, 2014 U.S. Dist. LEXIS 182020

16            (S.D. Cal. 2014)

17        •   *Parkes v. County of San Diego*, 345 F.Supp.2d 1071 (2004)

18  Plaintiff is informed and believes, that despite these lawsuits, and

19  knowledge that the medical examinations violate a family's constitutional rights,

20  the County of San Diego failed to promulgate any necessary policy and/or fails to

21  change its current policy and/or practices.

22        118.   Defendant County of San Diego, including by and through its entity

23  HHSA and its policymaking officials, breached its duties and obligations to

24  Plaintiff by, but not limited to, failing to establish, implement and follow the

25  correct and proper constitutional policies, procedures, customs and practices; by

26  failing to properly select, supervise, train, control, and review its agents and/or

27  employees as to their compliance with constitutional safeguards; and by

28  deliberately permitting the SOCIAL WORKER DEFENDANTS, County of San

1   Diego Defendant DOES 51 through 90, and Doctor Does 91-50 inclusive, to
2   engage in the unlawful and unconstitutional conduct as herein alleged, with a total
3   and deliberate indifference to the rights of affected parents, including Plaintiff's
4   herein.

5       119.   Defendant County of San Diego knew, or should have known, that by
6   breaching the above-mentioned duties and obligations that it was reasonably
7   foreseeable that its agency policies, practices, customs, and usages would, and did,
8   directly cause Plaintiff to be injured and damaged by Defendant County of San
9   Diego's wrongful practices, or deliberate lack of official policies to prevent the
10  known practices from occurring.

11      120.   In fact, the Defendant County of San Diego has been aware, since at
12  least 2004 (*see Parkes v. County of San Diego* 345 F. Supp. 2d 1071 (D. Ca.
13  2004)) that its HHSA agents regularly and customarily seized and detained
14  children from their families, parents, and homes in the manner described herein –
15  i.e, in the absence of any exigency without first obtaining a warrant. Yet, despite
16  such foreknowledge, Defendant County of San Diego has deliberately refrained
17  from and refused to promulgate any form of prophylactic policy to define
18  acceptable conduct of its HHSA workers, employees, and/or agents in such a
19  manner as to protect the citizens with whom they regularly come into contact. The
20  conduct described herein is so pervasive that it has become common knowledge
21  that the type of misconduct alleged herein is commonplace within HHSA to such
22  an extent that Defendant County of San Diego can be said to be deliberately
23  indifferent to the need to promulgate policies and provide training to rein in its
24  agents and/or employees, and prevent the type of misconduct alleged herein. Such
25  a policy of indifference was in fact the moving force behind the violation of
26  Plaintiff's constitutional rights as alleged herein above. Namely, Plaintiff's civil
27  rights were violated, as mentioned above, when SOCIAL WORKER
28  DEFENDANTS, and County of San Diego Defendant DOES 51 through 90,

inclusive, while acting under color of state law and in conformance with official customs and practices of the County jointly acted to seize Plaintiff's child without a warrant, consent, court order, and/or without any exigent circumstances. Plaintiff's civil rights were again violated, as mentioned above, when Doctor DOES 91-100 performed a physical medical examination on C.M. – without parental consent, parental notice, court order, and/or exigent circumstances.

121.   These actions, and/or inactions, of the Defendant County of San Diego were the moving force behind, and direct and proximate cause of Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial.

## COUNT 2

### (By Plaintiff Against Defendant City of San Diego)

122.   Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 95.

123.   Defendant City of San Diego, including through its police department, is a "person" within the meaning of 42 U.S.C. §1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. POLICE OFFICER DEFENDANTS, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

124.   Defendant City of San Diego, including through its police department and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or

1    stigmatized; and the right to procedural due process. Defendant City of San Diego

2    also had a duty to use reasonable care to select, assign, supervise, train, control

3    and review the activities of all their agents, officers, employees and those acting

4    under them, including within SAN DIEGO POLICE DEPARTMENT, so as to

5    protect these constitutional rights; and to refrain from acting with deliberate

6    indifference to the constitutional rights of Plaintiff in order to avoid causing the

7    injuries and damages alleged herein.

8         125.   Moreover, based on the duties charged to the POLICE OFFICE

9    DEFENDANTS, and police officers, including the powers to seize children from

10   their parents' care, the Defendant City of San Diego, and its policymaking

11   officials, knew or reasonably should have known of the need to establish customs,

12   policies, and practices required to protect the aforementioned civil rights of

13   parents and their children with whom their agents regularly came into contact.

14        126.   Defendant City of San Diego established, adopted, followed, and/or

15   implemented and/or turned a blind eye to customs, and/or practices which were

16   followed, complied with, and carried out by the POLICE OFFICER

17   DEFENDANTS when Plaintiff's constitutional rights were violated by and/or

18   through the seizure of C.M., without a warrant or other court order in the absence

19   of any exigency or parental consent. At the time of the underlying events, the

20   regularly established customs and practices of the Defendant City of San Diego

21   and SAN DIEGO POLICE DEPARTMENT, that were followed, adhered to,

22   complied with, and carried out by the POLICE OFFICER DEFENDANTS were

23   the moving force, that is, the actual, direct, and proximate cause of the violations

24   of Plaintiff's constitutional rights include, but are not limited to:

25        a.    The custom and/or practice of detaining and/or removing children

26              from their family and homes without exigent circumstances

27              (imminent danger of serious bodily injury), court order, reasonable

28              investigation, and/or consent;

b.    The policy, custom, and/or practice of removing children from their family and their homes without first performing and/or pursuing any and/or reasonable investigation, and then only investigating any allegations of abuse, after the seizure;

c.    The custom and/or practice of removing and detaining children, and continuing to detain them for an unreasonable period long after any alleged basis for detention is negated;

d.    The policy, custom, and/or practice of interviewing, questioning, interrogating, and/or examining a child outside the presence of its parent(s) – without judicial authorization, prior court order, parental consent, and/or without specific, reasonable, and articulable evidence that the child is in immediate risk of suffering serious bodily injury;

e.    The unwritten policy of acting with deliberate indifference to the rights of children and parents with whom City of San Diego police officers can regularly be expected to come into contact by *failing* and/or *refusing* to implement a practice of regular and adequate training and/or supervision, and/or failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendments.

f.    The consistent failure by the Defendant City of San Diego to investigate violations of constitutional rights by its police officers, and consistent failure to discipline its police officers and their supervisors involved in constitutional violations so that violations of citizen's constitutional rights were not only accepted, but were customary;

1    (This list is not exhaustive due to the pending nature of discovery and the

2    privileged and protected records of investigative and juvenile dependency type

3    proceedings. Plaintiff may seek leave to amend this pleading as more information

4    becomes available.)

5    127.   On information and belief, Defendant City of San Diego  has engaged

6    in each of the customs and/or practices identified above on an ongoing and

7    continuous basis since at least 2008, if not earlier, and continues to engage in

8    these practices on an ongoing and daily basis.

9    128.   Defendant City of San Diego is aware that its police officers seize

10   children from the care of their parents without first obtaining judicial

11   authorization, parental consent, and/or pursuing reasonable avenues of

12   investigation when there is no emergency circumstance and in contravention of the

13   rights of both parents and children. Yet, Defendant City of San Diego has made a

14   knowing and conscious decision to refrain from promulgating a policy to prevent

15   such misconduct, and have consistently and knowingly failed to provide any

16   training to its police officers to inform them of the rights of parents and children to

17   remain together absent undue government interference, the obligation of the

18   officers to first obtain a warrant before seizing children from their parents when no

19   exigency exists, and/or the obligation to pursue reasonable avenues of

20   investigation before seizing children from their parents when no exigency exists.

21   Defendant City of San Diego's decision to disregard these constitutional

22   protections in the face of a known need for such policies to prevent the specific

23   misconduct alleged herein above, *i.e.* the known need for a specific policy

24   prohibiting their police officers from seizing children from their parents without a

25   warrant or emergency, is itself a 'policy' decision which constitutes a policy of

26   deliberate indifference. This policy of deliberate indifference, and the lack of

27   prophylactic policies and training in the face of a known need for such policies

28   and training was a substantial factor in causing the Plaintiff harm, in that the

POLICE OFFICER DEFENDANTS followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures when they seized C.M. without judicial authorization, parental consent, pursuing reasonable avenues of investigation, and/or without specific, reasonable, and articulable evidence to suggest that the child was in immediate risk of suffering serious bodily injury – none of which was constitutionally permissible, and which would never happen if the Defendant City of San Diego had refrained from ignoring its obligation to promulgate policies and the concomitant training necessary to inform its police officers of the constitutional proscriptions which govern their daily work.

129.   Plaintiff is informed and believes, that Defendant City of San Diego failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments. Without such policies, procedures, customs and/or practices in place, the POLICE OFFICER DEFENDANTS were allowed and/or permitted to engage in conduct that was in violation of Plaintiff's constitutional rights and more specifically in the General Allegations set out herein above. On information and belief, the Defendant City of San Diego's failure to adopt such policies was the moving force behind the violations of Plaintiff's constitutional rights and includes, but is not limited to:

> a.   The City of San Diego had no written policy, procedure, custom, practice and/or training regarding the circumstances under which a police officer must obtain judicial authorization prior to removing a child from the custody of its parent(s);
>
> b.   The City of San Diego had no written policy, procedure, custom, practice and/or training requiring a City police officer to obtain judicial authorization prior to removing a child from the custody of its parent(s), when there was no evidence that

1                 the child was in immediate risk of suffering serious bodily

2                 injury;

3      c.     The City of San Diego had no written policy, procedure,

4                 custom, practice and/or training delineating the constitutional

5                 protections afforded to a parent and child by the First and

6                 Fourteenth Amendments;

7      d.     The City of San Diego had no written policy, procedure,

8                 custom, practice and/or training instructing that a police officer

9                 must possess "specific, articulable evidence" that a child would

10               be placed at imminent risk of suffering serious harm at the

11               hands of the parent(s), prior to removing the child from its

12               parent's custody without judicial authorization;

13      e.     The City of San Diego had no written policy, procedure,

14               custom, practice and/or training instructing that a police officer

15               must obtain judicial authorization or parental consent prior to

16               interviewing, examining, and/or interrogating a child– outside

17               the presence of its parent(s) – when there is no specific

18               articulable evidence that the child is in immediate risk of

19               suffering serious bodily injury;

20      f.     The City of San Diego had no written policy, procedure,

21               custom, practice and/or training instructing that a police officer

22               must first pursue reasonable avenues of investigation, prior to

23               removing the child from its parent's custody without judicial

24               authorization;

25     By deliberately refraining from promulgating any of the aforementioned

26 policies, procedures, customs, practices and/or training, Defendant City of San

27 Diego permitted the aforementioned basic policy decisions to be made by the

28 lower level police officers, As a result, the Defendant City of San Diego's policy,

1  custom, and/or practice – as established, adopted, and implemented by the

2  POLICE OFFICER DEFENDANTS – was to detain a child from its parent(s)

3  without judicial authorization, parental consent, and/or without specific,

4  articulable evidence to suggest that the child is in immediate risk of suffering

5  serious bodily injury. These policies, customs, and/or practices – that disregard the

6  Plaintiff's constitutional protections – were a substantial factor in causing harm to

7  the Plaintiff. Thus, as a matter of law, because there was no formal policy

8  preventing the aforementioned misconduct, even though one was obviously

9  needed, the officers on the line acted on behalf of the Defendant City of San Diego

10  in making final policy decisions – which is exactly what the did when they seized

11  the Plaintiff's child without a warrant and in the absence of any exigency.

12       130.   The state of the law regarding the constitutional protections afforded

13  to a parent and child by the First and Fourteenth Amendments was clearly

14  established well before 2013. As such, the Defendant City of San Diego knew

15  before 2013 that its police officers required training on the constitutional

16  protections afforded to a parent and child. On information and belief, despite this

17  knowledge, Defendant City of San Diego  deliberately failed to train its police

18  officers on these constitutional protections, including, but not limited to, the

19  following:

20         a.   The City of San Diego did not provide training to its police

21            officers regarding the circumstances under which judicial

22            authorization must be obtained prior to removing a child from

23            the custody of its parent(s);

24         b.   The City of San Diego did not provide training to its police

25            officers regarding the fact that judicial authorization must be

26            obtained prior to removing a child from the custody of its

27            parent(s), when there was no evidence that the child was in

28            immediate risk of suffering serious bodily injury;

c.   The City of San Diego did not provide training to its police officers regarding the fact that judicial authorization or parental consent is required prior to interviewing, examining, and/or interrogating a child – outside the presence of its parent(s) – when there is no specific articulable evidence that the child is in immediate risk of suffering serious bodily injury;

d.   The City of San Diego did not provide training to its police officers on the well established constitutional protections afforded to a parent and child by the First and Fourteenth Amendments;

Defendant City of San Diego's deliberate failure to train its police officers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that the POLICE OFFICER DEFENDANTS were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when they seized and/or interviewed Plaintiff's child, without judicial authorization, parental consent, pursuing reasonable avenues of investigation, and/or in the absence of exigent circumstances.

131.   Plaintiff is informed and believes, that the POLICE OFFICER DEFENDANTS were acting pursuant to and in accordance with the City of San Diego's policies, customs, and/or practices, when they seized C.M. from Plaintiff's custody – on two separate occasions – without a warrant, judicial authorization, a court order, exigent circumstances, and/or in the absence of any evidence to suggest that C.M. was likely to suffer immediate physical bodily injury at the hands of Plaintiff. Plaintiff is informed and believes, that the POLICE OFFICER DEFENDANTS two seizures of C.M. from Plaintiff's custody – without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child was in immediate risk of

1   suffering serious bodily injury – were know to and approved by their supervisors

2   prior to the seizure.

3       132.   Plaintiff is informed and believes, that POLICE OFFICER

4   DEFENDANTS were acting pursuant to and in accordance with the City of San

5   Diego's policies, customs, and/or practices, when they interrogated C.M. multiple

6   times without a warrant, parent consent, judicial authorization, a court order,

7   and/or exigent circumstances. Plaintiff is informed and believes, that the POLICE

8   OFFICER DEFENDANTS' multiple interrogations of C.M. – without a warrant,

9   parent consent, judicial authorization, a court order, and/or exigent circumstances

10  – were know to and approved by their supervisors prior to the interrogations.

11      134.   Plaintiff is informed and believes that, the City of San Diego failed to

12  investigate, reprimand, discipline, and/or discharge POLICE OFFICER

13  DEFENDANTS were for seizing C.M. from Plaintiff's custody – without judicial

14  authorization, parental consent, and without specific, reasonable, and articulable

15  evidence to suggest that C.M. was in immediate risk of suffering serious bodily

16  injury, as set forth in the general allegations, above. Plaintiff is informed and

17  believes that, the City of San Diego has and continues to refuse to admit that

18  POLICE OFFICER DEFENDANTS' warrantless seizures of C.M. were error

19  and/or constituted a constitutional violation. Plaintiff is informed and believes

20  that, the City of San Diego ratified and/or approved of POLICE OFFICER

21  DEFENDANTS' warrantless seizures of C.M.

22      135.   Plaintiff is informed and believes that, the warrantless seizures of

23  C.M. by POLICE OFFICER DEFENDANTS were not an isolated incident specific

24  to his circumstances. On the contrary, such warrantless and unlawful seizures are

25  regular and recurring to the extent that it is the standard operating procedure for

26  City police officers to seize and/or interview children without first obtaining a

27  court order, warrant, parental consent, and/or where no exigency exists. Plaintiff is

28  informed and believes that, City of San Diego police officers regularly seize

1  children from their parent(s) custody – without a warrant, judicial authorization, a

2  court order, exigent circumstances, and/or in the absence of any evidence to

3  suggest that the child was likely to suffer immediate physical bodily injury. This

4  unlawful conduct has resulted in lawsuits against the multiple offending police

5  officers (for violation of constitutional rights), and the City of San Diego (for its

6  policies, practices, and/or customs being the moving force behind these

7  violations). This includes, but is not limited to, the following:

8         •   *Kemper v. County of San Diego*, 2013 Cal.App.Unpub. LEXIS 2818 (

9             2013)

10        •   *Donna Greenspan v. County of San Diego*, Case No. 13-CV-00210-

11            LAB-DHB

12        136.   Plaintiff is informed and believes that, the Defendant City of San

13  Diego never investigates, reprimands, disciplines, and/or discharges its police

14  officers (including those named as Defendants in the above identified lawsuits)

15  who seize and/or participate in the seizure of a child from its parent's custody

16  without judicial authorization, parental consent, and without specific, articulable

17  evidence to suggest that the child is in immediate risk of suffering serious bodily

18  injury. Plaintiff is informed and believes that, the City of San Diego has refused,

19  and continues to refuse to admit that its police officers commit a constitutional

20  violation when they seize children from their parent(s) custody – without a

21  warrant, judicial authorization, a court order, exigent circumstances, and/or in the

22  absence of any evidence to suggest that the child was likely to suffer immediate

23  physical bodily injury.

24        137.   POLICE OFFICER DEFENDANTS interrogated, interviewed,

25  questioned, and/or examined C.M. without judicial authorization, parental consent,

26  and without specific, reasonable, and articulable evidence to suggest that the child

27  was in immediate risk of suffering serious bodily injury. Plaintiff is informed and

28  believes that, the City of San Diego failed to investigate, reprimand, discipline,

1 and/or discharge the POLICE OFFICER DEFENDANTS for interrogating,

2 interviewing, and/or questioning C.M. without judicial authorization, parental

3 consent, and without specific, reasonable, and articulable evidence to suggest that

4 the child was in immediate risk of suffering serious bodily injury. Plaintiff is

5 informed and believes that, the City of San Diego has refused and continues to

6 refuse to admit that the POLICE OFFICER DEFENDANTS' interrogations of

7 C.M. was error and/or constituted a constitutional violation. Plaintiff is informed

8 and believes that, the City of San Diego ratified and/or approved the POLICE

9 OFFICER DEFENDANTS' interrogations of C.M.

10      138.   Plaintiff is informed and believes that, City of San Diego police

11 officers regularly interrogate children – without judicial authorization, parental

12 consent, and without specific, reasonable, and articulable evidence to suggest that

13 the child was in immediate risk of suffering serious bodily injury. Plaintiff is

14 informed and believes that, the Defendant City of San Diego never investigates,

15 reprimands, disciplines, and/or discharges a police officer for interrogating a child

16 – without judicial authorization, parental consent, and without specific,

17 reasonable, and articulable evidence to suggest that the child was in immediate

18 risk of suffering serious bodily injury. Plaintiff is informed and believes that, the

19 City of San Diego has, and continues to refuse, to admit that its police officers

20 commit a constitutional violation when they interrogate a child – without judicial

21 authorization, parental consent, and without specific, reasonable, and articulable

22 evidence to suggest that the child was in immediate risk of suffering serious bodily

23 injury.

24      139.   Defendant City of San Diego, including by and through the SAN

25 DIEGO POLICE DEPARTMENT, and its policymaking officials, breached its

26 duties and obligations to Plaintiff by, but not limited to, failing to establish,

27 implement and follow the correct and proper constitutional policies, procedures,

28 customs and practices; by failing to properly select, supervise, train, control, and

1   review its agents and employees as to their compliance with constitutional

2   safeguards; and by deliberately permitting the POLICE OFFICER

3   DEFENDANTS, and City of San Diego affiliated Defendant DOES 1 through 50,

4   inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged

5   with at total and deliberate indifference to the rights of affected parents, including

6   Plaintiff's herein.

7        140.   Defendant City of San Diego knew, or should have  known, that by

8   breaching the above-mentioned duties and obligations, it was reasonably

9   foreseeable that its agency policies, practices, customs, and usages would, and did,

10  directly cause Plaintiff to be injured and damaged by Defendant City of San

11  Diego's wrongful practices, or deliberate lack of official policies to prevent the

12  known practices from occurring.

13       141.   In fact, the Defendant City of San Diego has been aware, since at

14  least 2010, that its police officers regularly and customarily seized and detained

15  children from their families, parents, and homes in the manner described herein –

16  i.e, in the absence of any exigency without first obtaining a warrant, on a regular

17  and continuous basis. Yet, despite such foreknowledge, Defendant City of San

18  Diego has deliberately refrained and refused to promulgate any form of

19  prophylactic policy to define acceptable conduct of its police officers in such a

20  manner as to protect the citizens with whom they regularly come into contact. The

21  conduct described herein is so pervasive that it has become common knowledge

22  that the type of misconduct alleged herein is commonplace within the SAN

23  DIEGO POLICE DEPARTMENT to such an extent that Defendant City of San

24  Diego can be said to be deliberately indifferent to the need to promulgate policies

25  and provide training to rein in its police officers, and prevent the type of

26  misconduct alleged herein. Such a policy of indifference was in fact the moving

27  force behind the violation of Plaintiff's constitutional rights as alleged herein

28  above. Namely, Plaintiff's civil rights were violated, as mentioned above, when

1   POLICE OFFICER DEFENDANTS, and City of San Diego affiliated Defendant

2   DOES 1 through 50, while acting under color of state law and in conformance

3   with official customs and practices of the Defendant City of San Diego jointly

4   acted to seize Plaintiff's child without a warrant.

5          142.   These actions, and/or inactions, of the Defendant City of San Diego

6   were the moving force behind, and direct and proximate cause of Plaintiff's

7   injuries, as alleged herein; and as a result, Plaintiff has sustained general and

8   special damages, to an extent and in an amount to be proven at trial.

9                        **THIRD CLAIM FOR RELIEF:**

10                  **CHILD ABDUCTION (Cal. Civil Code §49)**

11          **By PLAINTIFF Against Defendant CHARLES COX SR.**

12          143.   Plaintiff realleges, and to the extent applicable, incorporates herein as

13   if set forth in full, Paragraphs 1 through 60.

14          144.   At all times mentioned herein, C.M. was and now is, the minor son of

15   Plaintiff, and Plaintiff was entitled to custody and control of C.M. during his

16   minority.

17          145.   Defendant COX knew that C.M. was the child of Plaintiff, but

18   wrongfully contrived and intended to deprive Plaintiff of C.M.'s society and

19   interfere with Plaintiff's right to custody. Defendant COX knew that Plaintiff

20   would not, and did not, consent or allow C.M. to leave Plaintiff's home, and/or

21   accompany Defendant COX.

22          146.   On January 22, 2013, in the County of San Diego, State of California,

23   Defendant COX abducted, removed, and/or enticed C.M. from the custody and

24   control of Plaintiff. Defendant COX induced C.M. into leaving Plaintiff's home,

25   against Plaintiff's will, and without his consent.

26          147.   Defendant COX interfered with Plaintiff's custody and control of

27   C.M. By reason of these wrongful acts by COX, Plaintiff suffered, and will

28

1  continue to suffer, physical, mental, and emotional injury, all to an extent and in
2  an amount subject to proof at trial.

3      148.  Defendant COX knew or should have known that his actions would,
4  or were likely to injure and damage the Plaintiff. Plaintiff is informed and
5  believes, and thereon alleges, that Defendant COX intended to cause injury and
6  damage to Plaintiff, and/or acted with a willful and conscious disregard of
7  Plaintiff's rights, thus entitling Plaintiff to recover punitive damages against
8  Defendant COX pursuant to Cal. Civil Code §3294.

9              **FOURTH CLAIM FOR RELIEF:**
10   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
11      **By PLAINTIFF Against Defendant CHARLES COX SR.**

12      149.  Plaintiff realleges, and to the extent applicable, incorporates herein as
13  if set forth in full, paragraphs 1 through 60.

14      150.  Plaintiff is informed and believes and thereon alleges that Defendant
15  COX engaged in the above-mentioned extreme, outrageous, unlawful and
16  unprivileged conduct including, but not limited to, removing C.M. from the care
17  and custody of Plaintiff, against his will, and without his consent. These acts
18  exceeded the bounds of common decency usually tolerated by a civilized society.

19      151.  Plaintiff is informed and believes and thereon alleges that Defendant
20  COX intended to cause harm to Plaintiff, or acted with reckless disregard for the
21  possibility that Plaintiff would suffer extreme emotional distress as a result of the
22  outrageous conduct listed above.

23      152.  As the direct and proximate result of ( Defendant COX's extreme and
24  outrageous conduct, Plaintiff has suffered extreme emotional and physical distress,
25  including but not limited to fright, nervousness, sleeplessness, anxiety, worry,
26  mortification, shock, humiliation, and indignity, to an extent and in an amount
27  subject to proof at trial. Nobody, including Plaintiff, could reasonably be expected

28

1   to endure the types of affront inflicted upon Plaintiff without sustaining the type of

2   damages herein alleged.

3       153.   Plaintiff is informed and believes and thereon alleges that Defendant

4   COX acted knowingly and wilfully, with malice and oppression, and with the

5   intent to harm Plaintiff. Therefore, Plaintiff is entitled to an award of punitive

6   damages for the purpose of punishing said Defendant, and to deter him and others

7   from such conduct in the future.

8                           **FIFTH CLAIM FOR RELIEF:**

9                                 **NEGLIGENCE**

10          **By PLAINTIFF Against Defendant Charles Cox Sr.**

11      154.   Plaintiff realleges, and to the extent applicable, incorporates herein as

12   if set forth in full, Paragraphs 1 through 60.

13      155.   At all relevant times, Defendant COX owed Plaintiff a duty not to

14   interfere with the relationship between Plaintiff and C.M., and with Plaintiff's

15   right to the care, custody, and companionship of his son.

16      156.   On or about January 22, 2013, Defendant COX breached his duty not

17   to interfere with the relationship between Plaintiff and C.M. and with Plaintiff's

18   right to the care, custody, and companionship of his son by wrongfully and

19   tortiously removing C.M. from his father's care, custody and companionship,

20   against Plaintiff's will and without his consent.

21      157.   As the direct and proximate result of Defendant COX's  extreme and

22   outrageous conduct, Plaintiff has suffered extreme emotional and physical distress,

23   including but not limited to fright, nervousness, sleeplessness, anxiety, worry,

24   mortification, shock, humiliation, and indignity, to an extent and in an amount

25   subject to proof at trial.

26                                  **PRAYER**

27      WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS,

28   and each of them  as follows:

1.   Plaintiffs demand a jury trial as to the issues so triable;

2.   General damages and special damages according to proof;

3.   Punitive damages as allowed by law, against the individual defendants only and not against any municipal defendant or any agency thereof;

4.   Attorneys fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5.   Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief based upon a separate application);

6.   Costs of suit incurred herein;

7.   Such further relief as  allowed by law; and

8.   Such further relief as the Court deems just and proper.


Dated: May 19, 2015          THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

                              /s/ Stephen D. Daner
                             Shawn A. McMillan, Esq.
                             Stephen D. Daner, Esq.
                             Dennis B. Atchley, Esq.

                             Attorneys for Plaintiff, CARLOS McMANUS SR.

# Exhibit A

# Exhibit A

# Exhibit A

## BBK BEST BEST & KRIEGER⊱
### ATTORNEYS AT LAW

May 25, 2010

## Memorandum

TO:        San Diego County Office of Education

FROM:      William W. Merrill
           Megan M. Moore

RE:        Frequently Asked Questions: Greene v. Camretta

This memorandum provides a list of frequently asked questions regarding the impact of *Greene v. Camreta* (9th Cir. 2009) 588 F.3d 1011 (hereinafter referred to as "*Greene*") on school districts. It has been provided to the San Diego County Office of Education for informational purposes only and should not be relied upon in reaching a conclusion in a particular area of law. Applicability of the legal principles discussed may differ substantially in individual situations. School staff and administrators should follow district polices and consult with the district office or district legal counsel regarding specific situations.

### FREQUENTLY ASKED QUESTIONS

#### 1. What is the primary rule announced by the Court in the *Greene case*?

*Greene* requires a representative from a law enforcement or related agency to obtain a warrant or court order or consent from the parent or legal guardian prior to interviewing a student on school grounds during school hours as part of a child abuse investigation, unless exigent circumstances are present such that obtaining a warrant or court order would result in serious bodily injury to the child. The failure to obtain the warrant/court order will result in a violation of the U. S. Constitution's protection from unreasonable searches and seizures.

#### 2. Does *Greene* apply to interviews that are not related to child abuse investigations?

*Greene* may apply to other kinds of interviews. The holding in *Greene* indicates that when a government representative, such as a police officer, interviews a student on school grounds during school hours for "law enforcement purposes," the individual must have a warrant, court order, or consent from the parent or legal guardian unless exigent circumstances exist. Therefore, the *Greene* rule is likely to extend to other situations that involve outside government officials interviewing students for law enforcement purposes, such as a criminal investigation.

*Greene* does not apply unless the interview is for law enforcement purposes. For example, a CPS worker may wish to speak to a child pursuant to obligations related to foster care. *Greene* does not apply to this situation.

It is not up to school staff to determine whether an exception to the warrant/court order requirement applies. Generally, any outside government official who wishes to speak to a student on school grounds, during school hours, should be required to provide documentation of the purpose for their visit. Staff should follow the district's existing policies and procedures in all instances when an outside individual wishes to speak to a student on campus, during school hours. Staff should maintain a copy of the documentation in the appropriate file, pursuant to these procedures.

3.  **What type of documentation must a social worker, police officer, parole officer, or other government official present if they wish to interview a student on campus, during school hours for law enforcement purposes?**

The following documents permit an interview on school grounds, during school hours:

- A warrant or affidavit, signed by a judge of state or federal court, expressly stating that the individual has authority to speak with the specified student;

- A court order expressly stating that the government official has authority to speak with the specified student, such as an order placing a juvenile on probation where the conditions of probation include submitting to searches or seizures (including interviews) without a warrant;[1]

- A written signed consent form indicating that a parent or guardian with legal custody over the student has given consent for the individual to speak with the student.

4.  **What are exigent circumstances and how do I tell if they exist in a particular situation?**

Exigent circumstances exist when caseworker or police officer has reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

It is not up to school staff to determine whether exigent circumstances exist. If the caseworker, probation officer, police officer, or other government agency worker states that there are exigent circumstances, staff should permit the interview to take place. If the individual making the request has documentation of the exigent circumstances, staff should maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures. If the individual states that, due to the exigent circumstances, he or she does not have any documentation, staff should write down who requests the interview, who conducts the interview, and what explanation is provided that exigent circumstances exist. Again, this information should be filed pursuant to the district's existing policies and procedures.

5.  **What if the consent form is signed by a caretaker/caregiver and not the parent or guardian?**

It is not up to school staff to determine whether the consent obtained by the police officer is reasonable. However, if school staff or administrators have reason to believe that the police officer has failed to obtain consent from an available parent or guardian, he or she should discuss the issue with the police officer and document the conversation. Ultimately, if the police officer believes that the consent to interview is reasonable under the circumstances, district staff and administrators should allow the police officer to speak with the student. Staff should maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.

---

[1] This may appear on an order as a waiver of "Fourth Amendment" rights.

- 2 -

### 6. If a CPS worker is conducting an investigation without the presence of a police officer, does *Greene* apply?

A CPS worker acting alone should still have a warrant, court order, or consent from a parent to conduct the interview. The holding in *Greene* was based upon the relationship between the criminal investigation for purposes of prosecuting a parent and the civil investigation for purposes of protecting the child. Based on the "law enforcement purpose" of the interview, the Fourth Amendment applies. Given the connection between the legal and protective nature of child abuse investigations, it is likely to be difficult to determine that the CPS worker is acting without a law enforcement purpose.

### 7. If a CPS worker conducts the investigation based on a report from a school official or employee, does *Greene* apply?

A CPS worker or police officer conducting an investigation based on a report from a school official still needs to have a warrant, court order, or consent from a parent or guardian, unless exigent circumstances exist. *Greene* applies even when the investigation results from the mandatory report of suspected child abuse of school staff or officials. The *Greene* court focused on the law enforcement purpose of the interview. Although school staff and officials are mandated reporters, that does not change the nature or purpose of an interview by the investigator once an investigation begins. The CPS worker and/or police officer is not acting as a school official for the purpose of maintaining discipline when the are conducting a child abuse investigation, even if it was initially reported by school staff or administration.

### 8. Are school officials or staff members permitted to speak with a student regarding concerns about child abuse?

*Greene* does not apply to situations in which school staff or administration interview students for purposes of school safety or discipline. The *Greene* court specifically distinguished between maintaining safety on school grounds and outside authorities conducting investigations for law enforcement purposes. Generally, school staff, faculty, and School Resource Officers ("SROs") are not required to obtain a warrant or consent from the parent/guardian prior to speaking with a student for the purpose of maintaining discipline and/or safety in the classroom, on school grounds, or at school functions. For example, if a teacher makes a general inquiry into the welfare of a particular student, an interview of the student by the teacher does not require a warrant or consent. These duties fall within the District's authority for maintaining a safe, secure, and peaceful campus. (Cal. Const., art. 1, § 28, subd. (c).) Therefore, school officials and staff members do not need a warrant, court order, or consent prior to making a general inquiry into the welfare of a student. School staff and administrators should follow district policies and procedures in these situations.

### 9. Can an SRO interview students?

*Greene* does not apply to situations in which school SROs interview students for purposes of school safety or discipline. The *Greene* court specifically distinguished between school staff (including SROs) maintaining discipline and safety on school grounds and outside authorities conducting investigations for law enforcement purposes. School staff, faculty, and SROs are not required to obtain a warrant or consent from the parent prior to speaking with a student for the purpose of maintaining discipline and/or safety in the classroom, on school grounds, or at school functions. For example, if there is a fight on school grounds, the SRO may need to investigate the incident by

speaking with students who witnessed or participated in the fight. This does not require a warrant, court order, or parent/guardian consent. If the SRO sees students outside of the classroom during class time, he or she may ask the students where they are going and what they are doing. These duties fall within the District's authority for maintaining a safe, secure, and peaceful campus. (Cal. Const., art. 1, § 28, subd. (c).)

However, if an SRO is conducting an interview as part of a law enforcement investigation unrelated to school discipline or school safety issues, then the SRO needs to have a warrant, court order, or consent from a parent, as set forth above.

### 10. What if the SRO's interview leads to a police investigation?

As noted above, *Greene* does not apply to situations in which school SROs interview students for purposes of school safety or discipline. This is true even if an interview that is related to school discipline or safety results in criminal prosecution. Again, if an SRO is conducting an interview as part of a law enforcement investigation unrelated to school discipline or school safety issues, then the SRO needs to have a warrant, court order, or consent from a parent, as set forth above.

### 11. What if school staff or administration call local police to assist with an emergency situation on school grounds?

If there is an emergency on school grounds, school staff and administrators should follow their normal policies and procedures for getting assistance. As noted above, it is not up to school staff to determine whether a police officer is required to obtain a warrant in a particular situation.

### 12. What if a police officer comes on to school grounds to arrest a student who is in possession of a weapon or drugs?

The *Greene* decision applies to interviews conducted for law enforcement purposes. Therefore, an arrest does not fall within the purview of *Greene*. School staff and administrators should follow district policies and procedures and direct any questions about a specific situation to the district office. If a student is arrested, the school must notify the parent, guardian, or responsible relative of the minor regarding the release of the minor to the police officer, and regarding the place to which the minor is reportedly being taken. (Ed. Code, § 48906.)

### 13. What if a police officer wants to interview a student regarding a crime that occurred outside of school grounds?

The holding in *Greene* indicates that when a government representative, such as a police officer, interviews a student on school grounds during school hours for "law enforcement purposes," the individual must have a warrant, court order, or consent from the parent unless exigent circumstances exists. Therefore, *Greene* is likely to apply to this situation.

As noted above, it is not up to school staff to determine whether a law enforcement purpose exists. Generally, any outside individual who wishes to speak to a student on school grounds, during school hours, should provide documentation of the purpose for their visit. District staff can use this documentation to guide them as to whether they are required to permit the interview. Staff should

maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.

### 14. Can a probation officer speak to a student-parolee on school grounds during school hours?

Generally, any outside individual who wishes to speak to a student on school grounds, during school hours, should provide documentation of the purpose for their visit. Parole officers may have a court order or parole form dictating the terms of parole. Typically, this form will include a waiver of "Fourth Amendment" rights, which means the conditions of probation include submitting to searches or seizures (including interviews) without a warrant. District staff can use this documentation to guide them as to whether they are required to permit the interview. Staff should maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.

### 15. What if a student's defense attorney or the defense attorney's private investigator wants to speak with a student during school hours?

The *Greene* decision applies only to interviews conducted for law enforcement purposes. Districts have legal obligations to limit access to school grounds and students. Staff should follow the district's existing policies and procedures applicable to access to students.

### 16. What if an individual wants to serve a subpoena on a student during school hours?

The *Greene* decision applies to interviews conducted for law enforcement purposes. Simply to serve a lawfully issued subpoena, no interview is required. Rather, the process server need only identify the individual and personally hand him or her the subpoena documentation. As such, service of a lawfully issued subpoena does not fall within the *Greene* rule, because no interview will take place. Because the *Greene* rule does not apply, the individual serving the subpoena does not need to have additional documentation, such as a warrant or court order. School staff and administrators should follow their district policies and procedures prior to allowing the service of a subpoena on a student. Questions regarding this situation should be directed to the district office.

Exhibit B

Exhibit B

Exhibit B



NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

# County of San Diego

HEALTH AND HUMAN SERVICES AGENCY

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098
(858) 694-5413      FAX (858) 694-5475

CHILD WELFARE PROGRAMS
858-694-5111

POLICY AND PROGRAM SUPPORT
858-514-6603

POLINSKY CHILDREN'S CENTER
858-514-4718

ADOLESCENT SERVICES
858-694-5751

February 26, 2010

## CHILD WELFARE SERVICES SPECIAL NOTICE # 01-10   Addendum #2

TO:        All Social Work Staff
           Child Welfare Services

FROM:      Debra Zanders-Willis, Director
           Child Welfare Services

## ABUSE/NEGLECT INVESTIGATIONS – AUTHORIZATION TO INTERVIEW CHILD(REN) AT SCHOOL

**Purpose**

Because information related to interviewing children at school is changing so quickly, this Special Notice (SN):

- introduces new information and procedures, including a Quick Guide
- consolidates all current information from SN #01-10 and #01-10 Addendum #1
- supersedes and thus obsoletes SN #01-10 and #01-10 Addendum 1.

*Policy information is displayed in italics and is effective immediately.*

**Background**

A recent appellate decision ("Greene v. Camreta") held that interviewing a suspected victim of child abuse/neglect during school hours without parental consent or a court order violates Fourth Amendment rights to be "free from unlawful search and seizure".

Last week, the San Diego County Office of Education (SDCOE) received a legal opinion from its counsel saying the above decision does not allow SWs to interview children at school without a warrant or court order, and that our 04-73 (Interviewing Child at School Letter), while accurately reflecting California statute, cannot override 4th Amendment rights.  SDCOE then sent a letter to all district superintendents advising them of such.

We have been advised that if the SW includes the child's name and DOB on the Letter (04-73) and documents that emergency (exigent) circumstances exist, the schools might continue to allow SWs to interview children.  The 04-73 has been revised accordingly, but individual schools/districts may still require parental consent or a court order.

*Continued on next page*

# Exhibit C

# Exhibit C

# Exhibit C



NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

# County of San Diego

HEALTH AND HUMAN SERVICES AGENCY

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098
(858) 694-5413       FAX (858) 694-5475

CHILD WELFARE PROGRAMS
858-694-5111

POLICY AND PROGRAM SUPPORT
858-514-6603

POLINSKY CHILDREN'S CENTER
858-514-4718

ADOLESCENT SERVICES
858-694-5751

April 29, 2010

## CHILD WELFARE SERVICES SPECIAL NOTICE # 01-10    Addendum #3

TO:      All Social Work Staff
         Child Welfare Services

FROM:    Debra Zanders-Willis, Director
         Child Welfare Services

## ABUSE/NEGLECT INVESTIGATIONS – AUTHORIZATION TO INTERVIEW A CHILD (REN) AT SCHOOL

| | |
|---|---|
| **Background** | A recent decision by the US Ninth Circuit of Appeals, ("Greene vs. Camreta"), has prompted new policy and procedures for interviewing children at school. |
| | Greene v. Camreta, acknowledges that while state law may provide for interviewing a suspected victim of child abuse or neglect during school hours, provisions of the Fourth Amendment of the US Constitution ensuring that "every person shall be free from unlawful search and seizure" apply to governmental agencies when conducting child abuse and neglect investigations. |
| | The Greene decision took issue with the presence of law enforcement at a school interview conducted by a SW and determined that the Fourth Amendment applied. It remains an open question as to whether school interviews conducted by SWs, *without the presence of law enforcement,* are subject to the Fourth Amendment and require parental consent or a court order prior to interviewing a child on school property, in the absence of exigent circumstances.  We have previously provided guidance with respect to the manner in which SWs may conduct school interviews based upon the factors identified in Greene. |
| | *Policy information is displayed in italics.* |
| **Purpose** | Provide clarification on leaving forms at the request of schools based upon the confidentiality outlined in the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99) which is a Federal law that protects the privacy of student education records. |

*continued*

**CHILD WELFARE SERVICES SPECIAL NOTICE # 01-10    Addendum #3**
April 29, 2010
Page 2 of 2

| | |
|---|---|
| **Purpose** *(continued)* | The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education. Students have specific, protected rights regarding the release of such records and FERPA requires that institutions adhere strictly to these guidelines. |

| | |
|---|---|
| **Effective Date** | *These policies and procedures are effective immediately.* |

| | |
|---|---|
| **Policy** | *Based upon input from County Counsel, FERPA, and the California Education Code (49061) CWS staff may provide schools with a copy of the following forms:* |

  * *04-69 Consent to Interview Child*

  * *04-70 Order Authorizing Interview on School Property (Warrant)*

  * *04-72 Acknowledgement of Request for Verbal Consent to Interview Child*

  * *04-73 Interviewing Children at School Letter*

  * *Juvenile Court Order (showing care, custody & control)*

| | |
|---|---|
| **ORC Statement** | Due to the time sensitive nature of this Addendum, it was not reviewed by ORC. |

| | |
|---|---|
| **Contact Person** | Staff with questions about this Special Notice may contact Elyce A. Hoene, CWS Policy Analyst at 514-6646/858 or e-mail Elyce.Hoene@sdcounty.ca.gov |

*(Original signed by Debra Zanders-Willis)*

DEBRA ZANDERS-WILLIS, Director
Child Welfare Services

DZW/eah

# ORDER AUTHORIZING INTERVIEW ON SCHOOL PROPERTY

## COUNTY OF SAN DIEGO

## INTERVIEW ORDER AND AFFIDAVIT

### AFFIDAVIT

I,          , swear under oath that the facts expressed to me in this application for a Interview Order and Affidavit and in the attached and incorporated statement of probable cause are true and that based thereon I have probable cause to believe that a child(ren) attending school at the location identified below may have suffered abuse or neglect or there is a substantial risk of such abuse or neglect, sufficient for the issuance of an order authorizing the entry onto the school premises identified below to conduct an interview of the child(ren) pursuant to Penal Code section 11174.3, Wherefore, I request that this Interview Order be issued.

_____
Signature of Affiant

Sworn to and signed before me this date _____,20____

Sworn via telephone this date _____,20____

_____
Judge of the Superior Court

### INTERVIEW ORDER

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SCHOOL PERSONNEL IN THE COUNTY OF SAN DIEGO: proof by affidavit having been made before me by          employed by the San Diego County Health & Human Services Agency, that there is probable cause to believe that a child(ren), attending school at the premises identified herein may have suffered abuse or neglect or there is a substantial risk of such abuse or neglect, sufficient for the issuance of this Interview Order pursuant to Penal Code section 11174.3;

YOU ARE THERFORE COMMANDED TO:

☐ ALLOW THE HEALTH & HUMAN SERVICES AGENCY OF SAN DIEGO COUNTY ENTRY ONTO SCHOOL PREMISES LOCATED AT:

☐ ALLOW THE HEALTH & HUMAN SERVICES AGENCY OF SAN DIEGO COUNTY TO INTERVIEW THE CHILD(REN) NAMED AND/OR DESCRIBED AS:          AT SAID SCHOOL LOCATED AT:

FOR THE PURPOSE OF:

Determining if the child(ren) herein may have suffered abuse or neglect or there is a substantial risk of such abuse or neglect.

This Interview Order and incorporated Affidavit were sworn to as true and subscribed before me this ___ day of _____, 20___, at [time] _____. WHEREFORE; I find probable cause for the issuance of this Interview Order and do so issue it.

_____
Judge of the Superior Court

04-70   (02/10)   R5                    County of San Diego/Health & Human Services Agency/Child Welfare Services



County of San
Diego

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

HEALTH AND HUMAN SERVICES AGENCY

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

## CONSENT TO INTERVIEW CHILD

☐ I, _____, the legal parent/guardian of
(Print name)

_____, agree that a social worker from
(Child[ren]'s Name[s])

Child Welfare Services may speak to the above named child as part of a child abuse/neglect investigation.

_____    I agree that a social worker may speak to the above-named child(ren) as necessary to
(initial)    complete the child abuse/neglect investigation.

_____    I agree that the social worker may speak to the above-named child(ren) at a location other
(initial)    than my home.

_____    I understand that the social worker will ask the above-named child(ren) questions
(initial)    regarding the child's emotional and physical health.

_____    I acknowledge that I have the legal authority to give consent to the interview(s) and
(initial)    understand that I may withdraw my consent at any time by advising Child Welfare
             Services.

_____        _____
Parent's/Guardian's Signature                                Date

04-69 (01/10) L3



County of San Diego

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

**HEALTH AND HUMAN SERVICES AGENCY**

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

☐ I, _____, the legal parent/guardian of

_____, DO NOT agree with having a social worker from
(Child[ren]'s Name[s])
Child Welfare Services speak to the above named child(ren).

_____          _____
Parent's/Guardian's Signature                                      Date

04-69 (01/10)  L3



NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

# County of San Diego

**HEALTH AND HUMAN SERVICES AGENCY**

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6096

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

To Whom It May Concern:

As a Representative from San Diego County Child Welfare Services, I, _____ , am
permitted to investigate child abuse pursuant to Penal Code §11174.3.

I have received a report alleging that _____ DOB
_____ is a victim of child abuse and/or neglect and I have reason to believe that there are
exigent/ emergency reasons for interviewing the child at _____
school without parental consent or a warrant.

11174.3. (a) Whenever a representative of a government agency investigating suspected child abuse or
neglect or the State Department of Social Services deems it necessary, a suspected victim of child abuse
or neglect may be interviewed during school hours, on school premises, concerning a report of suspected
child abuse or neglect that occurred within the child's home or out-of-home care facility. The child shall
be afforded the option of being interviewed in private or selecting any adult who is a member of the staff
of the school, including any certificated or classified employee or volunteer aide, to be present at the
interview. **A representative of the agency investigating suspected child abuse or neglect or the State
Department of Social Services shall inform the child of that right prior to the interview.**

The purpose of the school staff person's presence at the interview is to lend support to the child and enable him
or her to be as comfortable as possible. However, the member of the staff so elected shall not participate in the
interview. The member of the staff so present shall not discuss the facts or circumstances of the case with the
child. The member of the staff so present, including, but not limited to, a volunteer aide, is subject to the
confidentiality requirements of this article, a violation of which is punishable as specified in Section §11167.5.
A representative of the school shall inform a member of the staff so selected by a child of the requirements of
this section prior to the interview. A staff member selected by a child may decline the request to be present at
the interview. If the staff person selected agrees to be present, the interview shall be held at a time during
school hours when it does not involve an expense to the school. Failure to comply with the requirements of
this section does not affect the admissibility of evidence in a criminal or civil proceeding.

If you have any questions, please do not hesitate to call me or my supervisor. Thank you.

_____    _____    _____
Name of Social Worker                         Phone Number                 Date

_____    _____
Name of Social Worker's Supervisor               Phone Number

04-73 (02/10) DNF



# County of San Diego

NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

**HEALTH AND HUMAN SERVICES AGENCY**

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6096

---

## ACKNOWLEDGEMENT OF REQUEST FOR VERBAL CONSENT TO INTERVIEW CHILD(REN)

I, _____, Social Worker with County of San Diego, Health and
Human Services Agency, Child Welfare Services, on _____ spoke by telephone with
                                                           (Date)

_____, the legal parent/guardian of

_____, to obtain his/her consent to interview the
              (Child[ren]'s Name[s])
above-named child(ren) as part of a child abuse/neglect investigation.

☐ **Consents were given allowing a social worker to speak with the above-named child(ren) including:**

_____    Agreement that a social worker may speak to the above-named child(ren) as necessary to
(initial)   complete the child abuse/neglect investigation.

_____    Agreement that the social worker may speak to the above-named child(ren) at a location other
(initial)   than the parent's/guardian's home.

_____    Understanding by the parent/guardian that the social worker will ask the above-named
(initial)   child(ren) questions regarding the child(ren)'s emotional and physical health.

_____    Acknowledgement by the parent/guardian that he/she has the legal authority to give consent to
(initial)   the interview and an understanding that he/she may withdraw their consent at any time by
            advising Child Welfare Services.

04-72 (01/10) L3



*County of San Diego*

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

HEALTH AND HUMAN SERVICES AGENCY

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

☐ **No consents were given allowing a social worker to speak with the above-named child(ren).**

I affirm that the above statements and initialed consents are true and correct.

| | | |
|---|---|---|
| Social Worker Signature | Date | Time |

04-72 (01/10) L3

<u>**CERTIFICATE OF SERVICE**</u>
<u>**NOTICE OF ELECTRONIC FILING**</u>

*CARLOS McMANUS SR. vs. COUNTY OF SAN DIEGO, et al.,*
CASE NO. : 15-cv-00138-JM-RBB
United States District Court, Southern District of California

    I am employed in the County of San Diego, State of California. I am over 18 years of age and am not a party to the within action. My business address is 4955 Via Lapiz, San Diego, California 92122.

    On July 24, 2015, I electronically filed the foregoing documents described as:

-     ***SECOND* AMENDED COMPLAINT FOR DAMAGES**

  **X**  **(BY ELECTRONIC FILING)** I electronically filed with the Clerk of the Court a true and correct copy of the original as indicated above, and a Notice of Electronic Filing (NEF) is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case. As listed on Attachment A.

    And I hereby certify that I have mailed the foregoing documents as indicated above to the parties who are not registered for the CM/ECF system as following:

    <u>**NO NON-ECF PARTIES**</u>.

    Parties can access this filing through the Court's system.

Dated: July 24, 2015

                          /S/ Stephen D. Daner
                          Stephen D. Daner

**Attachment A**

| | |
|---|---|
| Tom Montgomery, Esq.<br>David Brodie, Esq.<br>1600 Pacific Highway, Room 355<br>San Diego, CA 92101-2469<br>Phone: (619) 531-4874<br>Fax: (619) 531-6005 | Defendants County of San Diego, Jennifer Mork, and Wanjiru Golly. |
| Jan I. Goldsmith, Esq.<br>David J. Karlin, Esq.<br>Office of the City Attorney<br>1200 Third Avenue, Suite 1100<br>San Diego, CA 92101-4100<br>Phone: (619) 533-5800<br>Fax: (619) 533-5856 | Defendants City of San Diego, Police Officers Ernesto Luna, Mari Kong, Sgt. Thomas Sullivan,  Sgt. Antonio Johnson, Detective Dan Burow, Lt. A. Smith, and Sgt. Wills. |
| Robert C. Schlein, Esq.<br>Robert C. Schlein & Associates<br>750 B Street Suite 3210<br>San Diego, California 92101<br>Telephone: (619) 235-9026<br>Fax: (619) 22-1859 | Defendant Charles Cox, Sr. |