1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10   CARLOS McMANUS SR.,                    CASE NO. 15cv0138 JM(RBB)

11                           Plaintiff,      ORDER GRANTING MOTION TO
                                             DISMISS; GRANTING LEAVE TO
12   v.                                      AMEND

13   COUNTY OF SAN DIEGO; CITY OF
     SAN DIEGO; POLICE OFFICERS
14   ERNESTO LUNA; MARI KONG;
     SGT. THOMAS SULLIVAN;
15   ANTONIO JOHNSON; DETECTIVE
     DAN BUROW; LT. A. SMITH; SGT.
16   WILLS; SOCIAL WORKER
     DEFENDANTS JENNIFER MORK;
17   WANJIRU GOLLY; and CHARLES
     COX SR.,

18                           Defendants.

19

20          Defendants Wanjiru Golly ("Golly"), Jennifer Mork ("Mork") and County of San

21   Diego ("County") move to dismiss the Second Amended Complaint ("SAC") for failure

22   to state a claim.   Defendants City of San Diego ("City"), Sgt. Antonio Johnson

23   ("Johnson"), and Detective Dan Burow ("Burow") separately move to dismiss the SAC.

24   Plaintiff opposes both motions. Pursuant to Local Rule 7.1(d)(1), the court finds the

25   motion appropriate for resolution without oral argument.  For the reasons set forth

26   below, the court grants the motions to dismiss with 21 days leave to amend from the

27   date of entry of this order.

28

**BACKGROUND**

The SAC, filed on July 24, 2015, alleges five claims for relief: one claim with four counts for violation of 42 U.S.C. §1983 against the County and City employees, one Monell claim against both County and City, and three claims against Defendant Charles Cox Sr. ("Cox") for child abduction, intentional infliction of emotional distress, and negligence.  On September 4, 2015, the court stayed this action indefinitely as to Defendant Cox, an active duty serviceman, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq.

Plaintiff alleges that his 14 year-old minor son, C. M., was removed from his care on two separate occasions.  On or about January 22, 2013, Defendant Charles Cox, a private party, allegedly removed C. M. from Plaintiff's home against Plaintiff's wishes. (SAC ¶30).  Believing that Defendant Cox abducted C. M., Plaintiff reported the incident to Defendant City.  In the early morning hours of January 23, 2013, Defendants Luna, Kong, Sullivan, and Willis obtained physical custody of C.M. and transported him to the Polinsky Children's Center ("Polinsky"), based upon suspicions of "emotional abuse."  (SAC ¶31).  At Polinsky, C. M. was interviewed by social workers and medical professionals who conducted a medical examination of C. M. and found no signs of physical injury or abuse.  (SAC ¶39).  Plaintiff did not give his permission for the examination of C.M. at Polinsky.

On January 23, 2013, C. M. was allegedly interviewed by Defendants Burow, Johnson, and City.  One social worker, Nancy Hess, expressed concern that C.M. was lying about potential abuse.  (SAC ¶44).  The next day C.M. was released from Polinsky.  Instead of returning home, Plaintiff consented to and allowed C.M. to temporarily reside in a shelter for teens.  Id. On February 4, 2013, the referral was closed, and C.M. apparently returned to live with Plaintiff.

On April 9, 2013, Defendant San Diego Police Officer Johnson allegedly pulled C.M. "out of class, and again interviewed, questioned, interrogated, and/or examined him."  (SAC ¶47).  Defendant Johnson also contacted Defendant Jennifer Mork, a social

worker employed by County, to assist in removing C. M. from Plaintiff's custody and transporting him to Polinsky.  (SAC ¶48).  Plaintiff alleges that Golly, Mork, Johnson, and Burow (collectively "Individual Defendants") interviewed, questioned, interrogated, and/or examined C.M. The interview and examination were performed without Plaintiff's knowledge or consent, without notice to the Plaintiff, without a warrant or court order authorizing the examination, and in the absence of exigent circumstances.   In addition, the Plaintiff was completely excluded from C.M.'s interview and examination, and was not permitted to be in close proximity or another nearby area.  (SAC ¶¶55 - 58).

On April 11, 2013, Defendant Golly, a social worker employed by County, interviewed C.M. during a visit to C.M.'s school.  This interview occurred without Plaintiff's approval, obtaining a warrant, or exigent circumstances.  (SAC ¶59).

On July 10, 2015, the court granted the motion to dismiss the First Amended Complaint brought by Defendants County, Wanjiru Golly, and Jennifer Mork.  The court granted Plaintiff leave to amend and Defendants move to dismiss the SAC for failure to state a claim.

## DISCUSSION

**Legal Standards**

General Pleading Requirements

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009)

1  (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the

2  mere possibility of misconduct). "The plausibility standard is not akin to a 'probability

3  requirement,' but it asks for more than a sheer possibility that a defendant has acted

4  unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action,

5  supported by mere conclusory statements, do not suffice." Id. The defect must appear

6  on the face of the complaint itself. Thus, courts may not consider extraneous material

7  in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th

8  Cir. 1991). The courts may, however, consider material properly submitted as part of

9  the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555

10  n.19 (9th Cir. 1989).

11        Finally, courts must construe the complaint in the light most favorable to the

12  plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116

13  S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in

14  the complaint, as well as reasonable inferences to be drawn from them. Holden v.

15  Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of

16  law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In

17  Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

18  Pleading Civil Rights Claims

19        Prior to Iqbal and Twombly, "a claim of municipal liability under § 1983 is

20  sufficient to withstand a motion to dismiss even if the claim is based on nothing more

21  than a bare allegation that the individual officers' conduct conformed to official policy,

22  custom, or practice."   Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir.2007). In

23  addressing the impact of Iqbal and Twombly on the pleading standards for civil rights

24  cases, the Ninth Circuit recently stated:

25           we can at least state the following two principles common to all of them.
             First, to be entitled to the presumption of truth, allegations in a complaint

26        or counterclaim may not simply recite the elements of a cause of action,
             but must contain sufficient allegations of underlying facts to give fair

27        notice and to enable the opposing party to defend itself effectively.
             Second, the factual allegations that are taken as true must plausibly

28        suggest an entitlement to relief, such that it is not unfair to require the
             opposing party to be subjected to the expense of discovery and continued

1   litigation.

2   <u>AE ex rel. Hernandez v. County of Tulare</u>, 666 F.3d 631,637 (9th Cir. 2012) (quoting

3   <u>Starr v. Baca</u>, 652 F.3d 1202 (9th Cir.2011)).

4   **Dismissal under Rule 8**

5       Fed.R.Civ.P 8(a)(3) requires that a complaint state "a short and plain statement

6   of the claim showing that the pleader is entitled to relief."  <u>Iqbal</u> and <u>Twombly</u> affirm

7   Rule 8's requirement of simplicity, directness, and clarity.   The allegations must

8   plausibly support plaintiff's claims.  <u>Twombly</u>, 550 U.S. at 555.

9       The SAC runs approximately 75 pages long, including approximately 54 pages

10  of allegations.   Unfortunately, this amalgamation is comprised of a patchwork of

11  redundant allegations, surplus and evidentiary pleading, unnecessary legal argument

12  with case citations, and attached exhibits.  Further, the SAC identifies a single §1983

13  claim with  four subclaims.  The subclaims contain legal authorities, argument, and

14  superfluous language.   Such pleading violates Rule 8's mandate of simplicity,

15  directness, and clarity.  Each claim must be separately set forth in the complaint.

16      As the court dismisses the SAC for failure to comply with Rule 8, upon

17  amendment, Plaintiff is instructed to comply with Rule 8 and to file a Third Amended

18  Complaint not to exceed 20 pages, not including exhibits.  The court grants Plaintiff 21

19  days leave to amend from the date of entry of this order.  The court further instructs

20  Plaintiff to set forth in a separate claim, each event (and the specific defendants

21  involved) giving rise to a §1983 claim alleged by Plaintiff.

22  **The Individual Defendants** (Golly, Mork, Johnson, and Burrow)

23      In order to assist the parties in addressing potential qualified immunity issues, the

24  court briefly reviews pertinent legal principles.  An action under 42 U.S.C. §1983 has

25  two elements:  "(1) the defendants acted under color of law, and (2) their conduct

26  deprived [the plaintiff] of a constitutional right."  <u>Haygood v. Younger</u>, 769 F.2d 1350,

27  1354 (9th Cir.1985).  A public official is immune from an action under 42 U.S.C. §

28  1983 "[u]nless the plaintiff's allegations state a claim of violation of clearly established

law." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985); <u>see also</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (qualified immunity applies if official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). In order to determine whether the defendants are immune from an action, the court must answer two questions: (1) whether Plaintiff alleges the violation of a constitutional right, and (2) whether that right was clearly established. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009) (leaving the courts to decide, in their sound discretion, which question to answer first). A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. [] When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Taylor v. Barkes</u>, 135 S.Ct. 2042, 2044 (2015) (citations and internal quotation marks omitted).

Here, based upon the SAC's allegations, Plaintiff's claims against the Individual Defendants appear barred by the doctrine of qualified immunity. In his opposition papers, Plaintiff cites no Supreme Court or other analogous binding authority to support his argument that the alleged conduct violated any clearly established constitutional right at the time of the alleged events. The Fourteenth Amendment generally protects the integrity of the family unit in the custody, care and nurture of one's children. <u>Stanley v. Illinois</u>, 405 U.S. 645, 651 (1972). The court notes that the parties did not cite authorities discussing the precise contours of the Fourteenth Amendment right of familial association with respect to government agents interviewing teenage victims of potential abuse.

15cv0138

While Plaintiff asserts Fourteenth Amendment rights here, the majority of the authorities cited in opposition to the motions are not completely analogous because the authorities involve the seizure and removal of children from the care of the parents in violation of the Fourth Amendment, allegations not supported by the SAC.  See Wallis v. Spencer, 202 F.3d 1126, 1130 (9th Cir. 2000) (removal of children from the parents' custody in the middle of the night without a warrant, parental consent, or exigent circumstances violates the Fourth Amendment); Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999) (coerced entry into a home by government agents to investigate suspected child abuse, interrogate a child, and strip search a child without a search warrant, parental consent, or exigent circumstances violates the Fourth Amendment).  Doe v. Heck, 327 F.3d 492 (7th Cir. 2003) (qualified immunity applies to bar a claim that investigation and custodial interview of minor who suffered potential physical abuse by a teacher without a warrant, parental consent, or exigent circumstances violated  the family's Fourteenth Amendment familial relations rights).[1]

Here, Plaintiff asserts that "a constitutional violation occurs when an alleged victim of child abuse [is] interviewed at school without judicial authorization, parental consent or exigent circumstances," (Oppo. at p.7:7-9).  For this proposition, Plaintiff relies primarily upon Greene v. Camretta, 588 F.3d 1011 (9th Cir. 2009), rev'd, Camretta v. Greene, 131 S.Ct. 2020 (2011).  In Greene, the Ninth Circuit concluded that, "applying the traditional Fourth Amendment requirements, the decision to seize and interrogate S.G. in the absence of a warrant, a court order, exigent circumstances,

---

[1] The court notes that "it is necessary for both government officials and the courts to be sensitive to the fact that society's interest in the protection of children is ... multifaceted, composed not only with concerns about the safety and welfare of children from the community's point of view, but also with the child's psychological well-being, autonomy, and relationship to the family or caretaker setting." Franz v. Lytle, 997 F.2d 784, 792–93 (10th Cir.1993) (citations omitted).  Conversely, the court is also sensitive to the fact that the "history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Wisconsin v. Yoder, 406 U.S. 205, 232 (1972).

or parental consent was unconstitutional." Id. at 1030.  The Supreme Court ultimately dismissed the action as moot and specifically vacated "the Ninth Circuit's ruling addressing the merits of the Fourth Amendment issue" and the qualified immunity analysis. 131 S.Ct. at 2035-36.  Moreover, the Supreme Court expressly noted that the point of the vacatur was to prevent Greene from spawning any legal consequences. Accordingly, the authorities cited in support of this claim lend little support, if any, to Plaintiff's legal theory that parental rights are violated whenever a 14 year-old minor is interviewed in the course of a child abuse investigation without the parent's consent, a court order, or exigent circumstances.  See Ashcroft v. al-Kidd, 565 U.S. 731, 131 S.Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

After the submission date on Defendants' motions, Plaintiff submitted a recently decided case to support his argument that government agents may not interview a 14-year old minor and suspected victim of abuse, without the parent's consent, a court order, or exigent circumstances.  In Jones v. County of Los Angeles, – F.3d –, 2015 WL 5515727 (September 21, 2015) the Plaintiffs brought claims under the Fourth and Fourteenth Amendments based upon the conduct of government agents in the removal of G.J. from the custody of the parents.  Plaintiffs also argued that the manner in which the investigation was conducted violated their Fourteenth Amendment rights.  G.J.'s mother carried G.J. down the stairs when she fell, severely injuring G.J.  G.J. suffered a complex fracture on the skull, fractured ribs, and possibly a broken leg.  During the medical examination of G.J., medical professionals determined that G.J.'s injuries were unusual and potentially, but not necessarily, inconsistent with the mother's explanation. Dr. Wang, one of the medical doctors treating G.J. and a child abuse reporter, concluded (incorrectly) that the rib injury occurred afer the skull fracture, thus indicating possible abuse.  Dr. Wang then told the mother that another CT scan was recommended. However, his primary purposes in telling the mother about the scan was to "detain G.J. at the hospital and to prevent Jill (the mother) from taking G.J. home."  G.J. was seized

from the parents' care without parental consent, a court order, or exigent circumstances, and the parents lost physical custody over G.J. for several months.   Under the Fourteenth Amendment's right to familial association, the court concluded that government agents may not remove a child from parent custody without a warrant unless the agents "have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant."   Id.

Here, unlike Jones, the SAC does not allege that government agents removed C.M. from Plaintiff's custody and care.  The first alleged incident in the SAC occurred on January 23, 2013, when Plaintiff called the police to report that his son had been abducted.  (SAC ¶).  Later that day, the police located C.M. and, suspecting possible abuse, transported him to Polinsky Center.  C.M. was interviewed and examined by government agents and, with the consent of Plaintiff, C.M. was temporarily placed in a shelter for teens.  "This allowed Plaintiff time to set up joint counseling for himself and C.M., in order to help facilitate healthy reconciliation with C.M."  (SAC ¶ 45).  The second event alleged in the SAC occurred on April 9, 2013, when government agents went to C.M.'s middle school, removed him from class, and then interviewed him about potential abuse.  These circumstances, without additional clarification and allegations, differ markedly from those identified in Jones.

The court notes that Jones had not been decided at the time Plaintiff opposed Defendants' motion.  Further amendment may provide additional clarity to Plaintiff's claims.

**The Monell Claim**

County and City claim that Plaintiff fails to state a claim for municipal liability. Under 42 U.S.C. § 1983, "[e]very person" who acts under color of state law may be sued.  The term "person" has been interpreted broadly, even to include cities, counties, and other local government entities.   See Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978).  Municipalities, their agencies and their supervisory personnel cannot be held liable under section 1983 on any theory of respondeat superior

1    or vicarious liability.   They can, however, be held liable for deprivations of
2    constitutional rights resulting from their formal policies or customs.   See Monell, 436
3    U.S. at 691-693; Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001);
4    Shaw v. California Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir.
5    1986).

6         Locating a "policy" ensures that a municipality "is held liable only for those
7    deprivations resulting from the decisions of its duly constituted legislative body or of
8    those officials whose acts may be fairly said to be those of the municipality." Board of
9    the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04
10   (1997) (citing Monell, 436 U.S. at 694).   Similarly, an act performed pursuant to a
11   "custom" which has not been "formally approved by an appropriate decisionmaker may
12   fairly subject a municipality to liability on the theory that the relevant practice is so
13   widespread as to have the force of law." Id. (citing Monell, 436 U.S. at 690-691); see
14   also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (holding that municipal
15   liability under § 1983 may be shown if Plaintiff proves that employee committed
16   alleged constitutional violation pursuant to a "longstanding practice or custom which
17   constitutes the 'standard operating procedure' of the local government entity.").

18        "To bring a § 1983 claim against a local government entity, a plaintiff must plead
19   that a 'municipality's policy or custom caused a violation of the plaintiff's constitutional
20   rights." Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles, 648 F.3d 986,
21   992-93 (9th Cir. 2011).   A plaintiff must show (1) he possessed a constitutional right
22   of which he was deprived, (2) the municipality had a policy, (3) the policy amounts to
23   deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the
24   "moving force behind the constitutional violation." Anderson v. Warner, 451 F.3d
25   1063, 1070 (9th Cir. 2006).   "For a policy to be the moving force behind the deprivation
26   of a constitutional right, the identified deficiency in the policy must be closely related
27   to the ultimate injury," and the plaintiff must establish "that the injury would have been
28   avoided had proper policies been implemented." Long v. Cnty. of Los Angeles, 442

F.3d 1178, 1190 (9th Cir. 2006).

Here, the SAC's allegations, while more supportive of the <u>Monell</u> claims than the previous complaint, are still too generalized and conclusory to state a claim.  As noted earlier, the allegations largely parrot the requirements for municipal liability.  Plaintiff alleges that the County had "the custom and/or practice of creating and/or removing children from the custody of their parents in the absence of exigent circumstances," (SAC ¶101(a), the interviews of C.M. "were not isolated incident[s]" and occur with respect to other children, (SAC ¶111), and has a practice of conducting warrantless interrogations of children in the absence of parents."  (SAC ¶101(d)).  With respect to both City and County, Plaintiff alleges that they failed to adequately train and supervise their workers to learn that judicial authorization is required prior to removing a child from a parent's custody, (SAC ¶126), failed to adequately investigate and discipline their employees, (SAC ¶110), and maintained policies, customs, or practices to carry out medical examinations of minors without the parent's consent, judicial authorization, or a showing of immediate risk of harm.  Plaintiff must plausibly set forth additional allegations giving rise to an inference that City and County maintained the alleged policies, practices, and customs.

While a closer issue, the court concludes that the SAC fails to establish a <u>Monell</u> claim beyond the speculative level.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  <u>Iqbal</u>, 56 U.S. at 662.  While the SAC's allegations would likely have survived Rule 8 scrutiny prior to <u>Iqbal</u>, <u>see</u> <u>Whitaker</u>, 486 F.3d at 581, the court notes the heavy pleading burden placed on a plaintiff where the sought-after information is uniquely within the possession of defendants like the City and County.  Should Plaintiff's anticipated Third Amended Complaint successfully state a claim against one or more of the Individual Defendants, then, should Plaintiff not cure the <u>Monell</u> defect(s), Plaintiff may later seek leave to conduct limited <u>Monell</u>-related discovery before Magistrate Judge Brooks. Permitting limited and targeted discovery will allow Plaintiff

1   to pursue important constitutional issues involving familial relations and promote the

2   "just, speedy, and inexpensive determination" of this action.  Fed.R.Civ.P. 1.

3          In sum, the court grants the motions to dismiss with 21 days leave to amend from

4   the date of entry of this order.

5          **IT IS SO ORDERED.**

6   DATED:   October 5, 2015

7

8          **JEFFREY T. MILLER**
           United States District Judge

9   cc:       All parties
              Magistrate Judge Brooks

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28