1  Shawn A. McMillan, Esq. – SBN: 208529
   attyshawn@netscape.net
2  Stephen D. Daner, Esq. – SBN: 259689
   steve.mcmillanlaw@gmail.com
3  Dennis B. Atchley, Esq. – SBN: 70036
   dennis.atchley.mcmillanlaw@gmail.com
4  Adrian M. Paris, Esq. – SBN: 301355
   adrian.mcmillanlaw@gmail.com
5  THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
   4955 Via Lapiz
6  San Diego, California 92122
   Telephone: (858) 646-0069
7  Facsimile: (206) 600-4582

8  Attorneys for Plaintiff

9              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA
10

11 | CARLOS McMANUS SR., an | Case No: 15-cv-00138 JM RBB
   | individual, |
12 | | **_THIRD_ AMENDED COMPLAINT**
   |             Plaintiff, | **FOR DAMAGES**
       vs.
13 | | Claim 1 - 42 U.S.C. § 1983
   | COUNTY OF SAN DIEGO, a public | Claim 2 - 42 U.S.C. § 1983
14 | entity; CITY OF SAN DIEGO, a | Claim 3 - 42 U.S.C. § 1983
   | public entity; POLICE OFFICERS | Claim 4 - 42 U.S.C. § 1983
15 | ERNESTO LUNA (ID# 3779), MARI | Claim 5 - Monell-Related Claim
   | KONG (ID# 5850), SGT. THOMAS | (County)
16 | SULLIVAN (ID# 4676), SGT. | Claim 6 - Monell-Related Claim
   | ANTONIO JOHNSON (ID# 3816) | (County)
17 | Detective DAN BUROW (ID# 5268) | Claim 7 - Monell-Related Claim
   | and Lt. A. SMITH (ID# 3472); SGT. | (County)
18 | WILLS (ID# 4558); SOCIAL | Claim 8 - Monell-Related Claim (City)
   | WORKER DEFENDANTS | Claim 9- Child Abduction (Cox, Sr.)
19 | JENNIFER MORK and WANJIRU | Claim 10 - Intentional Infliction of
   | GOLLY, CHARLES COX SR., an | Emotional Distress (Cox, Sr.)
20 | individual, CITY OF SAN DIEGO | Claim 11 - Negligence (Cox, Sr.)
   | DEFENDANT DOES 1 through 50,
21 | COUNTY OF SAN DIEGO | **DEMAND FOR JURY TRIAL**
   | DEFENDANT DOES 51 through 90,
22 | and DOCTOR DEFENDANT DOES
   | 91 through 100, inclusive,
23 |
   |             Defendants.
24

25 / / /

26

27

28 / / /

## Jurisdiction and Venue[1]

1.   Plaintiff Carlos McManus Sr. sues for violation of his rights under the United States Constitution, and under federal and state law. These violations were inflicted by each of the Defendants in the manner herein alleged.

2.   Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and 1343(a)(4). Jurisdiction is also conferred by 28 U.S.C. §1331. Supplemental Jurisdiction over the state law claims for relief is conferred by 28 U.S.C. §1367.

3.   Because the acts and omissions complained of occurred in the County of San Diego, and it is believed that all defendants currently reside in the County of San Diego, venue is proper in the Southern District of California.

4.   These allegations are based on Plaintiff's personal knowledge, or on information and belief.

## Parties

5.   Carlos McManus resided in San Diego, with his minor son, C.M. Since 2005, McManus had full legal and physical custody of C.M.

6.   Defendant Charles Cox Sr. was an individual residing in San Diego.

7.   Defendant County of San Diego ("County") is a public entity of which the San Diego County Health and Human Services Agency ("HHSA") is a subdivision. The County operates Polinsky Children's Center ("Polinsky").

8.   HHSA social workers Jennifer Mork and Wanjiru Golly reside in San Diego.

9.   Defendant City of San Diego ("City") is a public entity. The San Diego Police Department ("SDPD") is a subdivision or agency of the City.

10.   Police officers Ernesto Luna, Mari Kong, Sgt. Thomas Sullivan, Sgt. Antonio Johnson, Dan Burow, Lieutenant A. Smith, and Sgt. Wills, are individuals

---

[1] Plaintiff condensed or removed several allegations from the Second Amended Complaint to comply with the twenty (20) page limit, as ordered by this Court. (Docket No. 48, pg. 5, ln. 17-18.)

residing in the County of San Diego, and officers, agents, and/or employees of the City. These Defendants will be referred to as "POLICE DEFENDANTS."

11.     Plaintiff is ignorant of the true names and capacities of those City affiliated Defendants sued as DOES 1 through 50. Plaintiff is ignorant of the true names and capacities of those County Defendants sued as DOES 51 through 90. Plaintiff is ignorant of the true names and capacities of those Doctor Defendants sued as Doctor DOES 91 through 100.

12.     Plaintiff is informed and believes that the Doctor Defendants voluntarily collaborated with HHSA, and willfully participated in conducting forensic medical examinations at Polinsky at the specific request and behest of the County. The County compensated the Doctor Does for performing these forensic medical examinations. These forensic medical examinations, at a County operated facility, constitutes a traditional government function.

13.     Each of the above Defendants was the agent, employee, principal, and/or employer of each of the remaining defendants and/or vice versa. The above defendants are responsible for the occurrences complained of, and conspired with, and/or aided and/or abetted each other in committing the acts complained of.

14.     At all relevant times, the County, City, Doctor, and DOE defendants were acting under color of law in committing the acts alleged, and were acting within the course and scope of their duties.

15.     The individual Defendants were acting in concert and approved the conduct of each other, and/or were the knowing agents of one another.

### FIRST CLAIM FOR RELIEF – §1983

***The First Unwarranted Seizure in Violation of Plaintiff's Fourteenth Amendment Right to Familial Association***

(By Plaintiff Against Defendants Luna, Kong, Sullivan, Smith, Wills, and Defendant DOES 1 through 50, inclusive)

16.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 15.

17.     On January 22, 2013, Cox abducted C.M. Plaintiff called the police and his supervisor to request officer assistance to recover C.M.

18.     Luna, Kong, Sullivan, and DOES 1 through 50 knew and/or should have known that Plaintiff was C.M.'s father, that Plaintiff had full legal and physical custody of C.M., and that Plaintiff had an immediate right to the custody of C.M. These Defendants knew that Plaintiff was trying to find C.M., and wanted C.M. returned to his care and custody as soon as possible.

19.     Luna, Kong, Sullivan, Wills, and DOES 1 through 50, did not return C.M to Plaintiff's custody and care. Instead, they seized C.M. from Plaintiff's custody – without a court order, or exigent circumstances. At that time, C.M. was in good health, needed no medical care, and had no signs of visible injuries, marks or bruises. C.M. reported he did not fear for his safety. Sullivan specifically verified that C.M. did not have any physical injuries. Luna, Kong, Sullivan, Wills, and DOES 1 through 50, did not believe C.M. was in immediate danger of suffering severe bodily injury at the hands of Plaintiff. They seized C.M. solely based on suspicions that he was suffering "emotional abuse." After they seized, him, Luna, Kong, and DOES 1 through 50, transported C.M. to Polinsky.

20.     Prior to C.M.'s unwarranted seizure, Luna, Kong, Sullivan, Wills, and DOES 1 through 50, and each of them, discussed C.M.'s proposed warrantless seizure. They all agreed and/or approved of the decision to, and did, seize C.M. from the Plaintiff's care and custody without first obtaining a warrant. Luna, Kong, Sullivan, Wills, and DOES 1 through 50, and each of them together, were integral participants in C.M.'s seizure from Plaintiff's custody. Defendants did theses things with a knowing and deliberate disregard for Plaintiff's rights. These Defendants failed to intervene and stop C.M.'s seizure.

21.     Prior to the seizure, Luna, Kong, Sullivan, Wills, and DOES 1 through 50, failed to interview all witnesses, never spoke with Plaintiff's girlfriend or her two children, and never established C.M.'s credibility.

22.   After investigation, HHSA social workers found no evidence of physical abuse to C.M. and no evidence that he was suffering emotionally. HHSA declined to prosecute a dependency case against Plaintiff. On or about January 24, 2013, social worker Nancy Hess told the police that C.M. was being returned to Plaintiff's care, and expressed a belief that C.M. was lying and not being truthful.

23.   On January 24, 2013, C.M. was released from Polinsky, and returned to Plaintiff's custody. Plaintiff enrolled C.M. into "Storefront," a shelter for teens, for a temporary stay. This allowed Plaintiff time to set up joint counseling for himself and C.M., to help facilitate a healthy reconciliation. C.M. left Storefront, and returned to Plaintiff's home and custody. On February 4, 2013, HHSA closed the referral, and declined to prosecute a dependency case against Plaintiff.

24.   At the time of these Defendants' conduct, Plaintiff's rights were so clearly established that a reasonable police officer faced with similar circumstances would have known that their conduct violated constitutional rights.

25.   As a direct and proximate consequence of this violation, Plaintiff has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

26.   Luna, Kong, Sullivan, Smith, Wills, and DOES 1 through 50, conduct as herein alleged was intentional and/or with a conscious disregard for Plaintiff's rights as a parent. As a result of this conduct, Plaintiff is entitled to recover punitive damages.

### SECOND CLAIM FOR RELIEF – §1983

***Two Unwarranted, Non-Consensual Forensic Medical/Physical Examinations of C.M. in Violation of Plaintiff's Fourteenth Amendment Rights as a Parent***

(By Plaintiff Against Defendant Doctor DOES 91-100, inclusive.)

27.   Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 26.

28.   On January 23, 2013 and again on April 9, 2013, C.M. was admitted

to Polinsky. Upon each admission to Polinsky, the Doctor DOES 91-100, performed a forensic medical and physical examinations on C.M. These were performed without notice and/or Plaintiff's knowledge or consent, without court order, and in the absence of exigent circumstances. Plaintiff was completely excluded from C.M.'s medical examinations. C.M.'s forensic examinations found no visible injuries or other indicia of abuse.

29.     The County's policy for conducting medical examinations on children admitted to the Polinsky precludes (1) parents from attending the medical exam; and (2) permits the examination to be performed without parental notice or consent, without a court order regarding the specific child and in the absence of exigency. *See, e.g.*, *Swartwood v. County of San Diego*, 2014 U.S. Dist. LEXIS 182020, *56-57 (S.D. Cal. 2014).

30.     The right to not have one's child subjected to medical and physical examinations in the absence of a warrant, parental consent, or emergency was so clearly established that any reasonable government agent, including Doctor DOE defendants, would know it violated Plaintiff's rights to conduct the medical examinations complained of herein.

31.     As a direct and proximate result of Defendants' conduct, Plaintiff's rights arising under the Fourteenth Amendment were violated; and, Plaintiff has suffered damages thereby, as according to proof at trial.

32.     Doctor DOE Defendants' conduct as herein alleged was intentional and/or with a conscious disregard for Plaintiff's rights as a parent. As a result of their conduct, Plaintiff is entitled to recover punitive damages.

/ / /

/ / /

/ / /

### THIRD CLAIM FOR RELIEF – §1983

***C.M.'s Second Unwarranted Seizure in Violation of Plaintiff's Fourteenth Amendment Right to Familial Association***

(By Plaintiff Against Defendants Mork, Johnson, Burow, and Defendant DOES 1-90, Inclusive)

33.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 32.

34.     On April 9, 2013, Johnson contacted Mork, and requested her assistance in seizing C.M. from Plaintiff's custody. That same day, Burow, Mork, and DOES 1 through 90, visited C.M.'s middle school.

35.     Johnson, Burow, Mork, DOES 1 through 90, and each of them, discussed C.M.'s proposed seizure and removal from Plaintiff's custody and all agreed to go ahead and seize C.M. without a warrant. Johnson, Burow, Mork, and DOES 1 through 90, assisted each other in the unwarranted seizure and/or were integral participants.

36.     Prior to agreeing to seize C.M., Mork discussed C.M.'s proposed seizure and removal from Plaintiff's custody with her supervisor. After hearing all relevant information, including the substantial delay in taking any action as well as the lack of any evidence of physical abuse, Mork's supervisor and DOES 51 through 90 agreed and affirmed the decision to seize C.M. without a court order.

37.     Burow, Mork, DOES 1 through 90, and each of them, seized C.M. from Plaintiff's custody without court order, exigent circumstances, and/or in the absence of any evidence to suggest that C.M. was likely to suffer immediate bodily injury at the hands of Plaintiff. Indeed, at the time of seizure, C.M. was in good health, had no visible injuries or bruises, and had no need for any medical attention. C.M. was seized at 12:00 p.m., while he was in school. Mork and DOES 51 through 90, then transported C.M. to Polinsky.

---

38.     On April 9, 2013, Mork knew that there was no court order authorizing C.M.'s removal from Plaintiff's custody. Mork did nothing to stop and/or prevent C.M.'s removal.

39.     Plaintiff was never arrested. Prior to the seizure, Defendants Mork and DOES 51 through 90, did not speak with Plaintiff, or even attempt to speak with him, and made no effort to determine whether or not Plaintiff could arrange for the care of C.M. On April 9, 2013, Plaintiff, if necessary, could and would have arranged for C.M.'s care.

40.     Mork and DOES 51 through 90, seized C.M. without a warrant or court order, and/or in the absence of exigent circumstances, because they were acting in accordance with County policy that permits a social worker to hold a child for up to 48 hours without a warrant for merely investigatory purposes. This policy is facially unconstitutional.

41.     On April 10, 2013, C.M. was again returned to Plaintiff's custody. HHSA *again* declined to prosecute a dependency case against Plaintiff.

42.     As a direct and proximate consequence of this violation, Plaintiff has suffered damages as according to proof at trial.

43.     These Defendants' wrongful conduct was intentional and/or with a conscious disregard for Plaintiff's rights; and, as a result, Plaintiff is entitled to recover punitive damages.

## **FOURTH CLAIM FOR RELIEF – §1983**

### *Golly's Unwarranted Interrogations of C.M. in Violation of Plaintiff's Fourteenth Amendment Right to Familial Association*

(By Plaintiff Against Defendant Golly)

44.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 43.

45.     On April 9, 2013, after C.M. was admitted to Polinsky, Golly interrogated him. On April 11, 2013, Golly visited C.M.'s school, and interrogated

him again. She did these interrogations without Plaintiff's knowledge, consent, or notice to the Plaintiff; without a warrant or court order authorizing the interrogation; and, in the absence of any exigency. Golly performed these

interrogations at her supervisor's direction.

46.     At the time Golly interrogated C.M., Ninth Circuit law applicable to these circumstances was so clearly established that any reasonable government agent would know that the unwarranted interrogations of C.M., whether conducted in school or off campus, violated Plaintiff's fundamental rights under the Fourteenth Amendment to the United States Constitution.

47.     As a direct and proximate consequence of this violation, Plaintiff has suffered damages as according to proof at trial.

48.     Golly's wrongful conduct was intentional and/or with a conscious disregard for the rights of the Plaintiff, and as a result of this conduct, Plaintiff is entitled to recover punitive damages.

## FIFTH CLAIM FOR RELIEF – *MONELL* RELATED CLAIMS FOR UNWARRANTED SEIZURE BY COUNTY SOCIAL WORKERS

**(**By Plaintiff Against Defendant County of San Diego)

49.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 48.

50.     The County and HHSA had a duty to implement and follow customs and/or practices (hereinafter referred to as "customs") which confirm and provide the protections guaranteed under the United States Constitution. The County had a duty to use reasonable care to train, supervise, and/or control its agents, so as to protect these constitutional rights.

51.     Based on the duties charged to its social workers, including the powers to seize children from their parents' custody, the County knew or should have known of the need to establish customs required to protect the civil rights of

parents and children with whom their agents regularly came into contact – and to adequately train its social workers.

52.     At the time of the underlying events, the County's customs relating to the removal of a child from its parent's custody included, but were not limited to:

a.     The custom of removing children from their parent's custody without consent, court order, and/or exigent circumstances (i.*e.*, imminent danger of serious bodily injury).

b.     The custom of removing children from their parent's custody without first performing a reasonable investigation.

c.     The custom of seizing children from their parent's custody without consent, court order, and/or exigency, based on a hope that further investigation could turn up facts suggesting the seizure was justified.

d.     The custom to always assist – without investigation and/or hesitation – the SDPD in the removal of a child from their parent's custody without consent, court order, and/or exigency.

e.     The custom to not intercede when the SDPD is removing a child from their parent's custody without consent, court order, and/or exigency.

53.     When Mork seized C.M. from Plaintiff's custody, she was acting pursuant to and in accordance with the County's child removal customs. Mork's actions were approved by her supervisor prior to the seizure.

54.     Mork's warrantless seizure of C.M. and/or her failure to intercede was not an isolated incident. Instead, County social workers regularly seize children from their parent's custody without consent, court order, and/or exigency – as is the customary practice at HHSA. These unlawful seizures have resulted in several lawsuits against multiple offending social workers (for violation of constitutional rights) and the County (for its customs being the moving force behind these violations). These include, but are not limited to, the following: **(1)** *Blinn v. County of San Diego*, State Case No. GIC738339, **(2)** *Parkes v. County of*

1   *San Diego*, 345 F. Supp. 2d 1071 (S.D. Cal. 2004), **(3)** *Petersen v. County of San*

2   *Diego*, State Case No. 37-2009-00058159, **(4)** *Anderson v. County of San Diego*,

3   2011 U.S. Dist. LEXIS 33379 (S.D. Cal. 2011), **(5)** *Artea Dunn v. County of San*

4   *Diego*, Case No. 13-CV-0209-JAH-KSC, **(6)** *Donna Greenspan v. County of San*

5   *Diego*, Case No. 13-CV-00210-LAB-DHB, **(7)** *Michael Lewis v. County of San*

6   *Diego*, Case No. 13-cv-2818-L-JMA, **(8)** *Mann v. County of San Diego*, 2013 U.S.

7   Dist. LEXIS 112094 (S.D. Cal. 2013), **(9)** *Swartwood v. County of San Diego*, 84

8   F. Supp. 3d 1093, **(10)** *Reynolds v. County of San Diego*, Case No.

9   3:11-cv-01256-JAH-RBB.

10      55.     The County never investigates or disciplines its social workers

11   (including those named as Defendants in the lawsuits identified in ¶54)

12   who seize children from their parents' custody without consent, court order, and/or

13   exigency. The County did not investigate or discipline Mork for seizing C.M. from

14   Plaintiff's custody without consent, court order, and/or exigency. The County did

15   not investigate or discipline Mork for failing to stop C.M.'s unwarranted removal.

16      56.     The County has refused to admit that its social workers commit a

17   constitutional violation when they seize a child from his or her parent's custody

18   without consent, court order, and/or exigency – and continues to do so. The

19   County denies that Mork violated Plaintiff's right when she seized C.M. without

20   consent, court order, and/or exigency. The County ratified and/or approved of

21   Mork's warrantless seizure of C.M.

22      58.     On April 10, 2013, a social worker supervisor informed Plaintiff that

23   Mork's seizure of C.M. was in accordance with the County's custom and practice

24   of seizing and detaining children for up to 48 hours without a warrant for merely

25   investigatory purposes.

26      59.     The County failed to train its social workers and agents on the

27   constitutional rights of a parent and child, including but not limited to:

28

a. The circumstances under which a court order must be obtained prior to removing a child from the custody of its parent(s).

b. The fact that a court order or parental consent must be obtained prior to removing a child from the custody of its parent(s), when there was no exigency.

c. That a child cannot be removed without a court order or parental consent, unless there is "specific, articulable evidence" that a child is in imminent danger of suffering serious bodily injury.

d. That a social worker cannot remove a child without a court order or consent, based on the hope that further investigation could turn up facts suggesting that an exigency existed.

e. That a child cannot be removed from their parent's custody without first performing a reasonable investigation.

60. The County's failure to train its agents on these established constitutional rights was a substantial factor in causing Plaintiff's harm. Without adequate training, Mork was unfamiliar with and oblivious to Plaintiff's rights, when she seized C.M. – without consent, court order, or exigency.

61. The County knew or should have known that a parent and child cannot be separated without consent, court order, and/or exigency. But, the County knowingly refrained from (1) revising its child removal customs, and (2) training it social workers that a child cannot be removed without consent, court order, and/or exigency. In addition, the County refused to investigate or discipline its social workers for removing a child without consent, court order, and/or exigency.

62. These actions, and/or inactions, of the County were the moving force behind the Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF – *MONELL* RELATED CLAIMS FOR UNWARRANTED MEDICAL EXAMINATIONS

(By Plaintiff Against Defendant County of San Diego)

63.    Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 62.

64.    At all relevant times, the County's custom was to perform invasive physical medical examinations on all children being admitted to and/or entering Polinsky – without court order, parental consent or notification, and/or exigency. The County's custom was to always exclude parents from their child's medical examination.

65.    The County has known for ten years, since its involvement in *Parkes*, that excluding parents from their child's physical medical examination at Polinsky violated a family's constitutional rights. *Swartwood, supra*, 84 F. Supp. 3d at 1120-1121; *Parkes, supra*, 345 F. Supp. 2d 1094-1095. Despite this knowledge, the County failed to establish a custom to allow parents to attend their child's invasive physical medical examinations.

66.    In *Swartwood*, the County admitted that, pursuant to custom, parents are always excluded from these medical examinations. *Swartwood*, 84 F. Supp. 3d at 1116.

67.    The County never investigates or disciplines its agents for performing physical medical examinations of children at Polinsky – without consent, court order, or exigency. The County did not investigate or discipline Doctor DOES 91-100 for performing the physical medical examination of C.M. without a court order, parental consent or notification, and/or exigency.

68.    The County's unlawful custom of excluding parents from their child's physical medical examination has resulted in several lawsuits alleging that this custom was the moving force causing the violation of the particular family's constitutional rights. This includes, but is not limited to, *Swartwood* and *Parkes.* Specifically, in *Swartwood*, the Hon. Thomas J. Whelan, United States District Judge, found that the custom of excluding parents from their child's physical

1   medical examination was the moving force in violating the family's constitutional
2   rights. *Swartwood*, 84 F. Supp. 3d at 1121.

3       69.    When Doctor DOES 91-100 performed the physical medical
4   examinations on C.M., they acted pursuant to, and in accordance with the
5   County's customs.

6       70.    The County failed to train its agents on the constitutional rights of a
7   parent and child, including but not limited to:

8       a.    the requirement that a court order, parental consent, and/or exigency
9             is required prior to performing a physical medical examination on a
10            child outside the presence of his or her parent(s);

11      b.    that parents are allowed to be present during their child's physical
12            medical examination.

13      71.    The County's failure to train its agents on these established
14  constitutional protections was a substantial factor in causing the Plaintiff's harm.
15  Without adequate training, Doctor DOES were unfamiliar with and oblivious to
16  the Plaintiff's constitutional rights, when they subjected C.M. to a physical
17  medical examination – without consent, court order, exigency, and/or outside
18  Plaintiff's presence.

19      72.    The County knew or should have known that a child could not be
20  subjected to a medical examination – without consent, court order, exigency,
21  and/or outside Plaintiff's presence. But, the County knowingly refrained from (1)
22  revising its medical examination customs, and (2) training it agents on the subject.

23      73.    These actions, and/or inactions, of the County were the moving force
24  behind the Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has
25  sustained general and special damages, in an amount to be proven at trial.

26  / / /

27

28  / / /

## SEVENTH CLAIM FOR RELIEF – *MONELL* RELATED CLAIMS FOR UNWARRANTED INTERROGATIONS

**(**By Plaintiff Against Defendant County of San Diego)

74.    Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 73.

75.    In 2010, legal counsel for the San Diego County Office of Education issued a legal opinion stating that social workers cannot interview children at school without a court order. (*See* Exhibit A.) The County agreed with the San Diego County Office of Education's legal analysis, i.e., social workers cannot interview children at school without a court order. In 2010, the County issued a special notice titled "Abuse/Neglect Investigations – Authorization to Interview a Child(ren) at School." (*See* Exhibit B and Exhibit C.) This special notice created new policy and procedure for interviewing children at school, and instructed that parental consent or a court order were required prior to interviewing a suspected victim of abuse. (*Ibid*.) The forms necessary to obtain an interview order and/or parental consent were also provided to the social workers at that time. (*See* Exhibit C.) At present, these policies and procedures have not been rescinded.

76.    County social workers routinely ignore this policy. Instead, at all times, in spite of the policy, the County's custom is to interrogate children outside the presence of their parents – without court order, parental consent, and/or exigent circumstances.

77.    Golly was acting pursuant to and in accordance with the County's customs when she interrogated C.M. without a court order, parent consent, and/or exigent circumstances. Golly's interrogations of C.M. were known to and approved by her supervisor prior to the interrogations.

78.    The County never investigates or disciplines the social workers who interrogate children outside the presence of their parents – without a court order, parental consent, and/or exigent circumstances. The County did not investigate or

discipline Golly for interrogating C.M. outside Plaintiff's presence – without court order, parental consent, and/or exigent circumstances.

79.     The County has and continues to refuse to admit that its social workers commit a constitutional violation when they interrogate a child outside the presence of his or her parent(s) – without a court order, parental consent, and/or exigent circumstances. The County denies that Golly violated Plaintiff's right when she interrogated C.M. outside Plaintiff's presence – without a court order, parental consent, and/or exigent circumstances. The County ratified and/or approved of Golly's interrogation of C.M.

80.     The County failed to train its social workers that a child cannot be interviewed at school without a court order, parent consent, and/or exigent circumstances. The County's failure to train its agents on this established constitutional protection was a substantial factor in causing the Plaintiff's harm. Without adequate training, Golly was unfamiliar with and oblivious to the Plaintiff's constitutional rights, when she interviewed C.M. – without consent, court order, and/or exigency.

81.     The County knew or should have known that a child could not be interrogated without a court, parent consent, and/or exigent circumstances. But, the County knowingly refrained from (1) enforcing its policies, and (2) training its agents on the subject.

82.     These actions, and/or inactions, of the County were the moving force behind the Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF – *MONELL* RELATED CLAIMS FOR UNWARRANTED SEIZURES BY CITY POLICE OFFICERS

(By Plaintiff Against Defendant City of San Diego)

83.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 82.

---

84.    The City and SDPD, had a duty to implement and follow customs and/or practices ("customs") which confirm and provide the protections guaranteed under the United States Constitution. The City had a duty to use reasonable care to supervise, train, and control its agents, to protect these rights.

85.    Based on the duties charged to its police officers, including the powers to seize children from their parents' custody, the City knew or should have known of the need to establish customs required to protect the civil rights of parents and children with whom their police officers regularly came into contact – and to adequately train them.

86.    At the time of the underlying events, the City's customs relating to the removal of a child from its parent's custody included, but were not limited to:

    a.    The custom of removing children from their parent's custody without consent, court order, and/or exigency (i.*e.*, imminent danger of serious bodily injury).

    b.    The custom of removing children from their parent's custody without first performing a reasonable investigation.

    c.    The custom of removing children from their parent's custody after confirming that the child had not suffered any physical injuries.

    d.    The custom to not intercede when the SDPD is removing a child from their parent's custody without consent, court order, and/or exigency.

87.    When POLICE DEFENDANTS twice seized C.M. from Plaintiff's custody, they were acting pursuant to and in accordance with the City's child removal customs, and C.M.'s seizure was approved by police supervisors.

88.    The warrantless seizures of C.M. were not isolated incidents. The two seizures occurred months apart and involved at least seven police officers.

89.    SDPD officers regularly seize children from their parent's custody without consent, court order, and/or exigency. These unlawful seizures have resulted in several lawsuits against multiple offending police officers (for violation

of constitutional rights) and the City (for its customs being the moving force behind these violations). These include, but are not limited to, the following: **(1)** *Kemper v. County of San Diego*, 2013 Cal.App.Unpub. LEXIS 2818 (2013), and **(2)** *Donna Greenspan v. County of San Diego*, Case No. 13-CV-00210-LAB.

90.   The City never investigated or disciplined a police officer (including those named as Defendants in the lawsuits identified in ¶89) who seized a child from its parent's custody without consent, court order, and/or exigency. The City did not investigate or discipline the POLICE DEFENDANTS for twice seizing C.M. from Plaintiff's custody without consent, court order, and/or exigency.

91.   The City has and continues to refuse to admit that its police officers commit a constitutional violation when they seize children from their parent's custody without consent, court order, and/or exigency. The City denies that the POLICE DEFENDANTS violated Plaintiff's right when they twice seized C.M. without consent, court order, and/or exigency. The City ratified and/or approved of the POLICE DEFENDANTS' two unwarranted seizures of C.M.

92.   The City failed to train its police officers on the constitutional rights of a parent and child, including but not limited to:

a.   The circumstances under which a court order must be obtained prior to removing a child from the custody of its parent(s).

b.   The fact that a court order or parental consent must be obtained prior to removing a child from the custody of its parent(s), when there was no exigency.

c.   That a child cannot be removed without a court order or parental consent, unless there is "specific, articulable evidence" that a child is in imminent danger of suffering serious bodily injury.

d.   That a child cannot be removed from their parent's custody without first performing a reasonable investigation.

93.     The City's failure to train its police officers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm. Without adequate training, the POLICE DEFENDANTS were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when they twice seized C.M. – without consent, court order, or exigency.

94.     The City knew or should have known that a parent and child cannot be separated without consent, court order, and/or exigency. But, the City knowingly refrained from (1) revising its child removal customs, and (2) training it police officers that a child cannot be removed without consent, court order, and/or exigency. In addition, the City refused to investigate or discipline its police officers for removing a child without consent, court order, and/or exigency.

95.     These actions, and/or inactions, of the City were the moving force behind the Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, in an amount to be proven at trial.

**NINTH CLAIM FOR RELIEF: CHILD ABDUCTION[2]**

(By Plaintiff Against Defendant Charles Cox Sr.)

96.     Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 95.

97.     At all times, Plaintiff was entitled to custody and control of C.M. Defendant COX knew this, but contrived to deprive Plaintiff of C.M.'s society and interfere with Plaintiff's custody. Defendant COX knew that Plaintiff did not allow C.M. to leave Plaintiff's home, and/or accompany Defendant COX.

98.     On January 22, 2013, Defendant COX abducted, removed, and/or enticed C.M. from Plaintiff's custody and control.

---

[2] Pursuant to this Court's order, this action is currently stayed as to Defendant Cox. (Docket No. 42.)

99.   Defendant COX interfered with Plaintiff's custody and control of C.M. By reason of these wrongful acts by COX, Plaintiff suffered damages all to an extent and in an amount subject to proof at trial.

100.   Defendant COX knew or should have known that his actions would, or were likely to injure and damage the Plaintiff. Defendant COX intended to cause injury and damage to Plaintiff, and/or acted with a willful and conscious disregard of Plaintiff's rights.

### TENTH CLAIM FOR RELIEF: I.I.E.D.

(By Plaintiff Against Defendant Charles Cox Sr.)

101.   Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, paragraphs 1 through 100.

102.   Defendant COX engaged in the above-mentioned extreme, outrageous, unlawful and unprivileged conduct including, but not limited to, removing C.M. from the care and custody of Plaintiff, against his will, and without his consent. These acts exceeded the bounds of common decency.

103.   Defendant COX intended to cause harm to Plaintiff, or acted with reckless disregard for the possibility that Plaintiff would suffer extreme emotional distress as a result of the outrageous conduct listed above.

104.   As the direct and proximate result of Defendant COX's extreme and outrageous conduct, Plaintiff has suffered extreme emotional and physical distress, in an amount subject to proof at trial.

105.   Defendant COX acted knowingly and wilfully, with malice and oppression, and with the intent to harm Plaintiff.

### ELEVENTH CLAIM FOR RELIEF: NEGLIGENCE

(By Plaintiff Against Defendant Charles Cox Sr.)

106.   Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 105.

107.   At all relevant times, Defendant COX owed Plaintiff a duty not to

interfere with the relationship between Plaintiff and C.M., and with Plaintiff's right to the care, custody, and companionship of C.M.

108.   On or about January 22, 2013, Defendant COX breached his duty not to interfere with the relationship between Plaintiff and C.M., by wrongfully and tortiously removing C.M. from Plaintiff's custody and companionship, against Plaintiff's will and without his consent.

109.   As the direct and proximate result of Defendant COX's extreme and outrageous conduct, Plaintiff has suffered extreme emotional and physical distress, in an amount subject to proof at trial.

## **PRAYER**

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them as follows:

1.      Plaintiffs demand a jury trial as to the issues so triable;

2.      General damages and special damages according to proof;

3.      Punitive damages as allowed by law, against the individual defendants only and not against any municipal defendant;

4.      Attorneys fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5.      Injunctive relief, both preliminary and permanent, as allowed by law;

6.      Costs of suit incurred herein;

7.      Such further relief as allowed by law; and

8.      Such further relief as the Court deems just and proper.

Dated: October 26, 2015          THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

/s/ Stephen D. Daner
Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.
Dennis B. Atchley, Esq.
Adrian M. Paris, Esq.
Attorneys for Plaintiff

---

# Exhibit A

# Exhibit A

# Exhibit A

**IBBK**  |  **BEST BEST & KRIEGER**
ATTORNEYS AT LAW

May 25, 2010

## Memorandum

TO:        San Diego County Office of Education

FROM:     William W. Merrill
             Megan M. Moore

RE:         Frequently Asked Questions: Greene v. Camretta

This memorandum provides a list of frequently asked questions regarding the impact of *Greene v. Camreta* (9th Cir. 2009) 588 F.3d 1011 (hereinafter referred to as "*Greene*") on school districts. It has been provided to the San Diego County Office of Education for informational purposes only and should not be relied upon in reaching a conclusion in a particular area of law. Applicability of the legal principles discussed may differ substantially in individual situations. School staff and administrators should follow district polices and consult with the district office or district legal counsel regarding specific situations.

### FREQUENTLY ASKED QUESTIONS

**1. What is the primary rule announced by the Court in the *Greene case*?**

*Greene* requires a representative from a law enforcement or related agency to obtain a warrant or court order or consent from the parent or legal guardian prior to interviewing a student on school grounds during school hours as part of a child abuse investigation, unless exigent circumstances are present such that obtaining a warrant or court order would result in serious bodily injury to the child. The failure to obtain the warrant/court order will result in a violation of the U. S. Constitution's protection from unreasonable searches and seizures.

**2. Does *Greene* apply to interviews that are not related to child abuse investigations?**

*Greene* may apply to other kinds of interviews. The holding in *Greene* indicates that when a government representative, such as a police officer, interviews a student on school grounds during school hours for "law enforcement purposes," the individual must have a warrant, court order, or consent from the parent or legal guardian unless exigent circumstances exist. Therefore, the *Greene* rule is likely to extend to other situations that involve outside government officials interviewing students for law enforcement purposes, such as a criminal investigation.

*Greene* does not apply unless the interview is for law enforcement purposes. For example, a CPS worker may wish to speak to a child pursuant to obligations related to foster care. *Greene* does not apply to this situation.

It is not up to school staff to determine whether an exception to the warrant/court order requirement applies. Generally, any outside government official who wishes to speak to a student on school grounds, during school hours, should be required to provide documentation of the purpose for their visit. Staff should follow the district's existing policies and procedures in all instances when an outside individual wishes to speak to a student on campus, during school hours. Staff should maintain a copy of the documentation in the appropriate file, pursuant to these procedures.

3.   **What type of documentation must a social worker, police officer, parole officer, or other government official present if they wish to interview a student on campus, during school hours for law enforcement purposes?**

The following documents permit an interview on school grounds, during school hours:

- A warrant or affidavit, signed by a judge of state or federal court, expressly stating that the individual has authority to speak with the specified student;

- A court order expressly stating that the government official has authority to speak with the specified student, such as an order placing a juvenile on probation where the conditions of probation include submitting to searches or seizures (including interviews) without a warrant;[1]

- A written signed consent form indicating that a parent or guardian with legal custody over the student has given consent for the individual to speak with the student.

4.   **What are exigent circumstances and how do I tell if they exist in a particular situation?**

Exigent circumstances exist when caseworker or police officer has reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

It is not up to school staff to determine whether exigent circumstances exist.  If the caseworker, probation officer, police officer, or other government agency worker states that there are exigent circumstances, staff should permit the interview to take place.  If the individual making the request has documentation of the exigent circumstances, staff should maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.  If the individual states that, due to the exigent circumstances, he or she does not have any documentation, staff should write down who requests the interview, who conducts the interview, and what explanation is provided that exigent circumstances exist.  Again, this information should be filed pursuant to the district's existing policies and procedures.

5.   **What if the consent form is signed by a caretaker/caregiver and not the parent or guardian?**

It is not up to school staff to determine whether the consent obtained by the police officer is reasonable.  However, if school staff or administrators have reason to believe that the police officer has failed to obtain consent from an available parent or guardian, he or she should discuss the issue with the police officer and document the conversation.  Ultimately, if the police officer believes that the consent to interview is reasonable under the circumstances, district staff and administrators should allow the police officer to speak with the student.  Staff should maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.

---

[1] This may appear on an order as a waiver of "Fourth Amendment" rights.

**6. If a CPS worker is conducting an investigation without the presence of a police officer, does *Greene* apply?**

A CPS worker acting alone should still have a warrant, court order, or consent from a parent to conduct the interview. The holding in *Greene* was based upon the relationship between the criminal investigation for purposes of prosecuting a parent and the civil investigation for purposes of protecting the child. Based on the "law enforcement purpose" of the interview, the Fourth Amendment applies. Given the connection between the legal and protective nature of child abuse investigations, it is likely to be difficult to determine that the CPS worker is acting without a law enforcement purpose.

**7. If a CPS worker conducts the investigation based on a report from a school official or employee, does *Greene* apply?**

A CPS worker or police officer conducting an investigation based on a report from a school official still needs to have a warrant, court order, or consent from a parent or guardian, unless exigent circumstances exist. *Greene* applies even when the investigation results from the mandatory report of suspected child abuse of school staff or officials. The *Greene* court focused on the law enforcement purpose of the interview. Although school staff and officials are mandated reporters, that does not change the nature or purpose of an interview by the investigator once an investigation begins. The CPS worker and/or police officer is not acting as a school official for the purpose of maintaining discipline when the are conducting a child abuse investigation, even if it was initially reported by school staff or administration.

**8. Are school officials or staff members permitted to speak with a student regarding concerns about child abuse?**

*Greene* does not apply to situations in which school staff or administration interview students for purposes of school safety or discipline. The *Greene* court specifically distinguished between maintaining safety on school grounds and outside authorities conducting investigations for law enforcement purposes. Generally, school staff, faculty, and School Resource Officers ("SROs") are not required to obtain a warrant or consent from the parent/guardian prior to speaking with a student for the purpose of <u>maintaining discipline and/or safety</u> in the classroom, on school grounds, or at school functions. For example, if a teacher makes a general inquiry into the welfare of a particular student, an interview of the student by the teacher does not require a warrant or consent. These duties fall within the District's authority for maintaining a safe, secure, and peaceful campus. (Cal. Const., art. 1, § 28, subd. (c).) Therefore, school officials and staff members do not need a warrant, court order, or consent prior to making a general inquiry into the welfare of a student. School staff and administrators should follow district policies and procedures in these situations.

**9. Can an SRO interview students?**

*Greene* does not apply to situations in which school SROs interview students for purposes of school safety or discipline. The *Greene* court specifically distinguished between school staff (including SROs) maintaining discipline and safety on school grounds and outside authorities conducting investigations for law enforcement purposes. School staff, faculty, and SROs are not required to obtain a warrant or consent from the parent prior to speaking with a student for the purpose of <u>maintaining discipline and/or safety</u> in the classroom, on school grounds, or at school functions. For example, if there is a fight on school grounds, the SRO may need to investigate the incident by

- 3 -

**BEST BEST & KRIEGER⸬**
ATTORNEYS AT LAW

speaking with students who witnessed or participated in the fight. This does not require a warrant, court order, or parent/guardian consent. If the SRO sees students outside of the classroom during class time, he or she may ask the students where they are going and what they are doing. These duties fall within the District's authority for maintaining a safe, secure, and peaceful campus. (Cal. Const., art. 1, § 28, subd. (c).)

However, if an SRO is conducting an interview as part of a law enforcement investigation unrelated to school discipline or school safety issues, then the SRO needs to have a warrant, court order, or consent from a parent, as set forth above.

### 10. What if the SRO's interview leads to a police investigation?

As noted above, *Greene* does not apply to situations in which school SROs interview students for purposes of school safety or discipline. This is true even if an interview that is related to school discipline or safety results in criminal prosecution. Again, if an SRO is conducting an interview as part of a law enforcement investigation unrelated to school discipline or school safety issues, then the SRO needs to have a warrant, court order, or consent from a parent, as set forth above.

### 11. What if school staff or administration call local police to assist with an emergency situation on school grounds?

If there is an emergency on school grounds, school staff and administrators should follow their normal policies and procedures for getting assistance. As noted above, it is not up to school staff to determine whether a police officer is required to obtain a warrant in a particular situation.

### 12. What if a police officer comes on to school grounds to arrest a student who is in possession of a weapon or drugs?

The *Greene* decision applies to interviews conducted for law enforcement purposes. Therefore, an arrest does not fall within the purview of *Greene*. School staff and administrators should follow district policies and procedures and direct any questions about a specific situation to the district office. If a student is arrested, the school must notify the parent, guardian, or responsible relative of the minor regarding the release of the minor to the police officer, and regarding the place to which the minor is reportedly being taken. (Ed. Code, § 48906.)

### 13. What if a police officer wants to interview a student regarding a crime that occurred outside of school grounds?

The holding in *Greene* indicates that when a government representative, such as a police officer, interviews a student on school grounds during school hours for "law enforcement purposes," the individual must have a warrant, court order, or consent from the parent unless exigent circumstances exists. Therefore, *Greene* is likely to apply to this situation.

As noted above, it is not up to school staff to determine whether a law enforcement purpose exists. Generally, any outside individual who wishes to speak to a student on school grounds, during school hours, should provide documentation of the purpose for their visit. District staff can use this documentation to guide them as to whether they are required to permit the interview. Staff should

- 4 -

BEST BEST & KRIEGER⸍

ATTORNEYS AT LAW

maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.

### 14. Can a probation officer speak to a student-parolee on school grounds during school hours?

Generally, any outside individual who wishes to speak to a student on school grounds, during school hours, should provide documentation of the purpose for their visit. Parole officers may have a court order or parole form dictating the terms of parole. Typically, this form will include a waiver of "Fourth Amendment" rights, which means the conditions of probation include submitting to searches or seizures (including interviews) without a warrant. District staff can use this documentation to guide them as to whether they are required to permit the interview. Staff should maintain a copy of the documentation in the appropriate file, pursuant to the district's existing procedures.   •

### 15. What if a student's defense attorney or the defense attorney's private investigator wants to speak with a student during school hours?

The *Greene* decision applies only to interviews conducted for law enforcement purposes. Districts have legal obligations to limit access to school grounds and students. Staff should follow the district's existing policies and procedures applicable to access to students.

### 16. What if an individual wants to serve a subpoena on a student during school hours?

The *Greene* decision applies to interviews conducted for law enforcement purposes. Simply to serve a lawfully issued subpoena, no interview is required. Rather, the process server need only identify the individual and personally hand him or her the subpoena documentation. As such, service of a lawfully issued subpoena does not fall within the *Greene* rule, because no interview will take place. Because the *Greene* rule does not apply, the individual serving the subpoena does not need to have additional documentation, such as a warrant or court order. School staff and administrators should follow their district policies and procedures prior to allowing the service of a subpoena on a student. Questions regarding this situation should be directed to the district office.

# Exhibit B

# Exhibit B

# Exhibit B



NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

# County of San Diego

### HEALTH AND HUMAN SERVICES AGENCY

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098
(858) 694-5413        FAX (858) 694-5475

CHILD WELFARE PROGRAMS
858-694-5111

POLICY AND PROGRAM SUPPORT
858-514-6603

POLINSKY CHILDREN'S CENTER
858-514-4718

ADOLESCENT SERVICES
858-694-5751

February 26, 2010

## CHILD WELFARE SERVICES SPECIAL NOTICE # 01-10   Addendum #2

TO:       All Social Work Staff
          Child Welfare Services

FROM:   Debra Zanders-Willis, Director
          Child Welfare Services

## ABUSE/NEGLECT INVESTIGATIONS – AUTHORIZATION TO INTERVIEW CHILD(REN) AT SCHOOL

**Purpose**

Because information related to interviewing children at school is changing so quickly, this Special Notice (SN):
- introduces new information and procedures, including a Quick Guide
- consolidates all current information from SN #01-10 and #01-10 Addendum #1
- supersedes and thus obsoletes SN #01-10 and #01-10 Addendum 1.

*Policy information is displayed in italics and is effective immediately.*

**Background**

A recent appellate decision ("Greene v. Camreta") held that interviewing a suspected victim of child abuse/neglect during school hours without parental consent or a court order violates Fourth Amendment rights to be "free from unlawful search and seizure".

Last week, the San Diego County Office of Education (SDCOE) received a legal opinion from its counsel saying the above decision does not allow SWs to interview children at school without a warrant or court order, and that our 04-73 (Interviewing Child at School Letter), while accurately reflecting California statute, cannot override 4th Amendment rights.  SDCOE then sent a letter to all district superintendents advising them of such.

We have been advised that if the SW includes the child's name and DOB on the Letter (04-73) and documents that emergency (exigent) circumstances exist, the schools might continue to allow SWs to interview children.  The 04-73 has been revised accordingly, but individual schools/districts may still require parental consent or a court order.

*Continued on next page*

# Exhibit C

# Exhibit C

# Exhibit C



NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

# County of San Diego

HEALTH AND HUMAN SERVICES AGENCY

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098
(858) 694-5413      FAX (858) 694-5475

CHILD WELFARE PROGRAMS
858-694-5111

POLICY AND PROGRAM SUPPORT
858-514-6603

POLINSKY CHILDREN'S CENTER
858-514-4718

ADOLESCENT SERVICES
858-694-5751

April 29, 2010

## CHILD WELFARE SERVICES SPECIAL NOTICE # 01-10    Addendum #3

TO:      All Social Work Staff
         Child Welfare Services

FROM:    Debra Zanders-Willis, Director
         Child Welfare Services

## ABUSE/NEGLECT INVESTIGATIONS – AUTHORIZATION TO INTERVIEW A CHILD (REN) AT SCHOOL

| | |
|---|---|
| **Background** | A recent decision by the US Ninth Circuit of Appeals, ("Greene vs. Camreta"), has prompted new policy and procedures for interviewing children at school. |
| | Greene v. Camreta, acknowledges that while state law may provide for interviewing a suspected victim of child abuse or neglect during school hours, provisions of the Fourth Amendment of the US Constitution ensuring that "every person shall be free from unlawful search and seizure" apply to governmental agencies when conducting child abuse and neglect investigations. |
| | The Greene decision took issue with the presence of law enforcement at a school interview conducted by a SW and determined that the Fourth Amendment applied. It remains an open question as to whether school interviews conducted by SWs, *without the presence of law enforcement,* are subject to the Fourth Amendment and require parental consent or a court order prior to interviewing a child on school property, in the absence of exigent circumstances.  We have previously provided guidance with respect to the manner in which SWs may conduct school interviews based upon the factors identified in Greene. |
| | *Policy information is displayed in italics.* |
| **Purpose** | Provide clarification on leaving forms at the request of schools based upon the confidentiality outlined in the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99) which is a Federal law that protects the privacy of student education records. |

*continued*

**CHILD WELFARE SERVICES SPECIAL NOTICE # 01-10    Addendum #3**
April 29, 2010
Page 2 of 2

| | |
|---|---|
| **Purpose** *(continued)* | The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education. Students have specific, protected rights regarding the release of such records and FERPA requires that institutions adhere strictly to these guidelines. |
| **Effective Date** | *These policies and procedures are effective immediately.* |
| **Policy** | *Based upon input from County Counsel, FERPA, and the California Education Code (49061) CWS staff may provide schools with a copy of the following forms:* |

- *04-69 Consent to Interview Child*

- *04-70 Order Authorizing Interview on School Property (Warrant)*

- *04-72 Acknowledgement of Request for Verbal Consent to Interview Child*

- *04-73 Interviewing Children at School Letter*

- *Juvenile Court Order (showing care, custody & control)*

| | |
|---|---|
| **ORC Statement** | Due to the time sensitive nature of this Addendum, it was not reviewed by ORC. |
| **Contact Person** | Staff with questions about this Special Notice may contact Elyce A. Hoene, CWS Policy Analyst at 514-6646/858 or e-mail Elyce.Hoene@sdcounty.ca.gov |

*(Original signed by Debra Zanders-Willis)*


DEBRA ZANDERS-WILLIS, Director
Child Welfare Services


DZW/eah

## ORDER AUTHORIZING INTERVIEW ON SCHOOL PROPERTY

## COUNTY OF SAN DIEGO

## INTERVIEW ORDER AND AFFIDAVIT

### AFFIDAVIT

I,          , swear under oath that the facts expressed to me in this application for a Interview Order and Affidavit and in the attached and incorporated statement of probable cause are true and that based thereon I have probable cause to believe that a child(ren) attending school at the location identified below may have suffered abuse or neglect or there is a substantial risk of such abuse or neglect, sufficient for the issuance of an order authorizing  the entry onto the school premises identified below to conduct an interview of the child(ren) pursuant to Penal Code section 11174.3,  Wherefore, I request that this Interview Order be issued.

_____
Signature of Affiant

Sworn to and signed before me this date _____,20____

Sworn via telephone this date _____,20____

_____
Judge of the Superior Court

### INTERVIEW ORDER

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SCHOOL PERSONNEL IN THE COUNTY OF SAN DIEGO: proof by affidavit having been made before me by          employed by the San Diego County Health & Human Services Agency, that there is probable cause to believe that a child(ren), attending school at the premises identified herein may have suffered abuse or neglect or there is a substantial risk of such abuse or neglect, sufficient for the issuance of this Interview Order pursuant to Penal Code section 11174.3;

YOU ARE THERFORE COMMANDED TO:

☐ ALLOW THE HEALTH & HUMAN SERVICES AGENCY OF SAN DIEGO COUNTY ENTRY ONTO
SCHOOL PREMISES LOCATED AT:

☐ ALLOW THE HEALTH & HUMAN SERVICES AGENCY OF SAN DIEGO COUNTY TO INTERVIEW
THE CHILD(REN) NAMED AND/OR DESCRIBED AS:          AT SAID SCHOOL LOCATED
AT:

FOR THE PURPOSE OF:

Determining if the child(ren) herein may have suffered abuse or neglect or there is a substantial risk of such abuse or neglect.

This Interview Order and incorporated Affidavit were sworn to as true and subscribed before me this ___ day of _____, 20___, at [time] _____.  WHEREFORE; I find probable cause for the issuance of this Interview Order and do so issue it.

_____
Judge of the Superior Court



County of San Diego

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

**HEALTH AND HUMAN SERVICES AGENCY**

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

## CONSENT TO INTERVIEW CHILD

☐ I, _____, the legal parent/guardian of
(Print name)

_____, agree that a social worker from
(Child[ren]'s Name[s])

Child Welfare Services may speak to the above named child as part of a child abuse/neglect investigation.

_____ I agree that a social worker may speak to the above-named child(ren) as necessary to
(initial)    complete the child abuse/neglect investigation.

_____ I agree that the social worker may speak to the above-named child(ren) at a location other
(initial)    than my home.

_____ I understand that the social worker will ask the above-named child(ren) questions
(initial)    regarding the child's emotional and physical health.

_____ I acknowledge that I have the legal authority to give consent to the interview(s) and
(initial)    understand that I may withdraw my consent at any time by advising Child Welfare
Services.

_____          _____
Parent's/Guardian's Signature                              Date

04-69  (01/10)  L3



## County of San Diego

**CHILD WELFARE PROGRAMS**
**POLICY AND PROGRAM SUPPORT**
**POLINSKY CHILDREN'S CENTER**
**ADOLESCENT SERVICES**

**NICK MACCHIONE, FACHE**
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

**DEBRA ZANDERS-WILLIS**
DIRECTOR
CHILD WELFARE SERVICES

**HEALTH AND HUMAN SERVICES AGENCY**

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

☐ I, _____, the legal parent/guardian of

_____, DO NOT agree with having a social worker from
(Child[ren]'s Name[s])
Child Welfare Services speak to the above named child(ren).

_____          _____
Parent's/Guardian's Signature                              Date

04-69  (01/10)  L3



NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

# County of San Diego

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

### HEALTH AND HUMAN SERVICES AGENCY

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

CHILD WELFARE PROGRAMS

POLICY AND PROGRAM SUPPORT

POLINSKY CHILDREN'S CENTER

ADOLESCENT SERVICES

To Whom It May Concern:

As a Representative from San Diego County Child Welfare Services, I, _____ ∘ , am
permitted to investigate child abuse pursuant to Penal Code §11174.3.

I have received a report alleging that _____ DOB
_____ is a victim of child abuse and/or neglect and I have reason to believe that there are
exigent/ emergency reasons for interviewing the child at _____
school without parental consent or a warrant.

11174.3. (a) Whenever a representative of a government agency investigating suspected child abuse or
neglect or the State Department of Social Services deems it necessary, a suspected victim of child abuse
or neglect may be interviewed during school hours, on school premises, concerning a report of suspected
child abuse or neglect that occurred within the child's home or out-of-home care facility. The child shall
be afforded the option of being interviewed in private or selecting any adult who is a member of the staff
of the school, including any certificated or classified employee or volunteer aide, to be present at the
interview. **A representative of the agency investigating suspected child abuse or neglect or the State
Department of Social Services shall inform the child of that right prior to the interview.**

The purpose of the school staff person's presence at the interview is to lend support to the child and enable him
or her to be as comfortable as possible. However, the member of the staff so elected shall not participate in the
interview. The member of the staff so present shall not discuss the facts or circumstances of the case with the
child. The member of the staff so present, including, but not limited to, a volunteer aide, is subject to the
confidentiality requirements of this article, a violation of which is punishable as specified in Section §11167.5.
A representative of the school shall inform a member of the staff so selected by a child of the requirements of
this section prior to the interview. A staff member selected by a child may decline the request to be present at
the interview. If the staff person selected agrees to be present, the interview shall be held at a time during
school hours when it does not involve an expense to the school. Failure to comply with the requirements of
this section does not affect the admissibility of evidence in a criminal or civil proceeding.

If you have any questions, please do not hesitate to call me or my supervisor. Thank you.

_____
Name of Social Worker

_____
Phone Number

_____
Date

_____
Name of Social Worker's Supervisor

_____
Phone Number

04-73  (02/10)  DNF



*County of San Diego*

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

NICK MACCHIONE, FACHE
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

DEBRA ZANDERS-WILLIS
DIRECTOR
CHILD WELFARE SERVICES

**HEALTH AND HUMAN SERVICES AGENCY**

CHILD WELFARE SERVICES
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

## ACKNOWLEDGEMENT OF REQUEST FOR VERBAL CONSENT TO INTERVIEW CHILD(REN)

I, _____, Social Worker with County of San Diego, Health and Human Services Agency, Child Welfare Services, on _____ spoke by telephone with
(Date)

_____, the legal parent/guardian of

_____, to obtain his/her consent to interview the
(Child[ren]'s Name[s])
above-named child(ren) as part of a child abuse/neglect investigation.

☐ **Consents were given allowing a social worker to speak with the above-named child(ren) including:**

_____   Agreement that a social worker may speak to the above-named child(ren) as necessary to
(initial)   complete the child abuse/neglect investigation.

_____   Agreement that the social worker may speak to the above-named child(ren) at a location other
(initial)   than the parent's/guardian's home.

_____   Understanding by the parent/guardian that the social worker will ask the above-named
(initial)   child(ren) questions regarding the child(ren)'s emotional and physical health.

_____   Acknowledgement by the parent/guardian that he/she has the legal authority to give consent to
(initial)   the interview and an understanding that he/she may withdraw their consent at any time by
          advising Child Welfare Services.

04-72  (01/10) L3



*County of San Diego*

CHILD WELFARE PROGRAMS
POLICY AND PROGRAM SUPPORT
POLINSKY CHILDREN'S CENTER
ADOLESCENT SERVICES

**NICK MACCHIONE, FACHE**
DIRECTOR
HEALTH AND HUMAN SERVICES AGENCY

**DEBRA ZANDERS-WILLIS**
DIRECTOR
CHILD WELFARE SERVICES

**HEALTH AND HUMAN SERVICES AGENCY**

**CHILD WELFARE SERVICES**
6950 LEVANT STREET, SAN DIEGO, CA 92111-6098

☐ **No consents were given allowing a social worker to speak with the above-named child(ren).**

I affirm that the above statements and initialed consents are true and correct.

| | | |
|---|---|---|
| Social Worker Signature | Date | Time |

04-72 (01/10) L3

## <u>CERTIFICATE OF SERVICE</u>
## <u>NOTICE OF ELECTRONIC FILING</u>

*CARLOS McMANUS SR. vs. COUNTY OF SAN DIEGO, et al.,*
CASE NO. : 15-cv-00138-JM-RBB
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA

I am employed in the County of San Diego, State of California. I am over 18 years of age and am not a party to the within action. My business address is 4955 Via Lapiz, San Diego, California 92122.

On October 26, 2015, I electronically filed the foregoing documents described as:

• **THIRD** **AMENDED COMPLAINT FOR DAMAGES**

 **X**  **(BY ELECTRONIC FILING)**  I electronically filed with the Clerk of the Court a true and correct copy of the original as indicated above, and a Notice of Electronic Filing (NEF) is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case. As listed on Attachment A.

And I hereby certify that I have mailed the foregoing documents as indicated above to the parties who are not registered for the CM/ECF system as following:

**<u>NO NON-ECF PARTIES</u>**.

Parties can access this filing through the Court's system.

Dated: October 26, 2015

  /S/ Stephen D. Daner
Stephen D. Daner

**Attachment A**

| | |
|---|---|
| Tom Montgomery, Esq.<br>David Brodie, Esq.<br>1600 Pacific Highway, Room 355<br>San Diego, CA 92101-2469<br>Phone: (619) 531-4874<br>Fax: (619) 531-6005 | Defendants County of San Diego, Jennifer Mork, and Wanjiru Golly. |
| Jan I. Goldsmith, Esq.<br>David J. Karlin, Esq.<br>Office of the City Attorney<br>1200 Third Avenue, Suite 1100<br>San Diego, CA 92101-4100<br>Phone: (619) 533-5800<br>Fax: (619) 533-5856 | Defendants City of San Diego, Police Officers Ernesto Luna, Mari Kong, Sgt. Thomas Sullivan,  Sgt. Antonio Johnson, Detective Dan Burow, Lt. A. Smith, and Sgt. Wills. |
| Robert C. Schlein, Esq.<br>Robert C. Schlein & Associates<br>750 B Street Suite 3210<br>San Diego, California 92101<br>Telephone: (619) 235-9026<br>Fax: (619) 22-1859 | Defendant Charles Cox, Sr. |