1  THOMAS E. MONTGOMERY, County Counsel
   County of San Diego
2  By DAVID L. BRODIE, Senior Deputy (SBN 156855)
   1600 Pacific Highway, Room 355
3  San Diego, California 92101
   Telephone: (619) 531-4871
4  Facsimile: (619) 531-6005
   E-mail: david.brodie@sdcounty.ca.gov
5
   Attorneys for County of San Diego, Wanjiru Golly, and Jennifer Mork
6

7

8                **UNITED STATES DISTRICT COURT**

9                **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  CARLOS McMANUS SR., an individual,  )   No. 15cv00138-JM (RBB)
                                         )
12            Plaintiffs,                )   **DEFENDANTS COUNTY OF SAN**
                                         )   **DIEGO, WANJIRU GOLLY, AND**
13       v.                              )   **JENNIFER MORK'S MOTION TO**
                                         )   **DISMISS PLAINTIFF'S THIRD**
14  COUNTY OF SAN DIEGO, a public        )   **AMENDED COMPLAINT**
    entity; CITY OF SAN DIEGO, a public  )
15  entity; POLICE OFFICERS ERNESTO      )   Date: December 14, 2015
    LUNA (ID# 3779), MARI KONG (ID#      )   Time: 10:00 a.m.
16  5850), SGT. THOMAS SULLIVAN (ID#     )   Courtroom 5D (Schwartz)
    4676), SGT. ANTONIO JOHNSON (ID#     )   Judge: Hon. Jeffrey T. Miller
17  3816), DETECTIVE DAN BUROW (ID#      )
    5268) and LT. A. SMITH (ID# 3472);   )   **[NO ORAL ARGUMENT UNLESS**
18  SGT. WILLS (ID# 4558); SOCIAL        )   **REQUESTED BY THE COURT]**
    WORKER DEFENDANTS JENNIFER           )
19  MORK and WANJIRU GOLLY,              )
    CHARLES COX SR., an individual, CITY )
20  OF SAN DIEGO DEFENDANTS DOES 1       )
    through 50, COUNTY OF SAN DIEGO      )
21  DEFENDANTS DOES 51 through 90, and   )
    DOCTOR DEFENDANTS DOES 91            )
22  through 100, inclusive,              )
                                         )
23            Defendants.                )
    ─────────────────────────────────── )
24

25  ///

26  ///

27  ///

28  ///

                                                  15cv00138-JM (RBB)

# I

# INTRODUCTION

The third time is not a charm for Plaintiff Carlos McManus, whose Third Amended Complaint ("TAC") continues to allege facts that do not state a valid claim against Defendant County of San Diego and County social workers Wanjiru Golly and Jennifer Mork ("Defendants").  Plaintiff alleges his minor son C.M. was removed from his care, but his allegations focus on a private third party and police officers from the City of San Diego.  Plaintiff's allegations against the County social workers (that Golly interviewed his son and that Mork complied with a request by the police to bring his son into protective custody) do not plausibly suggest that Golly or Mork violated Plaintiff's constitutional rights.  Further, the allegations of unlawful County policies and practices are too broad, vague, and conclusory to plausibly suggest liability.  The Court should once again grant Defendants' motion to dismiss, and this time it should be with prejudice because Plaintiff has had sufficient chances to allege facts to state a valid claim.

# II

# FACTS ALLEGED IN TAC

Plaintiff alleges on January 22, 2013, his minor son C.M. was "abducted" from his home by Charles Cox, Sr.  (TAC at ¶ 17.)  Plaintiff called the police, who, suspecting C.M. was the victim of emotional abuse by Plaintiff, brought C.M. to the County of San Diego's Polinsky Children's Center ("Polinsky").  (*Id*. at ¶¶ 17-19.)  There, a doctor physically examined C.M. and found no evidence of abuse or injuries.  (*Id*. ¶ 28.)  Plaintiff was not given notice of the exam, and he did not consent to the exam.  (*Ibid*.)  Social workers with the County's Health and Human Services Agency ("Agency") determined C.M. had not been physically abused and that he was not suffering emotionally, and released him on January 24, 2013.  (*Id*. at ¶¶ 22-23.)

Plaintiff alleges that on April 9, 2013, San Diego police sergeant Antonio Johnson asked County social worker Jennifer Mork to assist him in removing C.M. from his school.  (TAC at ¶¶ 34, 37.)  Mork assisted Sgt. Johnson and other police officers in

1  removing C.M. from his school and bringing him to Polinsky.  (*Ibid.*)  There, C.M. was
2  given a physical exam by a doctor.  (¶ 28.)  No evidence of abuse or injuries was found.
3  (*Ibid.*)  Plaintiff was not given notice of the exam, and he did not consent to the exam.
4  (*Ibid.*)

5      Finally, Plaintiff alleges that on April 9, 2013, County social worker Wanjiru Golly
6  "interrogated" C.M. at Polinsky.  (TAC at ¶ 45.)  On April 11, 2013, Golly went to
7  C.M.'s school and "interrogated" him again.  (*Ibid.*)

8                                        **III**
9            **CAUSES OF ACTION ALLEGED AGAINST COUNTY DEFENDANTS**

10      As to County social workers Mork and Golly, Plaintiff alleges a civil rights claim
11  under 42 U.S.C. § 1983 ("section 1983").  As to the County of San Diego, Plaintiff
12  alleges two separate claims under section 1983 pursuant to *Monell v. New York City*
13  *Dept. of Soc. Servs.*, 436 U.S. 658 (1978): one claim related to policies concerning
14  removal of children, and one claim regarding the Polinsky medical exams.

15                                        **IV**
16      **PROCEDURE: DEFENDANTS' PRIOR TWO MOTIONS TO DISMISS**
                         **HAVE BEEN GRANTED**
17

18      Plaintiffs' original complaint was filed January 21, 2015 (Doc. 1), and Plaintiff
19  filed a First Amended Complaint ("FAC") on May 19, 2015, alleging violations under
20  section 1983 against Golly and Mork, and unlawful policies and procedures against the
21  County.  Defendants County and Golly brought a motion to dismiss the allegations
22  against them in the FAC.  The Court granted the motion and gave Plaintiff leave to
23  amend, but advised Plaintiff that failure to state a claim in a Second Amended Complaint
24  ("SAC") may result in the dismissal of Plaintiff's claims against the County defendants
25  with prejudice. (See **Order Granting Motion to Dismiss; Granting Leave to Amend**
26  (Doc. 27), at page 6, lines 8-11.)
27      Plaintiff's SAC alleged that Golly and Mork had unlawfully interviewed Plaintiff's
28  minor son, that Mork had unlawfully cooperated with the police in performing a

1  "courtesy transport" of Plaintiff's son, and that the County had unlawful policies.  Again,

2  Defendants moved to dismiss, and again the Court granted the motion, allowing Plaintiff

3  another chance to amend his complaint.  Plaintiff filed his TAC.

4  V

5  **MORK'S ACTIONS DID NOT VIOLATE PLAINTIFF'S RIGHTS BECAUSE**
   **SHE DID NOT REMOVE C.M. FROM PLAINTIFF'S CARE AND MERELY**
6  **PROVIDED A COURTESY TRANSPORT**

7        The allegations against social worker Jennifer Mork should be dismissed because

8  her alleged actions did not violate Plaintiff's rights.  Plaintiff alleges that a police

9  sergeant, Antonio Johnson, contacted Mork and asked her to assist him in removing C.M.

10  from his school, and that she helped remove him from school and bring him to Polinsky.

11  (TAC at ¶¶ 34, 37.)  Thus, C.M. was not in Plaintiff's care when he was removed.  When

12  a social worker has reasonable cause to believe a minor may be in imminent danger of

13  serious bodily injury, the social worker may lawfully remove the child from a parent's

14  care without a warrant or court order.  *See Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th

15  Cir. 2000).

16        As the Court pointed out in its prior ruling, C.M. was not removed from Plaintiff's

17  care.  (See **Order Granting Defendant's Motion to Dismiss; Granting Leave to**

18  **Amend** (Doc. 48) at page 9, lines 7-8.)  In addition, Mork had information that the police

19  had been investigating whether C.M. was the victim of child abuse at the hands of

20  Plaintiff, and the police had told Mork they were arresting Plaintiff for child abuse.  (See

21  SAC at ¶ 54.)  Under those circumstances, it was reasonable for Mork to assist the police

22  in bringing C.M. into protective custody, and Plaintiff's constitutional rights were not

23  violated.

24        In addition, Mork is entitled to qualified immunity for her actions in assisting the

25  police.  Public employees are protected by qualified immunity unless they violate a

26  statutory or constitutional right that was clearly established at the time of their conduct,

27  which means that the "contours" of the right must be sufficiently clear that a "reasonable

28  official would understand that what he is doing violates that right."  *Anderson v.*

1   *Creighton*, 483 U.S. 635, 640 (1987).  In other words, "existing precedent must have

2   placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 131

3   S.Ct. 2074, 2083 (2011).  This doctrine "gives government officials breathing room to

4   make reasonable but mistaken judgments," and it "protects 'all but the plainly

5   incompetent or those who knowingly violate the law.' "  *Id*. at 2085, quoting *Malley v.*

6   *Briggs*, 475 U.S. 335, 341 (1986).  Even if there were no exigent circumstances, Mork is

7   protected by qualified immunity for all reasonable decisions, including those that involve

8   mistakes of fact or law.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

9         Here, Plaintiff has not identified any clear precedent holding that all social workers

10   in Mork's position would know it was unlawful to take the action she took.  No case

11   holds that a social worker violates a parent's Fourteenth Amendment rights when the

12   worker assists law enforcement in bringing a child into protective custody when that

13   child's parent is being arrested for abuse of that child.

14         Further, Plaintiff does not allege Mork was a "rogue" worker who made a rash

15   decision on her own.  Instead, Plaintiff concedes that Mork acted only at the request of

16   the law enforcement officers, and only after consulting and receiving approval from her

17   supervisor.  (TAC at ¶ 36.)  In addition, Mork did not even make the decision to remove

18   Plaintiff's son from school; she was merely following the request of law enforcement

19   officers.  (*Id*. at ¶ 34.)

20         For all these reasons, Defendant Mork is entitled to qualified immunity from

21   liability for Plaintiff's section 1983 claim.

22                                              **VI**

23   **INTERVIEWING PLAINTIFF'S SON DID NOT VIOLATE**
     **PLAINTIFF'S CLEARLY ESTABLISHED RIGHTS**

24

25         Just as in the prior versions of the complaint, Plaintiff's allegations in the TAC

26   concerning the interviews of his son do not implicate Plaintiff's constitutional rights.

27   Plaintiff alleges that County social worker Wanjiru Golly interviewed C.M. on April 9

28   and 11, 2013.  (TAC at ¶ 45.)  (Plaintiff uses the argumentative word "interrogated" to

describe these interviews, but "interrogated" is not a fact; it is a conclusion.  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion.  *In Re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).)

No binding authority holds that a social worker needs a warrant or parental consent before interviewing a minor during a child abuse investigation.  In fact, social workers investigating abuse allegations are required by California Department of Social Services Regulations to have in-person contact with all children alleged to have been abused. (Cal. Code of Regulations Title 31-125.2.)  And California Penal Code section 11174.3(a) explicitly authorizes a government agency employee investigating suspected child abuse or neglect to interview the suspected victim at their school.[1]

Further, even if the alleged interviews of C.M. violated Plaintiff's constitutional rights, the workers are entitled to qualified immunity because no clearly established law prohibited their conduct, and a reasonable social worker in her position would not have known that conduct to be unlawful.  (*See Saucier v. Katz*, 533 U.S. 194, 202 (2001), holding that the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")

For all these reasons, the Court should grant Golly's motion to dismiss the allegations against her in the TAC.

## VII

### THE *MONELL* CLAIMS AGAINST THE COUNTY SHOULD BE DISMISSED BECAUSE NO UNLAWFUL POLICIES CAUSED A CONSTITUTIONAL VIOLATION

The TAC alleges that the County has unlawful policies and practices (¶¶ 52-59, 64-70), but these causes of action should be dismissed because the facts alleged in the TAC

---

[1] In 2009, the Ninth Circuit held in *Greene v. Camreta*, 588 F.3d 1011, 1015 (9th Cir. 2009), that a social worker needed a warrant, court order, exigent circumstances, or parental consent before interviewing a minor child with a sheriff's deputy at school, but the U.S. Supreme Court vacated the Ninth Circuit's ruling, thus stripping the Ninth Circuit's decision of its binding effect.  *Camreta v. Greene*, 131 S.Ct. 2020, 2035 (2011). On remand, the Ninth Circuit vacated the relevant portion of its opinion on this Fourth Amendment issue.  *Greene v. Camreta*, 661 F.3d 1201, 1201-02 (9th Cir. 2011).

do not plausibly suggest any constitutional right of Plaintiff was violated.  Although local governments may be sued under section 1983 (*Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978)), they "are responsible only for their *own* illegal acts" and cannot be held vicariously liable under for their employees' actions.  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (emphasis in original); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009).  It is only when "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.  Local governments can be liable under section 1983 only when "action pursuant to official municipal policy" caused the violation.  *Id.* at 691.

To prevail on his claim that the County had unlawful policies, customs, or practices, Plaintiff must show (1) he possessed a constitutional right of which he was deprived, (2) the County had a policy, (3) the policy amounts to deliberate indifference to his constitutional right, and (4) the policy is the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." *Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006).

Here, because Mork and Golly's acts did not violate Plaintiff's constitutional rights, Plaintiff cannot meet the first element of municipal liability, and thus he cannot move forward on his *Monell* claim of unlawful policies.

Further, even if the TAC's facts plausibly alleged that Mork or Golly's acts violated Plaintiff's rights, the allegations concerning the County's policies and procedures are far too vague and general to state a valid claim.  Instead of alleging specific facts that plausibly (not conclusorily or speculatively) suggest Plaintiff's rights were violated pursuant to County policies and practices, the TAC alleges an overly broad and general laundry list of customs, including removing children from their parents' care without consent, court order, or exigent circumstances (TAC ¶ 52(a)); removing children

1  without performing reasonable investigations (¶ 52(b)); removing children based on a

2  "hope" that further investigation would justify the seizure (¶ 52(c)); and assisting the

3  police in removal of children without question (¶ 52(d)).

4          These allegations fail to state a valid claim because they are not specific to this

5  case and are far too broad, vague, and conclusory.  Merely parroting the requirements of

6  *Monell* liability is insufficient to overcome a motion to dismiss.  (See *Ashcroft v. Iqbal*,

7  556 U.S. 662, 678 (2009), requiring more than just "[t]hreadbare recitals of the elements

8  of a cause of action, supported by mere conclusory statements"; and *Bell Atl. Corp. v.*

9  *Twombly*, 550 U.S. 544, 555 (2007), holding a "formulaic recitation of the elements of a

10 cause of action" is insufficient.)  Such conclusory allegations that lack factual content

11 from which one could plausibly infer *Monell* liability cannot survive a motion to dismiss.

12 See *Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1195-96 (E.D. Cal. 2011) ["In

13 his *Monell* claim, plaintiff merely recites the general standards giving rise to municipal

14 liability under § 1983"]; *Haley v. Gipson,* No. CV 11–787, 2011 WL 838919, at *2

15 (C.D.Cal. Feb. 28, 2011); *Telles v. City of Waterford,* No. 1:10–cv–00982 AWI SKO,

16 2010 WL 5314360, at *4 (E.D.Cal. Dec. 20, 2010); *Young v. City of Visalia,* 687

17 F.Supp.2d 1141, 1149–50 (E.D.Cal. 2009).

18         Plaintiff also alleges his son was given two medical examinations at Polinsky

19 without Plaintiff's knowledge or consent (TAC ¶ 28).  However, there are insufficient

20 facts alleged to suggest that medically examining a child suspected of being physically

21 abused by his father would violate his father's rights.

22         First, at the time of the exams, C.M. was 14 or 15 years old (he was born in 1998;

23 See First Amended Complaint (Doc. 9) at ¶ 4), so C.M. could legally consent to the

24 exams himself.  (See California Family Code sections 6926, 6927, and 6929, allowing a

25 minor of 12 years old to consent to medical care and treatment.)  There are no allegations

26 that C.M. did not consent to the exams.

27         Second, no County employee is alleged to have conducted the exams.  Third, the

28 County has an obligation to provide medical care to children in its care who are alleged to

be victims of abuse.  The state has an "urgent interest in the welfare of the child" (*Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)), and "[t]he interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children."  *Woodrum v. Woodward County*, 866 F.2d 1121, 1125 (9th Cir. 1989).  The government has a "traditional and transcendent" interest in "acting as *parens patriae"* (the legal protector of citizens) in order to protect children.  *J.B. v. Washington Cnty.*, 127 F.3d 919, 925, 927 (10th Cir. 1997).  The government's compelling interest in the protection of minor children limits the family's liberty interest in familial relations, "particularly in circumstances where the protection is considered necessary as against the parents themselves."  *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1371 (8th Cir. 1996) (internal cite omitted).

As to children admitted to Polinsky, the County has a duty to conduct medical exams to ensure they receive adequate medical care.  Children removed from their parents and placed in the government's care have a constitutional right to adequate medical care.  *Henry v. Willden*, 678 F.3d 991, 999 (9th Cir. 2012); *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).  This means that officials must take steps to prevent children in government custody from "deteriorating physically or psychologically."  *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990).  The government has an obligation to provide adequate medical care to children in foster care.  *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846-47 (9th Cir. 2010).  There is no way the County could comply with its duty to provide medical care without examining the child to find out whether the child needs any care or treatment, and what his or her medical condition is.

Further, Plaintiff could never prove the County's policy of conducting medical exams of children at Polinsky amounts to deliberate indifference to Plaintiff's constitutional right.  (See *Anderson v. Warner*, 451 F.3d at 1070, requiring Plaintiff to show deliberate indifference).  Deliberate indifference is a stringent standard of fault, requiring proof that the County "disregarded a known or obvious consequence" of its action.  *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

Deliberate indifference to a person's constitutional rights occurs when the need for more or different action "is so obvious, and the inadequacy [of the current procedure is] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need."  *Lee v. City of Los Angeles*, 250 F.3d 668, 681-82 (9th Cir. 2001) (internal quotes and cites omitted).

Here, Plaintiff could never show deliberate indifference for several reasons.  First, district courts in two California cases have held that when a child is removed from his or her parents' care, the state may order medical care for the child without parental consent. *Sangraal v. City & County of San Francisco,* 2013 U.S. Dist. LEXIS 87664 * 41-42 (N.D. Cal. 2013), citing *Johnson v. Yolo Cnty. Dep't of Human Servs*., 2005 U.S. Dist. LEXIS 28401 (E.D. Cal. 2005) (report and recommendation adopted, 2006 U.S. Dist. LEXIS 99386 (E.D. Cal. 2006)).

Second, the San Diego Juvenile Court explicitly authorized the County's Health and Human Services Agency ("Agency") to have a licensed medical practitioner perform a physical examination on children in the custody of the Agency.  (See Order Authorizing Health Assessments And Immunizations Prior To Detention Hearing And Release Of Information Concerning Health Care Provided Pursuant To This Order, attached as Exhibit A.  Defendant requests the Court take judicial notice of this Court Order pursuant to Rule 201 of the Federal Rules of Evidence, which allows judicial notice of facts that can be accurately and readily determined from trustworthy sources.  See *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).)

Further, a state statute explicitly authorizes the exams.  (See Welfare and Institutions Code § 324.5, authorizing a medical examination of a child taken into protective custody when a physician with child abuse training deems it appropriate.)

When a public entity has a duty to provide adequate medical care for children in its care, and is acting pursuant to a Juvenile Court order and a state statute, the public entity can hardly be said to be deliberately indifferent.

///

# VIII

## CONCLUSION

Plaintiff's TAC does not correct the failings of the prior complaints, and Defendants' motion should thus be granted with prejudice.  The allegations against social workers Mork and Golly fail to plausibly suggest they violated Plaintiff's rights, because no binding law prohibits interviewing children during child abuse investigations, and bringing Plaintiff's son into protective custody at the police's request was reasonable.  Further, the workers are entitled to qualified immunity from liability because their actions did not violate any clearly established rights.  Finally, because no constitutional violations can be shown, and because the allegations about policies and practices are too vague, general, and conclusory, no *Monell* liability can be shown.  For all these reasons, Defendants respectfully request the Court grant the motion with prejudice.

DATED:  November 9, 2015        THOMAS E. MONTGOMERY, County Counsel

By s/ *David L. Brodie*
   DAVID L. BRODIE, Senior Deputy
Attorneys for Defendants County of San Diego,
Wanjiru Golly and Jennifer Mork
E-Mail: david.brodie@sdcounty.ca.gov