# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS McMANUS SR., | CASE NO. 15cv0138 JM(RBB) |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS CLAIMS THREE, FOUR, AND FIVE |
| v. | |
| COUNTY OF SAN DIEGO; CITY OF SAN DIEGO; POLICE OFFICERS ERNESTO LUNA; MARI KONG; SGT. THOMAS SULLIVAN; ANTONIO JOHNSON; DETECTIVE DAN BUROW; LT. A. SMITH; SGT. WILLS; SOCIAL WORKER DEFENDANTS JENNIFER MORK; WANJIRU GOLLY; and CHARLES COX SR., | |
| Defendants. | |

Defendants Wanjiru Golly ("Golly"), Jennifer Mork ("Mork") and County of San Diego ("County") move to dismiss the claims asserted against them in the Third Amended Complaint ("TAC") for failure to state a claim. Plaintiff opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the motion appropriate for resolution without oral argument. For the reasons set forth below, the court grants the motion to dismiss Claims Three, Four, and Five. Defendants Golly and Mork are dismissed as parties to this action.

## BACKGROUND

The TAC, filed on October 26, 2015, alleges eleven claims for relief: four claims

for violation of 42 U.S.C. §1983 against the County and City employees; four Monell claims against County and City, and three claims against Defendant Charles Cox Sr. ("Cox") for child abduction, intentional infliction of emotional distress, and negligence. On September 4, 2015, the court stayed this action indefinitely as to Defendant Cox, an active duty serviceman, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq.

Plaintiff alleges that his 14 year-old minor son, C. M., was removed from his care on two separate occasions. On or about January 22, 2013, Defendant Charles Cox, a private party, allegedly removed C. M. from Plaintiff's home against Plaintiff's wishes. (TAC ¶17). Believing that Defendant Cox abducted C. M., Plaintiff reported the incident to Defendant City. In the early morning hours of January 23, 2013, Defendants Luna, Kong, Sullivan, and Willis obtained physical custody of C.M. and transported him to the Polinsky Children's Center ("Polinsky"), based upon suspicions of "emotional abuse." (TAC ¶19). Plaintiff alleges that C.M. had no injuries or marks and did not require medical care. At Polinsky, C.M. was interviewed by social workers and medical professionals who conducted a medical examination of C. M. and found no signs of physical injury or abuse. Plaintiff did not give his permission for the examination of C.M. at Polinsky.

On January 23, 2013, C.M. was released from Polinsky and returned to Plaintiff's custody. (TAC ¶34). Instead of returning home, Plaintiff consented to and allowed C.M. to temporarily reside in a shelter for teens. Id. On February 4, 2013, the referral was closed, and C.M. apparently returned to live with Plaintiff.

Allegations Pertinent to Defendant Mork (Third Cause of Action)

On April 9, 2013, Defendant San Diego Police Officer Johnson contacted Defendant Jennifer Mork, a social worker employed by the San Diego County Health and Human Services Agency ("HHSA"), and requested her assistance to seize C.M. from his school. Mork allegedly discussed C. M.'s seizure with her supervisor. "After hearing all relevant information, including the substantial delay in taking any action as

15cv0138

well as the lack of physical abuse, Mork's supervisor . . . agreed and affirmed the decision to seize C.M. without a court order." (TAC ¶36). Mork, and unidentified Does, then went to C.M.'s school and transported him to Polinsky. (TAC ¶37). Plaintiff alleges that C.M. was seized without exigent circumstances or a warrant. On April 10, 2013, C.M. was returned to Plaintiff's custody.

<u>Allegations Pertinent to Defendant Golly</u> (Fourth Cause of Action)

On April 9, 2013, Plaintiff alleges Defendant Wanjiru Golly, a social worker employed by HHSA, "interrogated" C.M. while at Polinsky. On April 11, 2013, Defendant Golly went to C.M.'s school and interviewed him there. Plaintiff alleges that the interrogation of C.M. occurred "without Plaintiff's knowledge, consent, or notice to the Plaintiff; without a warrant or court order authorizing the interrogation; and, in the absence of any exigency. Golly performed these interrogations at her supervisor's direction." (TAC ¶45).

<u>Allegations Pertinent to the County Monell Claim Caused by HHSA Employees</u> (Fifth Cause of Action)

Plaintiff alleges that County "had a duty to implement and follow customs and/or practices [] which confirm and provide the protections guaranteed under the United States Constitution." (TAC ¶50). In broad brush, Plaintiff alleges that County had the custom or policy of removing children from their parents custody without consent, a court order, or exigent circumstances; failing to perform a reasonable investigation before removing a child from the parent's custody; always assisting the San Diego Police Department ("SDPD") without consent, court order, or exigency; and failing to intervene when a child is wrongfully removed from a parent's custody by the SDPD. (TAC ¶52). Plaintiff also alleges that County failed to adequately train its social workers. (TAC ¶¶59-61).

<u>Procedural History</u>

On July 10, 2015, the court granted the motion to dismiss the First Amended Complaint brought by Defendants County, Wanjiru Golly, and Jennifer Mork. On

1  October 5, 2015, the court granted these Defendants' motion to dismiss the Second
2  Amended Complaint for failure to state a claim.

## DISCUSSION

**Legal Standards**

<u>General Pleading Requirements</u>

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. <u>United States v. Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. <u>Levine v. Diamanthuset, Inc.</u>, 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. <u>Hal Roach Studios, Inc. v. Richard Feiner and Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. <u>Concha v. London</u>, 62 F.3d 1493, 1500 (9th Cir. 1995), <u>cert. dismissed</u>, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. <u>Holden v.</u>

1 Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of
2 law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In
3 Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

Pleading Civil Rights Claims

Prior to Iqbal and Twombly, "a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir.2007). In addressing the impact of Iqbal and Twombly on the pleading standards for civil rights cases, the Ninth Circuit recently stated:

> we can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202 (9th Cir.2011)).

**Qualified Immunity**

Defendants Mork and Golly persuasively argue that their actions are protected under the qualified immunity doctrine. An action under 42 U.S.C. §1983 has two elements: "(1) the defendants acted under color of law, and (2) their conduct deprived [the plaintiff] of a constitutional right." Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir.1985). A public official is immune from an action under 42 U.S.C. § 1983 "[u]nless the plaintiff's allegations state a claim of violation of clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (qualified immunity applies if official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). In order to determine whether the defendants are immune from

an action, the court must answer two questions: (1) whether Plaintiff alleges the violation of a constitutional right, and (2) whether that right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (leaving the courts to decide, in their sound discretion, which question to answer first). A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. [] When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Taylor v. Barkes, 135 S.Ct. 2042, 2044 (2015) (citations and internal quotation marks omitted). The contours of the right established must be "undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

Here, based upon the TAC's allegations, Plaintiff fails to establish that the alleged actions of Defendants Mork and Golly violated any due process constitutional rights that were clearly established. In essence, Defendant Mork is alleged to have transported C.M. to Polinsky on April 9, 2013, and Defendant Golly to have interviewed C.M. while at school. These allegations are insufficient to avoid application of qualified immunity principles. Plaintiff relies on several inapposite authorities arising under the Fourth Amendment for support. In Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000), government officials received a third-hand report from an institutionalized suicidal psychiatric patient regarding purported satanic rituals and child abuse by her sister and brother-in-law. Based upon these unverified (and false) reports of child abuse, police officers and various County employees went to the Wallis family home at midnight. At 1:00 a.m. the agents removed the children from the home

without consent, a court order, or exigent circumstances. It was in this context that the Ninth Circuit held that, under the Fourth Amendment,

> [o]fficials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

Id. at 1294; Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999) (coerced entry into a home by government agents to investigate suspected child abuse, interrogate a child, and strip search a child without a search warrant, parental consent, or exigent circumstances violates the Fourth Amendment); Stoot v. City of Everett, 582 F.3d 910, 922 (9th Cir. 2009) (qualified immunity applies to bar a claim that an interview by a police officer of a 14-year-old criminal suspect of sexual abuse while at school violates the Fourteenth Amendment).[1]

In his opposition papers, Plaintiff cites no Supreme Court or other analogous binding authority to support his argument that the alleged conduct at issue violated any clearly established constitutional right at the time of the alleged events. The Fourteenth Amendment generally protects the integrity of the family unit in the custody, care and nurturing of one's children. Stanley v. Illinois, 405 U.S. 645, 651 (1972). The court notes that the parties do not cite authorities discussing the precise contours of the Fourteenth Amendment right of familial association with respect to government agents removing a 14-year-old from school to interview him concerning whether he was a potential victim of child abuse, or transporting the teenager to child protective services.

---

[1] The court notes that "it is necessary for both government officials and the courts to be sensitive to the fact that society's interest in the protection of children is ... multifaceted, composed not only with concerns about the safety and welfare of children from the community's point of view, but also with the child's psychological well-being, autonomy, and relationship to the family or caretaker setting." Franz v. Lytle, 997 F.2d 784, 792–93 (10th Cir. 1993) (citations omitted). Conversely, the court is also sensitive to the fact that the "history and culture of Western civilization reflect a strong tradition of parental concern for the nurturing and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Wisconsin v. Yoder, 406 U.S. 205, 232 (1972).

Of course, an unconstitutional entry into one's home constitutes "paradigmatic" action under the Fourth Amendment, Michigan v. Tyler, 436 U.S. 499, 504 (1978), whether to obtain evidence or to remove a child from suspect circumstances. Where such an unconstitutional invasion is associated with the unwarranted removal of a child, the parent may argue, with great force, that his Fourteenth Amendment rights of familial association are clearly established. Where, however, the child's removal is from school rather than the home, the parent's right of familial association would appear to be leagues short of being clearly established.

Plaintiff also cites Greene v. Camretta, 588 F.3d 1011 (9th Cir. 2009), rev'd, Camretta v. Greene, 131 S.Ct. 2020 (2011), to support his argument. In Greene, a deputy sheriff and case worker seized a seven-year-old child and interrogated him at school in the absence of a warrant, court order, consent or exigent circumstances. In Greene, the Ninth Circuit concluded that, "applying the traditional Fourth Amendment requirements, the decision to seize and interrogate S.G. in the absence of a warrant, a court order, exigent circumstances, or parental consent was unconstitutional." Id. at 1030. Notably, unlike the present case, the child brought a Fourth Amendment claim, and not a Fourteenth Amendment claim. The Supreme Court ultimately dismissed the action as moot and specifically vacated "the Ninth Circuit's ruling addressing the merits of the Fourth Amendment issue" and the qualified immunity analysis. 131 S.Ct. at 2035-36. Moreover, the Supreme Court expressly noted that the point of the vacatur was to prevent Greene from spawning any legal consequences. Accordingly, this authority does not lend support to Plaintiff's legal theory that parental rights are violated whenever a 14-year-old minor is removed from school and interviewed in the course of a child abuse investigation without the parent's consent, a court order, or exigent circumstances. See Ashcroft, 563 U.S. 731 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

The court rejects Plaintiff's contention that Defendants Mork and Golly violated clearly established federal constitutional law when they assisted the police in a child abuse investigation by removing 14-year-old C.M. from his school and transporting him to Polinsky where he was interviewed. Authorities establishing that infants cannot be removed from the parents home and care without a warrant or exigent circumstances do not provide sufficient notice to inform social workers that it is unconstitutional to remove a 14-year-old from his school and to interview him during the course of a child abuse investigation.

In sum, the court concludes that qualified immunity applies to Defendants Golly and Mork and dismisses them from this action.

**The Monell Claim**

County claims that Plaintiff fails to state a claim for municipal liability in the Fifth Claim based upon the conduct of Defendants Mork and Golly. Under 42 U.S.C. § 1983, "[e]very person" who acts under color of state law may be sued. The term "person" has been interpreted broadly, even to include cities, counties, and other local government entities. See Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978). Municipalities, their agencies and their supervisory personnel cannot be held liable under Section 1983 on any theory of respondeat superior or vicarious liability. They can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. See Monell, 436 U.S. at 691-693; Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001); Shaw v. California Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986).

Locating a "policy" ensures that a municipality "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694). Similarly, an act performed pursuant to a

1  "custom" which has not been "formally approved by an appropriate decisionmaker may
2  fairly subject a municipality to liability on the theory that the relevant practice is so
3  widespread as to have the force of law." Id. (citing Monell, 436 U.S. at 690-691); see
4  also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (holding that municipal
5  liability under § 1983 may be shown if Plaintiff proves that employee committed
6  alleged constitutional violation pursuant to a "longstanding practice or custom which
7  constitutes the 'standard operating procedure' of the local government entity.").

"To bring a § 1983 claim against a local government entity, a plaintiff must plead that a 'municipality's policy or custom caused a violation of the plaintiff's constitutional rights." Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles, 648 F.3d 986, 992-93 (9th Cir. 2011). A plaintiff must show (1) he possessed a constitutional right of which he was deprived, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the "moving force behind the constitutional violation." Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1190 (9th Cir. 2006).

Here, the TAC's allegations in the fifth claim for relief, are still too generalized and conclusory to state a claim. As noted earlier, the allegations largely parrot the requirements for municipal liability. Plaintiff alleges that the County had the following customs relating to the removal of a child from its parent's custody:

> 52. At the time of the underlying events, the County's customs relating to the removal of a child from its parent's custody included, but were not limited to:
> a. The custom of removing children from their parent's custody without consent, court order, and/or exigent circumstances (i.e., imminent danger of serious bodily injury).
> b. The custom of removing children from their parent's custody without first performing a reasonable investigation.

   c. The custom of seizing children from their parent's custody without consent, court order, and/or exigency, based on a hope that further investigation could turn up facts suggesting the seizure was justified.
   d. The custom to always assist – without investigation and/or hesitation – the SDPD in the removal of a child from their parent's custody without consent, court order, and/or exigency.
   e. The custom to not intercede when the SDPD is removing a child from their parent's custody without consent, court order, and/or exigency.

(TAC ¶52).

  As previously noted, a plaintiff must plausibly set forth allegations giving rise to an inference that County maintained the alleged policies, practices, and customs. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 56 U.S. at 662. While the TAC's allegations would likely have survived Rule 8 scrutiny prior to Iqbal, see Whitaker, 486 F.3d at 581, the court notes the heavy pleading burden placed on a plaintiff where the sought-after information is uniquely within the possession of defendants like County. Notwithstanding, merely reciting conclusory allegations (County failed to conduct a "reasonable investigation," customarily seized children without a court order, consent or exigent circumstances, and failed to conduct a reasonable investigation), fail to state a Monell claim.

  In sum, the court grants the motions to dismiss Claims Three, Four and Five. The Clerk of Court shall dismiss Defendants Golly and Mork as parties to this action.

**IT IS SO ORDERED.**

DATED: June 30, 2016

                _____
                Hon. Jeffrey T. Miller
                United States District Judge

cc:  All parties
    Magistrate Judge Brooks