Shawn A. McMillan, Esq. – SBN: 208529
attyshawn@netscape.net
Stephen D. Daner, Esq. – SBN: 259689
steve.mcmillanlaw@gmail.com
Adrian M. Paris, Esq. – SBN: 301355
adrian.mcmillanlaw@gmail.com
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, CA 92122
Telephone: (858) 646-0069
Facsimile: (858) 746-5283

Attorneys for Plaintiff, Carlos McManus, Sr.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS McMANUS SR., an individual, | Case No: 15-cv-00138 JM RBB |
| Plaintiff, | **JOINT WRITTEN STATUS REPORT** |
| vs. | Judge: Hon. Jeffrey T. Miller |
| COUNTY OF SAN DIEGO, a public entity; CITY OF SAN DIEGO, a public entity; POLICE OFFICERS ERNESTO LUNA (ID# 3779), MARI KONG (ID# 5850), SGT. THOMAS SULLIVAN (ID# 4676),SGT. ANTONIO JOHNSON (ID# 3816) Detective DAN BUROW (ID# 5268) and Lt. A. SMITH (ID# 3472); SGT. WILLS (ID# 4558); SOCIAL WORKER DEFENDANTS JENNIFER MORK and WANJIRU GOLLY, CHARLES COX SR., an individual, CITY OF SAN DIEGO DEFENDANTS DOES 1 through 50, COUNTY OF SAN DIEGO DEFENDANTS DOES 51 through 90, and DOCTOR DEFENDANTS DOES 91 through 100, inclusive, | Magistrate: Hon. Andrew G. Schopler |
| | Case Filed: January 21, 2015 |
| | Trial Date: TBD (Docket. No. 79) |
| Defendants. | |

/ / /

**TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

An order setting a status hearing and requiring a joint written status report was issued on October 13, 2016. (*See* Docket No. 72.) Pursuant to this order, the parties jointly submit the following information:

**1.    The Names of All Parties and Counsel of Record**

    a.    Carlos McManus, Sr. (Plaintiff), counsel of record:

        i.    The Law Offices of Shawn A. McMillan, APC: Shawn A. McMillan, Esq., Stephen D. Daner, Esq., and Adrian M. Paris, Esq., 4955 Via Lapiz, San Diego, CA 92122, Phone: (858) 646-0069, Fax: (858) 746-5283

    b.    County of San Diego (Defendant), counsel of record:

        i.    Office of County Counsel: Tom Montgomery, Esq., and David Brodie, Esq., 1600 Pacific Highway, Room 355, San Diego, CA 92101-2469, Phone: (619) 531-4874, Fax: (619) 531-6005

    c.    City of San Diego (Defendant), counsel of record:

        i.    Office of the City Attorney: Jan I. Goldsmith, Esq., and Hannah Girer-Rosenkrantz, Esq., 1200 Third Avenue, Suite 1100, San Diego, CA 92101-4100, Phone: (619) 533-5800, Fax: (619) 533-5856

    d.    Police Officers Ernesto Luna, Mari Kong, Sgt. Thomas Sullivan, Sgt. Antonio Johnson, Detective Dan Burow, Lt. A. Smith, and Sgt. Wills. (Defendants), counsel of record:

        i.    Office of the City Attorney: Jan I. Goldsmith, Esq., and Hannah Girer-Rosenkrantz, Esq., 1200 Third Avenue, Suite 1100, San Diego, CA 92101-4100, Phone: (619) 533-5800, Fax: (619) 533-5856

1        e.      Charles Cox, Sr. (Defendant) (Case is STAYED as to Defendant Cox,

2             Docket No. 42), counsel of record:

3               i.     Robert C. Schlein & Associates: Robert C. Schlein, Esq.,

4                   750 B Street Suite 3210, San Diego, California 92101,

5                   Telephone: (619) 235-9026, Fax: (619) 22-1859

6  **2.    Nature of Case**

7      **A.    Plaintiffs' Factual Statement**

8         **i.    Plaintiff's Background and Family**

9      Plaintiff Carlos McManus and his son, C.M., live in San Diego. Plaintiff

10 had full custody of C.M.

11        **ii.    San Diego Police Seize C.M. Without a Court Order or**

12             **Exigency**

13     On January 22, 2013, Defendant Charles Cox abducted C.M. Plaintiff called

14 the police to assist him in recovering C.M. The Police knew that Plaintiff was

15 entitled to custody of C.M., and that he wanted C.M. promptly returned to him.

16     The Police did not return C.M. to Plaintiff. Instead, they seized C.M. from

17 Plaintiff's custody based solely on suspicions of "emotional abuse." There was no

18 emergency to justify C.M.'s seizure, and the police did not have a court order

19 authorizing it. C.M. had no injuries, marks, or bruises and did not need immediate

20 medical care. C.M. did not fear for his safety. Once seized, the Police transported

21 C.M. to the Polinsky Children's Center ("Polinsky").

22        **iii.    County Doctors Perform an Unwarranted and Non-**

23             **consensual Forensic Medical Examination on C.M.**

24     At Polinsky, County agents performed a forensic examination of C.M.,

25 without Plaintiff's knowledge or consent, and without a warrant or other court

26 order authorizing such an examination.

27     At that time, it was the policy and practice of San Diego County to perform

28 forensic medical examinations of every child that was received at Polinsky

1    regardless of the nature of the allegations. C.M.'s examination revealed no

2    evidence of physical abuse.

3         In two similar recent case against San Diego County, these sorts of forensic

4    medical examinations – and the County's policy and practice of conducting them,

5    have been found to be unconstitutional.[1]

6              **iv.    County Health and Human Services Agency ("HHSA")**

7                       **Finds No Indicia of Abuse, and Declines to File a Juvenile**

8                       **Dependency Case**

9         On January 24, 2013, HHSA determined there was no evidence that C.M.

10   suffered any type of abuse. HHSA declined to file a dependency case. Social

11   worker Nancy Hess told police that C.M. was lying to them.

12             **v.     C.M. is Returned Home and to Plaintiff's Custody**

13        On January 24, 2013, HHSA released C.M. and returned him to Plaintiff's

14   custody. On February 4, 2013, HHSA closed the case.

15             **vi.    Defendants Johnson, Burow, and Mork Seizes C.M. From**

16                      **Plaintiff's Custody**

17        On April 9, 2013, Defendant Johnson contact Mork and requested Mork's

18   assistance to seize C.M. from Plaintiff's custody – again. Defendants Johnson,

19   Burow, and Mork together discussed the proposed seizure, and all agreed to seize

20   C.M. from Plaintiff's custody. Johnson, Burow, and Mork assisted each other in

21   seizing C.M. But, they failed to seek or obtain a court order permitting the seizure.

22

23

24

---

25        [1]The identical exam was found to be unconstitutional in *Swartwood v. County
of San Diego,* 2014 U.S. Dist. LEXIS 182020, *56-81 (S.D. Cal. 2014). In June of
26   2016, U.S. District Judge Gonzalo Curiel found that County's policy of excluding
parents from its Polinsky forensic medical exams violates the parents' rights as a
27   matter of law. *Mann v. Cnty. of San Diego*, 2016 U.S. Dist. LEXIS 80035 (S.D. Cal.
2016).
28

Defendant Burow lied to social worker Mork, telling her that Plaintiff was going to be charged with two counts of misdemeanor child abuse. Plaintiff was never taken into custody on any charges.

Before seizing C.M., Mork also discussed the seizure with her supervisor, who agreed with and approved the decision to seize C.M. At the time, C.M. still had no visible injuries or bruises and did not need any medical attention. Defendants Johnson, Burrow, and Mork seized C.M. from Plaintiff's custody without a court order while C.M. was in school. There were no exigent circumstances present, and Plaintiff did not know of or consent to the seizure.

At no point in time was Plaintiff ever arrested or otherwise taken into custody. Mork never spoke or attempted to speak with Plaintiff before she seized C.M. On April 10, 2013, C.M. was again returned to Plaintiff's custody. Once again, HHSA declined to file a dependency case against Plaintiff. On January 24, 2013, HHSA released C.M. and returned him to Plaintiff's custody. On February 4, 2013, HHSA closed the case.

### vii.    C.M. is Subjected to a Second Forensic Medical Examination by HHSA

On April 9, 2013, C.M. was subjected to a forensic medical examination at Polinsky without parental consent or judicial authorization.

### viii.    Golly Interrogates C.M. Outside of Plaintiff's Presence and Without a Court Order

Golly interrogated C.M. at Polinsky on April 9, 2013. (TAC, ¶45.) She interrogated him again on April 11, 2013. These interrogations were conducted without Plaintiff's knowledge or consent, without a court order authorizing them, and in the absence of any exigency. Golly performed these interrogations at the direction of her supervisor. Plaintiff was never given notice of these interrogations, and certainly did not consent to them.

/ / /

1    **ix.    *Monell*-Related Claims – County and City of San Diego**

2        Plaintiff's Sixth and Seventh Claims for Relief are against the County of

3    San Diego for its policies of unwarranted and non-consensual medical

4    examinations, and unwarranted, parentless interrogations, respectively. Plaintiff's

5    Eighth Claim for Relief is against the City of San Diego for its policies of

6    unwarranted seizures by its officers.

7        **B.    Defendant County's Factual Statement**

8        The County's Polinsky Children's Center is an emergency shelter that

9    provides protective custody for children who are temporarily removed from the

10   care of their parents and legal guardians. At Polinsky's medical clinic, staffed by

11   nurses and pediatricians, children have medical assessments to check their general

12   health and to ensure it is safe for them and the other children at Polinsky for them

13   to be placed there. At Polinsky, C.M. received a nursing assessment and a physical

14   exam by a pediatrician. The exam was a basic pediatric exam, not a "forensic"

15   exam; those are not conducted at Polinsky.

16       The only other involvement by the County was that a social worker

17   allegedly interviewed C.M. at Polinsky and at his school, and then a different

18   worker transported C.M. from his school to Polinsky at the request of the police,

19   who were concerned for C.M.'s safety due to his father's pending arrest or

20   charges. The Court has granted the social workers' motions to dismiss the causes

21   of action against them based on these allegations.

22       **C.    Defendant City and Officers' Factual Statement**

23       **i.    January 23, 2013 Removal:**

24       Shortly after midnight on January 23, 2013, the San Diego Police

25   Department received two separate calls regarding the removal of C.M. from

26   Plaintiff's custody. While Plaintiff indicated that his son had been kidnapped by a

27   family friend, responding officers also interviewed C.M., and Charles Cox, Sr., the

28

1   adult who had taken custody of C.M. from his father. The responding officers

2   found both C.M. and Charles Cox, Sr. to be truthful and sincere.

3          C.M. indicated that he had been subjected to emotional and physical abuse

4   from Plaintiff over the course of years. He reported that recently his father had

5   thrown a book at him, and had threatened to shoot himself - going so far as to take

6   out his service weapon while voicing this possibility. Moreover, Charles Cox, Sr.

7   had overheard Plaintiff threaten to strip C.M. naked and beat him immediately

8   prior to removing C.M. from the home. Both Charles Cox, Sr. and C.M. informed

9   the officers that Plaintiff had threatened to shoot Charles Cox and his family for

10  removing C.M. from the family home. Plaintiff was also reported to be a heavy

11  drinker. The officers at the scene, Sgt. Wills, Sgt. Sullivan, Officer Kong, Officer

12  Lunesta, were faced with first hand reports from reliable victims that Plaintiff had

13  recently used physical force against his son, threatened to use additional force that

14  evening, and threatened to use deadly force immediately before the police were

15  called. A consensus was reached that due to Plaintiff's reported unhealthy

16  relationship with both alcohol and his son, the violent outburst that triggered this

17  incident, and the allegations that Plaintiff had previously threatened to harm

18  himself, that C.M. needed to be taken into protective custody. C.M. was ultimately

19  taken to Polinsky that night.

20                         **ii.    April 9, 2013 Removal**

21          In light of C.M.'s removal on January 23, 2013 and the allegations which

22  triggered that removal, a child abuse investigation was assigned to Detective Dan

23  Burow. Detective Burrow conducted interviews with neighbors, friends of C.M.,

24  the Cox family, C.M., Plaintiff's ex-fiancé, and Plaintiff's girlfriend Cassandra

25  Scott.  Detective Burrow further reviewed the CSW interview with Cassandra

26  Scott's children, and asked to interview Plaintiff. After a thorough investigation,

27  Detective Burow forwarded a recommendation to the District Attorney's Office

28  that criminal charges be brought against Plaintiff under Penal Code 273a(b)

1   [willful harm or injury to child] and Penal Code 422 [criminal threats].
2   Additionally, he prepared a PowerPoint presentation which he subsequently
3   showed to Lt. Smith, Sgt. Johnson, as well as members of the DA's Office.
4       In early April 2013, the DA decided to issue criminal charges against
5   Plaintiff for two counts of misdemeanor child abuse, but declined to pursue the PC
6   422 charges. It was unclear whether the DA would issue a Notify Warrant or to
7   simply notify Plaintiff of the charges by letter. At the last minute, Detective Burow
8   and Sgt. Johnson learned on April 9, 2013, that the Plaintiff would be informed of
9   his charges that day. Detective Burow felt Plaintiff was an immediate potential
10  threat to his son's safety. Detective Burow noted that Plaintiff was a police officer,
11  had a gun, had made prior threats, he had a drinking history, and there was a
12  history of prior abuse when dealing with his son. Detective Burow believed
13  exigent circumstances existed because Plaintiff was going to learn of the charges
14  at any moment and could remove his son from school property at any time. In light
15  of the risk to C.M.'s safety, Detective Burow requested the cooperation of CSW
16  and had C.M. removed from his school and placed at Polinsky.
17      **D.    Plaintiff's Statement of Legal Issues**
18      Counts 9 through 12 are against Charles Cox Sr. Pursuant to the Court's
19  order, this action is currently stayed as to Defendant Cox. (Docket No. 42.)
20      **i.    42 U.S.C. § 1983 - Violation of Federal Civil Rights:**
21      **Individual Liability**
22      The Fourteenth Amendment guarantees that parents will not be separated
23  from their children without due process of law except in emergencies. *Mabe v. San*
24  *Bernardino County*, 237 F.3d 1101,1107 (9th Cir. 2001). Officials cannot lawfully
25  remove a child absent "information at the time of the seizure that establishes
26  'reasonable cause to believe that the child is in imminent danger of serious bodily
27  injury and that the scope of the intrusion is reasonably necessary to avert that
28  specific injury.'" *Id.* at 1106; *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir.

2000). Reasonable cause must be supported by "specific, articulable evidence," and reasonable avenues of investigation must first be pursued. *Wallis*, *supra*, 202 F.3d at 1138.

Equally fundamental are the closely related legitimate expectations of parents that their familial relationships will not be subjected to unwarranted state intrusion. *Santosky v. Kramer,* 455 U.S. 745, 742 (1982). As a result, the right to familial integrity and association, is sheltered against the state's "unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S.102,106 (1996).

"Imminent" means: "impending; about to happen; immediate; threatening; ready to take place; near at hand;" all to the extent that the event in question will occur at once unless speedy, swift and prompt action is forthcoming." *James v. Superior Court,* 87 Cal.App.3d 985, 991 (1978). In the Ninth Circuit, the definition has been even further refined such that government officials who seize a child without a warrant must have reasonable cause to believe the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant - which could be obtained "within a few hours." *Anderson-Francois v. County of Sonoma*, 415 Fed. Appx. 6, 9 (9th Cir. 2011); *see also Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294-1295 (9th Cir. 2007).

"Probable cause" does not satisfy the conclusion that a child was in imminent danger of serious physical injury sufficient to justify a warrantless removal. *Mabe, supra,* 237 F.3d at 1108, n2. Rather, a child may only be removed from his parents where there is "specific, articulable evidence" that the child is in immediate danger of severe bodily injury, by both parents, at the time of removal. *Wallis, supra,* 202 F.3d at 1138; *Fredenburg v. County of Santa Clara* 407 Fed. Appx. 114, 115 (9th Cir. 2010).

Plaintiff alleges that each of the named individual defendants in this case acted, aided, or abetted in the unlawful separation of minor, C.M.., from his

1  father's care on January 23, 2013, and his subsequent forensic medical
2  examination at Polinsky Children's Center.

3  ### ii.   Municipal Liability

4  To prevail on a claim based on municipal liability, Plaintiffs must prove two
5  elements: (1) fault, i.e. that the municipality's policy or custom is the source of the
6  constitutional violation, and (2) causation. *Monell v. Department of Social*
7  *Services of the City of New York*, 436 U.S. 658, 690 (1978). Plaintiffs may recover
8  from municipalities under *Monell,* if their injury was inflicted pursuant to policy,
9  regulation, custom, or usage. *Chew v. Gates* 27 F.3d 1432, 1444 (9th Cir. 1994).
10  The policy or practice need only cause the constitutional violation; it need not be
11  unconstitutional per se. (*Ibid.*) A policy "causes" an injury where it is "the moving
12  force" behind the constitutional violation. (*Ibid.*)

13  A "custom or usage" can be demonstrated by a pattern of unconstitutional
14  conduct. For example, municipal liability pursuant to §1983 is proper upon a
15  showing of either or any of the following: (1) a pattern of inadequate training,
16  instruction and supervision, (*City of Canton v. Harris*, 489 U.S. 378, 388 (1989));
17  (2) actual knowledge of official policy makers and a failure to correct, address or
18  discipline*, (McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986); and
19  *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).); (3) unconstitutional
20  conduct by a municipal agent which is ratified by an official policymaker through
21  approval of the subordinate's decision and the basis for that decision, (*Gillette v.*
22  *Delmore,* 979 F.2d 1342, 1346-48 (9th Cir. 1992).); (4) sufficiently notorious or
23  conscience-shocking misconduct so that official policymakers know or should
24  know of the risk to people's federal rights, (*Collins v. City of Harker Heights*, 503
25  U.S. 115, 116 (1992).); (5) routine failure of County social workers or City police
26  officers to follow general policy can itself constitute an actionable custom under
27  *Monell* (*Hunter v. County of Sacramento,* 652 F.3d 1225, 1228-1229 (9th Cir.
28  2011).); (6) failure by the municipality to investigate violations of constitutional

1    rights by social workers, and failure to discipline social workers and their

2    supervisors involved in constitutional violations so that violations were not only

3    accepted but were customary (*Ibid*.); or (7) that a constitutional violation was

4    committed pursuant to a longstanding practice or custom which constitutes the

5    "standard operating procedure" of the County. (*Ibid*.)

6         In order to show the civil rights violation was the result of the official policy

7    or custom of the municipality, plaintiffs must show (1) that Defendant's

8    employees intentionally, or with conscious disregard of the rights of Plaintiff,

9    violated Plaintiff's civil rights; (2) that the employee's conduct occurred as a

10   result of the official policy or custom of defendant municipality; (3) that Plaintiff

11   was harmed; and, (4) that the employee's conduct was a substantial factor in

12   causing plaintiff's injury. (*Monell*, *supra*, 436 U.S. at 694.)

13        In order to establish that the civil rights violation was a result of the public

14   entity's failure to adequately train its employees, plaintiff must prove: (1) that the

15   municipality's training program was not adequate to train its officers/employees to

16   properly handle usual and recurring situations; (2) that the municipality was

17   deliberately indifferent to the need to adequately train its officers/employees; (3)

18   that the failure to provide proper training was the cause of the deprivation of

19   plaintiff's constitutional rights; (4) that plaintiff was actually harmed; and (5) the

20   municipality's failure to adequately train its officers/employees was a substantial

21   factor in causing plaintiff's harm. (*City of Canton*, *supra*, 489 U.S. at 388-389.)

22        Finally, a local government may be held liable under §1983 when "the

23   individual who committed the constitutional tort was an official with final policy-

24   making authority" or such an official "ratified a subordinate's unconstitutional

25   decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342,

26   1346-47 (9th Cir. 1992) (internal quotation marks and citations omitted); *see also*

27   *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24, 127 (1988); *Pembaur v. City*

28   *of Cincinnati*, 475 U.S. 469, 480-81 (1986).

1

### E.   Defendant County's Statement of Legal Issues

2   As to the County, the only remaining legal issues are whether the County's

3   alleged policies and practices in interviewing C.M. at his school and at Polinsky,

4   as well as in conducting his medical assessment at Polinsky, caused a violation of

5   Plaintiff's Fourteenth Amendment rights. No Ninth Circuit or Supreme Court

6   precedent has held that interviews of a child at school or at a shelter such as

7   Polinsky could cause a violation of the parents' Fourteenth Amendment rights. As

8   to the Polinsky exams, several district courts have ruled against the County

9   regarding the exams. The County has appealed a recent ruling regarding the exams

10   in *Mann v. County of San Diego*, Case No. 11cv0708-GPC-BGS, and will request

11   the Polinsky issue in this case be stayed until the Ninth Circuit issues an opinion

12   in the *Mann* appeal.

13

### F.   Defendant City and Police Officers' Statement of Legal Issues

14

#### i.   Alleged Interference with Parental Rights

15   Under the Fourteenth Amendment of the United States Constitution,

16   government officials are prohibited from removing children from their parents'

17   custody without a warrant or other judicial preauthorization unless the official

18   possesses information at the time of the seizure that establishes "reasonable cause

19   to believe that the child is in imminent danger of serious bodily injury and that the

20   scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis*

21   *v. Spencer*, 202 F.3d 1126, 1138 (9th Cir.2000) (citing *Mincey v. Arizona*, 437

22   U.S. 385, 393 (1978).

23   These rights are based on the settled principles that "[p]arents and children

24   have a well-elaborated constitutional right to live together without governmental

25   interference." *Wallis*, 202 F.3d at 1136. "The Fourteenth Amendment guarantees

26   that parents will not be separated from their children without due process of law

27   except in emergencies." *Mabe v. San Bernardino County, Dep't of Pub. Soc.*

28   *Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001). For an official to take a child into

protective custody without a warrant, the official must have reasonable cause to believe that harm will occur in the period of time it would take to procure a warrant and remove the child from the home. *See Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294–95 (9th Cir. 2007); *see also Mabe*, 237 F.3d at 1108. Generally, whether reasonable cause to believe exigent circumstances exists in a given situation and the related questions, are all questions of fact to be determined by a jury. *Wallis*, 202 F.3d at 1138. However, in instances where a teenager felt safe but expressed concern about the "risk of additional beatings" should they return home, the Ninth Circuit has approved of removal without a warrant or judicial approval. *Burke v. County of Alamdea*, 589 F.3d 725 (9th Cir. 2009)(holding that a step-father's threat to "beat her ass" and a fear that "parents would view her report as an attempt to shift blame" provided reasonable cause to believe minor was in imminent danger of physical harm).

Moreover, in order to prevail on a Fourteenth Amendment Claim, Plaintiff must demonstrate a deprivation which shocks the conscience. *Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006). "[I]n order to establish a constitutional violation based on substantive due process [Plaintiff] must show both a deprivation of her liberty and conscience shocking behavior by the government." 451 F.3d at 991 (discussing the removal of a child from his mother's physical custody).

C.M.'s removal to Polinsky on both January 23, 2013 and April 9, 2013 was completely warranted, and does not represent conscience shocking behavior.

### ii.    Monell Liability

"A municipality may be liable under § 1983 . . . where the constitutional deprivation was caused by the implementation or execution of 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Muhammad v. San Diego County Sheriff's Department*, No. 07-1430, 2007 WL 3306071 at *4 (S.D. Cal. Nov. 2, 2007) (emphasis added) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1977)). Evidence of a

single, isolated or sporadic incident is an insufficient basis for a Monell claim. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Under Monell, municipal liability for an alleged unconstitutional act of a municipality, its agents or employees, must be based upon the following elements: (1) that Plaintiff possessed, and was deprived of, a right secured by the federal Constitution or statutory law; (2) that the City had a particular, "permanent and well settled practice" or policy which amounted to deliberate indifference to that right; (3) that the practice or policy was the "moving force behind the constitutional deprivation"; (4) that there is a "direct causal link" between the policy or custom and the injury. *See Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). A Monell cause of action can only be premised upon a breach of a constitutional right, not a tort. A municipality cannot be held liable for common law negligence.

Where necessary for the safety of a minor, officers are occasionally forced to take a child from their parent's custody. These instances are rare. In the instant case there is no violation of Plaintiff's Fourteenth Amendment rights, much less a custom, policy or practice which would constitute the moving force behind such a violation.

### iii.    Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). Qualified immunity balances two important interests:  "[T]he need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 230 (2009). Qualified immunity

1  recognizes the potential for substantial social costs by shielding government
2  officials from civil damages unless clearly established law proscribed the actions
3  they took.  *Anderson v. Creighton*, 483 U.S. 635, (1987).  The protection of
4  qualified immunity is needed because claims against government officials can
5  "entail substantial social costs, including the risk that fear of personal monetary
6  liability and harassing litigation will unduly inhibit officials in the discharge of
7  their duties." *Id*. at 638.

8      The Supreme Court has set forth a two-part test for the qualified immunity
9  analysis. "The threshold inquiry a court must undertake in a qualified immunity
10  analysis is whether [the] plaintiff's allegations, if true, establish a constitutional
11  violation." *Hope v. Pelzer*, 536 U.S. 730 (2002) citing *Saucier*, 533 U.S. at 201. If
12  a constitutional right would have been violated under the plaintiff's version of the
13  facts, "the next, sequential step is to ask whether the right was clearly established."
14  *Saucier*, 533 U.S. at 201. Under the more recent Supreme Court decision in
15  *Pearson*, a court may decide the question of qualified immunity by initially
16  determining if the right claimed by plaintiff was clearly established. 555 U.S. at
17  236. In a Section 1983 action it is the plaintiff who bears the burden of (1)
18  establishing that the defendant's actions violated a federal constitutional right; and
19  (2) that the right was clearly established at the time of the conduct at issue. *LSO,*
20  *Ltd. v. Stroh*, 205 F.3d 1146, (9th Cir. 2000). There is a "strong presumption" that
21  state actors have properly discharged their duties and, to overcome that
22  presumption, the plaintiff must present clear evidence to the contrary. *Gardenhire*
23  *v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).

24      In the instant matter, at minimum, the case law was not so clearly
25  established that when the named Officers were faced with a fourteen year old who
26  consistently reported multiple incidents of physical abuse or threats of physical
27  abuse, which were corroborated by other witnesses, the Officers reasonably
28  determined removal did not violate Plaintiff's constitutional rights.

**3.     The Case is Currently on Schedule to Meet the Deadlines Established by the Case Management Order and the Court's Recent Order Extending all Deadlines**

The parties are currently in settlement discussions. Should the case continue, the large number of Defendants and the complexity of the claims will require numerous depositions and sets of written discovery. However, the Court very recently granted an extension of all deadlines. (*See* Docket. No. 79.) As a result, Plaintiff currently anticipates that the case is on schedule to meet the deadlines established by the Court.

**4.     Status of Discovery**

Written discovery has recently commenced and the parties have exchanged their first sets of discovery requests. Plaintiff has served one set of requests for admissions to City and County, one set of interrogatories to City and County, two sets of requests for production to City, and one set of requests for production to the County. Plaintiff has received eight sets of interrogatories and one set of requests for production from the City.

The majority of the responses are still outstanding so discovery is currently in its early stages. Due to the large number of Defendants and complexity of the claims, Plaintiff anticipates that the recently extended discovery deadline may be sufficient to obtain all necessary information.

Plaintiff anticipates that the length of discovery would be several months as more sets of written discovery and depositions of all individual Defendants and City and County Persons Most Knowledgeable would be necessary. Given the complexity of the remaining claims, Plaintiff anticipates that discovery would require a large investment of time and resources.

**A.     Plaintiff's Anticipated Discovery:**

Plaintiff obtained C.M.'s HHSA and Juvenile Court records under California Welfare & Institutions Code, §827. Plaintiff also obtained a portion of

San Diego Police Department ("SDPD") Records under Welfare & Institutions Code §828.

Plaintiff anticipates deposing (1) the ten named defendants, and former defendants, (2) the City and County's Persons Most Qualified under Rule 30(b)(6), (3) the Doe Doctors (once identified), and (4) other witnesses that are identified in the County and City investigations and juvenile case files.

Plaintiff expects discovery will be needed on the following subjects:

### i.     As to Defendant County of San Diego:

All facts, circumstances, actions and statements identified in Plaintiff's Third Amended Complaint. Actions and statements by County agents and employees related to this case. Including, but not limited to, the following:

(1)     C.M.'s removal from Plaintiff's custody without judicial authorization.

(2)     C.M.'s unwarranted and non-consensual interview and medical examination at Polinsky Children's Center.

(3)     The County's practices, policies, training, and procedures, as they pertain to child removals, medical examinations, and forensic interviews.

### ii.     As to Defendant City of San Diego and Officer Defendants:

All facts, circumstances, actions and statements identified in Plaintiff's Third Amended Complaint. Actions and statements by City Defendants and its agents and employees related to this case. Including, but not limited to, the following:

(1)     C.M.'s removal from Plaintiff's custody without judicial authorization.

(2)     The City's practices, policies, training, and procedures, as they pertain to child removals.

/ / /

/ / /

### iii.    As to Defendant Charles Cox, Sr.:

At present, this case is stayed as to Defendant Cox. As a result, this anticipated discovery does not include written discovery to Cox. However, Plaintiff expects that Cox's deposition – to be conducted at his duty station – would be necessary.

### B.    Defendant County's Anticipated Discovery:

The County of San Diego anticipates conducting discovery on the facts and circumstances listed in the Third Amended Complaint, including depositions of the plaintiff and other percipient witnesses to the events listed in the Third Amended Complaint.

### C.    Defendant City and Police Officers' Anticipated Discovery:

The City Defendants have commenced written discovery and anticipate all discovery will comply with the recent Joint Motion for Extension of Discovery Deadlines. The City Defendants anticipate deposing the following individuals: (1) Plaintiff Carlos McManus Sr.; (2) percipient witnesses to the events outlined in the Third Amended Complaint; (3) other witnesses identified in San Diego Police Department and/or Juvenile Court records; and (4) any treating medical personnel and/or social workers whose testimony may be relevant to Plaintiff's damage claim.

The City Defendants expect discovery will be needed on the following subjects: (1) the facts and circumstances of Plaintiff's claims as outlined in the Third Amended Complaint; (2) relevant background information concerning Plaintiff, including but not limited to, his relationship with C.M. and others; and (3) the nature and extent of Plaintiff's alleged damages and/or injuries. Written Discovery requests on these issues have already been sent to Plaintiff's counsel.

### 5.    Anticipated Discovery Disputes

As discovery is only in its initial stages, Plaintiff and Defendants do not anticipate any discovery disputes.

**6.     Anticipated Discovery Motions or Dispositive Motions**

As discovery is only in its initial stages, Plaintiff cannot specifically identify whether discovery motions may arise.

As for dispositive motions, Plaintiff anticipates filing a motion for partial summary judgment. Plaintiff may also possibly file a judgment on the pleadings.

The County plans to file a motion for summary judgment.

**7.     Existence of Parallel Cases**

Plaintiff contends no parallel cases exist.

Another case challenging the County's medical exams at Polinsky Children's Center, *Mann v. County of San Diego*, 11cv0708-GPC(BGS), is currently on appeal in the Ninth Circuit Court of Appeals.

**8.     Settlement Discussions**

The parties are currently discussing settlement. Specifically, settlement offers have been exchanged between Plaintiff and Defendant County. Additionally, settlement offers have been exchanged between Plaintiff and Defendants City and the individual Police Officer Defendants. The parties are currently considering these offers and settlement appears possible at this time. While no final resolution has been reached as to any of these discussions, the parties are hopeful that these discussions will result in settlement.

**9.     Need for Settlement Conference**

The parties are currently in the middle of settlement discussions. Plaintiff, the County, and all City Defendants do not believe a settlement conference is necessary at this time. But, should the Court order a settlement conference, the parties would have no issues attending a Court-supervised conference scheduled before the assigned Magistrate Judge.

**10.     Significant Rulings**

The only significant ruling is the Court's June 30, 2016 Order granting the County's motion to dismiss as to claims three, four, and five. (*See* Docket No. 61.)

1   **11.    Additional Relevant Information**

2         Plaintiff believes the status of the case is accurately summarized by the

3   above information.

4

5   Dated: January 4, 2017      THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

6                                        /s/ Adrian M. Paris
                                 Shawn A. McMillan, Esq.
7                                Stephen D. Daner, Esq.
                                 Adrian M Paris, Esq.
8                                Attorneys for Plaintiff

9
    Dated: January 4, 2017      THOMAS E. MONTGOMERY, COUNTY COUNSEL
10
                                         /s/ David L. Brodie
11                               David L. Brodie, Senior Deputy
                                 Attorney for Defendant, County of San Diego
12

13
    Dated: January 4, 2017      JAN I. GOLDSMITH, CITY ATTORNEY
14
                                         /s/ Hannah Girer-Rosenkrantz
15                               Hannah Girer-Rosenkrantz
                                 Deputy City Attorney
16                               Attorney for Defendant City of San Diego; SDPD
                                 officers Ernesto Luna; Mari Kong; Thomas
17                               Sullivan; Antonio Johnson; Dan Burow; A. Smith;
                                 and Sgt. Wills.
18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**
**NOTICE OF ELECTRONIC FILING**

*CARLOS McMANUS SR. vs. COUNTY OF SAN DIEGO, et al.,*
CASE NO. : 15-cv-00138-JM-RBB
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA

I am employed in the County of San Diego, State of California. I am over 18 years of age and am not a party to the within action. My business address is 4955 Via Lapiz, San Diego, California 92122.

On January 4, 2017, I electronically filed the foregoing documents described as:

- **JOINT WRITTEN STATUS REPORT**
- **NOTICE OF LODGMENT, RE: JOINT WRITTEN STATUS REPORT**

 **X**  **(BY ELECTRONIC FILING)**  I electronically filed with the Clerk of the Court a true and correct copy of the original as indicated above, and a Notice of Electronic Filing (NEF) is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case. As listed on Attachment A.

And I hereby certify that I have mailed the foregoing documents as indicated above to the parties who are not registered for the CM/ECF system as following:

**NO NON-ECF PARTIES**.

Parties can access this filing through the Court's system.

Dated: January 4, 2017

  /S/ Adrian M. Paris  
Adrian M. Paris

**Attachment A**

| | |
|---|---|
| Tom Montgomery, Esq.<br>David Brodie, Esq.<br>1600 Pacific Highway, Room 355<br>San Diego, CA 92101-2469<br>Phone: (619) 531-4874<br>Fax: (619) 531-6005 | Defendant County of San Diego |
| Jan I. Goldsmith, Esq.<br>David J. Karlin, Esq.<br>Hannah Girer-Rosenkrantz, Esq.<br>Office of the City Attorney<br>1200 Third Avenue, Suite 1100<br>San Diego, CA 92101-4100<br>Phone: (619) 533-5800<br>Fax: (619) 533-5856 | Defendants City of San Diego, Police Officers Ernesto Luna, Mari Kong, Sgt. Thomas Sullivan,  Sgt. Antonio Johnson, Detective Dan Burow, Lt. A. Smith, and Sgt. Wills. |
| Robert C. Schlein, Esq.<br>Robert C. Schlein & Associates<br>750 B Street Suite 3210<br>San Diego, California 92101<br>Telephone: (619) 235-9026<br>Fax: (619) 22-1859 | Defendant Charles Cox, Sr. |